**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| VIPUL SHAH, DOLPH HAEGE, SAMEMMA HOLDINGS, LLC, and STEVEN WIONS, individually and on behalf of all others similarly situated, §§§§§ | Civil Action No.: 1:25-cv-383-ADA-SH |
| Plaintiffs, §§ | |
| v. §§ | |
| CROWDSTREET, INC., TORE STEEN, and IAN FORMIGLE, §§§ | |
| Defendants. §§ | |

**DEFENDANTS' MOTION TO COMPEL INDIVIDUAL
ARBITRATION, STAY THIS ACTION,
AND STRIKE CLASS CLAIMS AND ALLEGATIONS**

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

      A.  Each Plaintiff agreed to CrowdStreet's Terms. ....................................................... 2

      B.  As periodically updated by CrowdStreet, the Terms governed Plaintiffs' use of CrowdStreet's website. ........................................................................................ 3

      C.  The Terms require individual arbitration of Plaintiffs' claims and waive Plaintiffs' rights to proceed in any collective or class action. .................................................. 6

ARGUMENT ................................................................................................................. 8

  I.  This action should be stayed, and Plaintiffs should be compelled to arbitrate their claims individually. .......................................................................................... 8

      A.  Plaintiffs are bound under the Terms to arbitrate their claims................................. 9

      B.  Claims arising out of investments made within the limitations period but before June 15, 2022 fall within the arbitration clause in the 2021 Terms. ....................... 15

      C.  The arbitrability of claims arising from investments made on or after June 15, 2022 must be decided by an arbitrator appointed by the AAA. ............... 16

  II.  Plaintiffs' class claims and allegations should be stricken. ............................... 17

CONCLUSION............................................................................................................ 18

CERTIFICATE OF SERVICE ...................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ADC Ltd. NM v. Zeppelinn Energy, LP,*
No. SA-12-CA-1219, 2013 WL 12126246 (W.D. Tex. May 28, 2013) ................................16

*Alonzo v. Harden Home Health, LLC,*
No. 1:18-CV-694-RP, 2018 WL 6262959 (W.D. Tex. Nov. 13, 2018) ...............................17

*Am. Express Co. v. Italian Colors Rest.,*
570 U.S. 228 (2013) ........................................................................................................8

*Bongalis-Royer v. RJ Worldwide, LLC,*
No. 4:14-CV-330, 2015 WL 12778846 (E.D. Tex. July 16, 2015) ........................................12

*Bradford v. Brident Dental Servs., LLC,*
No. H-23-3460, 2024 WL 1839458 (S.D. Tex. Apr. 26, 2024)...............................................17

*Flores v. BJ's Restaurants, Inc.,*
No. 1:21-CV-1185-DII, 2024 WL 3455271 (W.D. Tex. Jan. 3, 2024) ........................8, 17, 18

*Ford v. Fisher Asset Mgmt., LLC,*
No. CV H-09-1349, 2009 WL 10713209 (S.D. Tex. Oct. 16, 2009).......................................16

*Glass Design, Inc. v. Owens-Brockway Glass Container, Inc.,*
No. W-12-CV-132, 2013 WL 12091106 (W.D. Tex. Jan. 7, 2013) ........................................16

*Goldsberry v. Barrington Bank & Tr. Co., NA,*
No. 4:23-CV-00993-ALM-AGD, 2025 WL 699357 (E.D. Tex. Feb. 10, 2025)....................12

*Goldsberry v. Barrington Bank & Tr. Co., NA,*
No. 4:23-CV-00993-ALM-AGD, 2025 WL 693252 (E.D. Tex. Mar. 4, 2025) .....................12

*Grant v. Houser,*
469 F. App'x 310 (5th Cir. 2012) ...........................................................................................8

*Hart of Tex. Cattle Feeders, LLC v. Bonsmara Nat'l Beef Co.,*
583 S.W.3d 705 (Tex. App.—Amarillo 2019) ......................................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
586 U.S. 63 (2019)...........................................................................................................9, 16

*Johnson v. Sw. Recovery Servs. Inc.,*
No. 3:22-CV-242-X-BH, 2023 WL 1944127 (N.D. Tex. Jan. 23, 2023) ...............................10

*Johnson v. Sw. Recovery Servs. Inc.*,
   No. 3:22-CV-0242-X-BH, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023) ...........................10

*King v. Baylor Univ.*,
   46 F.4th 344 (5th Cir. 2022) .....................................................................................................11

*Klebba v. Netgear, Inc.*
   1:18-CV-438-RP, 2019 WL 453364 (W.D. Tex. Feb. 5, 2019) .........................................8, 13

*Koontz v. Citibank (South Dakota), N.A.*,
   No. 01-08-00495-CV, 2010 WL 2545583 (Tex. Ct. App. June 24, 2010) ............................14

*Kubala v. Supreme Prod. Servs., Inc.*,
   830 F.3d 199 (5th Cir. 2016) ...................................................................................................8, 9

*Martin v. CB Restaurants, Inc.*,
   No. 5:20-CV-1334-DAE, 2021 WL 2701952 (W.D. Tex. Mar. 12, 2021) ......................11, 17

*In re Merrill Lynch Trust Co. FSB*,
   235 S.W.3d 185 (Tex. 2007)...................................................................................................9, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).......................................................................................................................15

*Olympus Cap. KEB Cards, Ltd. v. Lone Star Mgmt. Co. IV*,
   No. 3:06-CV-2020-B, 2007 WL 9712192 (N.D. Tex. Sept. 24, 2007) ...................................16

*Palumbo v. AT&T Servs., Inc.*,
   No. 3:21-CV-1818-N, 2023 WL 2531488 (N.D. Tex. Mar. 14, 2023)....................................16

*Phillips v. Neutron Holdings, Inc.*,
   No. 3:18-CV-3382-S, 2019 WL 4861435 (N.D. Tex. Oct. 2, 2019) .............................. *passim*

*Smith v. Spizzirri*,
   601 U.S. 472 (2024)......................................................................................................................9

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
   Civ. A. No. 3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007)................11, 14

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mex.*,
   667 S.W.3d 694 (Tex. 2023).......................................................................................................17

*Walker v. Neutron Holdings, Inc.*,
   No. 1:19-CV-574-RP, 2020 WL 703268 (W.D. Tex. Feb. 11, 2020) .............................8, 9, 10

*Walker v. Neturon Holdings, Inc.*,
   No. 1:19-CV-574-RP, 2020 WL 4196847 (W.D. Tex. Apr. 8, 2020) ..............................8, 9, 10

*Yiru v. WorldVentures Holdings LLC*,
  No. 3:17-CV-02155-S, 2018 WL 4346158, (N.D. Tex. Sept. 11, 2018)..........................12, 13

**Statutes and Rules**

9 U.S.C. § 3..................................................................................................................................1

Tex. Gov't Code § 4008.062..........................................................................................................9

Pursuant to Section 3 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3, defendants CrowdStreet, Inc., Tore Steen, and Ian Formigle respectfully request that the Court (1) compel individual arbitration of the claims asserted by plaintiffs Vipul Shah, Dolph Haege, Samemma Holdings, LLC ("Samemma"), and Steven Wions (together, "Plaintiffs") as required by their agreements to arbitrate; (2) stay this action pending resolution of the individual arbitrations it compels; and (3) strike the class claims and allegations in the Complaint.

## <u>INTRODUCTION</u>

The claims asserted in the Complaint are not properly before the Court. These claims arise out of Plaintiffs' use of a website operated by CrowdStreet through which Plaintiffs invested in certain commercial real estate offerings. To gain full access to the CrowdStreet website and make their investments, Plaintiffs had to establish a CrowdStreet investing account and, as part of the account-creation process, agree to CrowdStreet's Terms of Service or Terms of Use in effect at the time (the "Terms").[1] CrowdStreet's Terms provided for both (1) mandatory arbitration and (2) an unequivocal waiver of the right to bring class- or collective-action claims against CrowdStreet.

Plaintiffs' filing of this putative class action runs afoul of the FAA and well-established precedent requiring enforcement of the arbitration agreement and class-action waiver as written. The action should accordingly be stayed, individual arbitration should be compelled, and the class claims and allegations should be stricken.

---

[1] A true and correct copy of CrowdStreet's Terms in effect from July 25, 2016 through June 29, 2021 (the "2016 Terms") are attached as Exhibit 1 to the accompanying Declaration of Kristen Howell, dated April 10, 2025 (Exhibit A) (the "Howell Decl."). True and correct copies of the Terms in effect from June 30, 2021 through June 14, 2022 (the "2021 Terms") and the Terms in effect from June 15, 2022 until Plaintiffs ceased making investments through CrowdStreet (the "2022 Terms") are attached as Exhibits 2 and 3 to the Howell Decl., respectively.

## BACKGROUND

Based on alleged violations of the Texas Securities Act, Plaintiffs seek to rescind investments they made through a website operated by CrowdStreet and to recover unspecified benefits through a theory of unjust enrichment. (Compl. ¶ 1; *see id.* ¶¶ 147-168.) Commercial real estate developers and investors like Plaintiffs use the CrowdStreet website to exchange information related to private placement real estate offerings, complete subscription documents, and deliver reports and tax documents through the life of real estate projects. (Howell Decl. ¶ 3.) Website users can browse opportunities posted by real estate developers and choose to invest in those opportunities that they have determined meet their investment goals. (*Id.*) Before investing in any opportunity, CrowdStreet requires all website users, including Plaintiffs, to create a website login, complete a user profile, and establish a CrowdStreet investing account (an "Investing Account"). (Howell Decl. ¶ 4; *see* Compl. ¶ 56 ("to invest through CrowdStreet, investors must open what is referred to as an 'Investing Account' with CrowdStreet").)

The Complaint concedes that each of Shah, Haege, and Samemma "maintained an Investing Account with CrowdStreet" and purchased securities "through [that] Investing Account." (Compl. ¶¶ 17-19.) The Complaint further alleges that Wions "maintained an Investing Account with CrowdStreet by and through Samemma Holdings through which he purchased securities ...." (Compl. ¶ 20.)

### A.    Each Plaintiff agreed to CrowdStreet's Terms.

At all times relevant to Plaintiffs' claims, users of CrowdStreet's website could not create an Investing Account without first accepting the then-current version of the Terms.

CrowdStreet's business records show that Shah created his CrowdStreet Investing Account online on March 15, 2019. (Howell Decl. ¶ 24.) At that time, the 2016 Terms were in effect. (*Id.*) To create his account, Shah completed a sign-up form on CrowdStreet's website that required him

2

to click on a "Sign up" button.  (*See* Howell Decl. ¶ 26.)  Immediately beneath the Sign up button, the account creation page stated that "[b]y signing up for CrowdStreet, you confirm that you accept our terms of service ...."  (*Id.* )  The words "terms of service" appeared in a blue hyperlink that linked to the then-operative 2016 Terms and offset them from the surrounding black text.  (*Id.*)

CrowdStreet's business records show that Haege created his Investing Account online on March 30, 2020.  (Howell Decl. ¶ 32.)  At the time, the 2016 Terms were in effect.  (*Id.*)  Creating his account required Haege to click a checkbox next to the words  "I agree to the Terms of Service. I have read this agreement and accept the terms and conditions."  (Howell Decl. ¶ 34.)  The words "Terms of Service" appeared in a blue hyperlink that linked to the 2016 Terms and offset them from the surrounding black text.  (*Id.*)

CrowdStreet's business records show that Wions established an Investing Account on behalf of Samemma online on November 2, 2022.  (Howell Decl. ¶ 40.)  At that time, the 2022 Terms were in effect.  (*Id*.)  Completion of the account-creation process for the Samemma Investing Account required Wions to click a checkbox next to the statement "I have read and accept the terms and conditions."  (Howell Decl. ¶ 42.)  The words "terms and conditions" appeared in teal font and were underlined, offsetting them from surrounding text, and hyperlinked to the 2022 Terms.  (*Id*.)

### B.    As periodically updated by CrowdStreet, the Terms governed Plaintiffs' use of CrowdStreet's website.

The 2016 Terms in effect when Shah and Haege created their respective CrowdStreet Investing Accounts authorized modifications of and updates to their provisions by CrowdStreet and provided that continued use of CrowdStreet's services and website following any posted updates would constitute assent to be bound by those updates:

> Your use of the Website and the Services is governed by the then-current version of the Terms in effect on the date of such use.... Your continued use of the Services after modified Terms have been posted or otherwise provided to you constitutes your agreement to be bound by the then-current Terms.

(Howell Decl., Ex. 1 (2016 Terms) at 2.)  The 2021 Terms contained identical language.  (*See* Howell Decl., Ex. 2 (2021 Terms) at 1.)[2]

In June 2021 and June 2022, CrowdStreet updated the Terms.  (*See* Howell Decl. ¶¶ 7, 8.) The 2021 update was nominal and left most of the 2016 Terms unchanged.  (*See* Howell Decl. ¶ 7.)  The 2022 update was more extensive.  (Howell Decl. ¶ 8.)  CrowdStreet provided Shah and Haege with notice of the 2022 update via emails to their Gmail accounts dated June 15, 2022, bearing the subject line "Updated Privacy Policy and Terms of Use."  (*See* Howell Decl. ¶¶ 27, 35 & Exs. 5, 6.)[3]  These emails read, in pertinent part:  "We're writing today to let you know that ... we have updated ... our ... Terms of Use.  \*\*\*  You can view the ... full updated Terms of Use **here**."  (Howell Decl., Exs. 5, 6 (original emphasis).)  The email included a hyperlink to the complete set of 2022 Terms, including the arbitration provision and class-action waiver discussed below.  (*See* Howell Decl. ¶¶ 27, 35.)

After CrowdStreet issued the 2021 and 2022 updates, both Shah and Haege continued to use the CrowdStreet website and services.  (*See* Howell Decl. ¶¶ 28, 36.)

---

[2]  The 2022 Terms included similar language:

> We will notify Users of our updated Terms of Use by e-mail, notice on our Website, or similar means.  The revised Terms of Use shall be effective on the date posted, but will not apply retroactively.  Your continued access to or use of the Website or Services after posting of revised Terms of Use constitutes your acceptance of the revised Terms of Use.  If you do not agree to the revisions, your sole and exclusive remedy is to terminate your use of the CrowdStreet Site and Services.

(Howell Decl., Ex. 3 (2022 Terms) at 1.)

[3]  True and correct copies of the June 15, 2022, emails that CrowdStreet sent to Shah and Haege are attached to the Howell Decl. as Exhibits 5 and 6, respectively.

The 2016 Terms, the 2021 Terms, and the 2022 Terms all unequivocally state that they govern the use of and access to the CrowdStreet website:

- These Terms of Service govern your access and use of the Website and all publicly available content, services and/or products provided through the Website (collectively, the "Services") (Howell Decl., Ex. 1 (2016 Terms) at 1; Ex. 2 (2021 Terms) at 1);

- BY ACCESSING, BROWSING, AND/OR OTHERWISE USING THE WEBSITE OR THE SERVICES, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD, AND AGREE TO BE BOUND BY THE TERMS OF SERVICE AND ALL OTHER POLICIES AND PROCEDURES POSTED ON THE WEBSITE.  IF YOU DO NOT AGREE TO BE BOUND BY SUCH AGREEMENTS, THEN YOU MUST IMMEDIATELY CEASE ACCESS, BROWSING OR OTHERWISE USE THE WEBSITE OR THE SERVICES.  (Howell Decl., Ex. 1 (2016 Terms) at 2; Ex. 2 (2021 Terms) at 1); and

- These Terms of Use govern your access to and use of the crowdstreet.com website and our related websites and applications (the "Website") and services (the "Services") provided by CrowdStreet....  By accessing the Website, establishing a login on our Website, completing a profile ("User Profile"), establishing an investing account ("Investing Account") ... you agree that you have read, understand, and accept all of the terms and conditions contained in these Terms of Use.... Your compliance with these Terms of Use is a condition to your access to and use of the Website .... (Howell Decl., Ex. 3 (2022 Terms) at 1.)

CrowdStreet provided ongoing notice of its Terms.  From the time Plaintiffs began using the CrowdStreet website through June 15, 2022, a hyperlink to "Disclosures and Disclaimers" has appeared on the homepage of CrowdStreet's website.  (Howell Decl. ¶ 15.)  The Disclosures and Disclaimers hyperlink took users to a page that provided, among other things, the following, with the words "Terms of Use" appearing in a different color and hyperlinking to the Terms:

The Marketplace is an internet-based technology platform that facilitates administration for investments. Since inception it has operated, and continues to operate, on a strictly non-advisory basis. By accessing the Marketplace through this website and any web pages thereof, you agree to be bound by the Terms of Use, Privacy Policy and other policies and procedures posted on the website.

(Howell Decl. ¶ 15.)

Beginning June 15, 2022, the Disclosures and Disclaimers hyperlink took users to a page that invited them to "consult our Terms of Use for important terms governing your access to and use of crowdstreet.com" and had the words "Terms of Use" hyperlinked to the 2022 Terms. (Howell Decl. ¶ 16.)  While the 2022 Terms were in effect, a hyperlink to the 2022 Terms has appeared in the footer of CrowdStreet's homepage.  (*See* Howell Decl. ¶ 13.)  This footer was included whenever a user accessed CrowdStreet's homepage, by personal computer or mobile device.  (*Id*.)

### C.    The Terms require individual arbitration of Plaintiffs' claims and waive Plaintiffs' rights to proceed in any collective or class action.

All three sets of Terms contain a dispute-resolution provision requiring that claims against CrowdStreet be resolved through individual arbitration proceedings.  (*See* Howell Decl., Ex. 1 (2016 Terms) at 19; Ex. 2 (2021 Terms) at 12; Ex. 3 (2022 Terms) § 5.)  Under both the 2016 Terms and the 2021 Terms, the arbitration is to be administered by the Arbitration Service of Portland, Inc., and under the 2022 Terms, the arbitration is to be administered by the American Arbitration Association ("AAA") in Austin, Texas.  The 2016 and 2021 Terms provide:

> In the event of any claim, controversy or alleged dispute between you and CrowdStreet, its members or affiliates ... [e]ach party agrees to submit any Dispute for resolution by final binding arbitration. ... [U]nless the parties agree otherwise in writing, [the Arbitration] will be administered by and in accordance with the rules of the Arbitration Service of Portland, Inc.

(Howell Decl., Ex. 1 (2016 Terms) at 19; Ex. 2 (2021 Terms) at 12.)  And the 2022 Terms provide:

> **Binding Arbitration.  Except as set forth in Section 4.2 with respect to brokerage services, or as provided in an applicable Investment Advisory Agreement with respect to advisory services, any claim, controversy or dispute (each a "Dispute") arising out of or related to the Website, Services, or these Terms of Use shall be subject to binding individual arbitration administered by the American Arbitration Association before a single arbitrator in Austin, Texas.**

(Howell Decl., Ex. 3 (2022 Terms) § 5 (original emphasis).)

The arbitration provision in the 2022 Terms also includes a delegation clause providing that "the arbitrator will have ... the exclusive authority and jurisdiction to make all procedural and substantive decisions regarding a Dispute, including the determination of whether a Dispute is arbitrable." (*Id.*) The 2022 Terms further state that they should be construed and enforced in accordance with the FAA:

> The terms of this arbitration agreement affect interstate commerce and the enforceability of this section will be both substantively and procedurally governed by and construed and enforced in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 et seq. to the maximum extent permitted by applicable law.

(Howell Decl., Ex. 3 (2022 Terms) § 5.)

All three sets of Terms contain a class-action waiver. The 2016 Terms and the 2021 Terms provide:

> You agree that all Disputes will be limited between you, individually, and CrowdStreet. To the full extent allowable by law, you agree that no arbitration proceeding or other dispute resolution proceeding shall be joined with any other party or decided on a class action basis.

(Howell Decl., Ex. 1 (2016 Terms) at 20; Ex. 2 (2021 Terms) at 12.) Similarly, the 2022 Terms provide:

> You and CrowdStreet waive their respective rights to (i) have Disputes resolved in a court, (ii) a jury trial, (iii) a class arbitration, class action, multi-party, or representative proceeding.
>
> ***
>
> [T]he arbitrator does not have the authority to conduct a class arbitration or a representative action, which is prohibited by the terms. The arbitrator may only conduct an individual arbitration and may not consolidate more than one individual's claims, preside over any type of class or representative proceeding or preside over any proceeding involving more than one individual.

(Howell Decl., Ex. 3 (2022 Terms) § 5.)

## ARGUMENT

I.  **This action should be stayed, and Plaintiffs should be compelled to arbitrate their claims individually.**

As this Court recently acknowledged, "[i]ndividuals who have agreed to binding arbitration ... must be compelled to arbitration." *Flores v. BJ's Restaurants, Inc.*, No. 1:21-CV-1185-DII, 2024 WL 3455271, at *1 (W.D. Tex. Jan. 3, 2024) (Pitman, J.).  Indeed, federal courts must "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation marks and citations omitted).

"When considering a motion to compel arbitration, courts apply a two-step framework" that first determines "whether the parties entered into any arbitration agreement at all." *Walker v. Neutron Holdings, Inc.*, No. 1:19-CV-574-RP, 2020 WL 703268, at *2 (W.D. Tex. Feb. 11, 2020) (Hightower, USMJ), *report and recommendation adopted*, No. 1:19-CV-574-RP, 2020 WL 4196847 (W.D. Tex. Apr. 8, 2020) (Pitman, J.); *accord Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).  The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence.  *See Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012).

If the Court finds that a valid arbitration agreement exists, the next inquiry is whether the claim at issue falls within the scope of that agreement.  *See Walker*, 2020 WL 703268, at *2; *Klebba v. Netgear, Inc.*, 1:18-CV-438-RP, 2019 WL 453364, at *5 (W.D. Tex. Feb. 5, 2019).  This is "usually a question for the court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement." *Id.*  Where "the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect

the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). For this reason, the existence of a valid delegation clause requires that "the motion to compel arbitration should be granted in almost all cases." *Kubala*, 830 F.3d at 202. "When a federal court finds that a dispute is subject to arbitration ... the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration" but should instead stay the underlying litigation. *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024); *see also In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 194 (Tex. 2007) ("Both the Federal and Texas Arbitration Acts require courts to stay litigation of issues that are subject to arbitration.").

**A.    Plaintiffs are bound under the Terms to arbitrate their claims.**

Plaintiffs' use of CrowdStreet's website and services was at all times governed by the Terms, which required individual arbitration of any claims against CrowdStreet.[4]

      **1.    Shah entered into an enforceable agreement that requires arbitration of his claims.**

By clicking a "Sign up" button and signing up for CrowdStreet in connection with creating his personal CrowdStreet Investing Account, Shah agreed to arbitrate his claims against CrowdStreet through a sign-in wrap agreement. "Sign-in-wraps are agreements that notify the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advise the user that he or she is agreeing to the terms of service when registering or signing up." *Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 WL 4861435, at *4 (N.D. Tex. Oct. 2, 2019) (citation omitted).

In *Walker v. Neutron Holdings, Inc.*, this court adopted a recommendation and order to enforce a similar agreement and granted a motion to compel arbitration based on an arbitration

---

[4] Plaintiffs have a three-year window to advance claims based on their CrowdStreet investments under the Texas Securities Act. *See* Tex. Gov't Code § 4008.062 ("A person may not sue under Section 4008.051 ... more than three years after the date of the sale.").

clause in an electronic user agreement. 2020 WL 4196847. The defendant's app contained a link to the defendant's user agreement embedded in text that stated, "By signing up, I confirm that ... I have read and agreed to [the] User Agreement and Terms of Service.'" 2020 WL 703268, at *3. Completion of the sign-in process required the plaintiff to either input her phone number and click a box labeled "NEXT" or press a button labeled "Continue with Facebook." *Id.* The recommendation and order found that "a reasonable user would view the [defendant's] App sign-in screen and see that the User Agreement is a part of the offer to proceed with the transaction by clicking 'NEXT' or 'Continue with Facebook.'" *Id.* at *4; *see also Phillips*, 2019 WL 4861435, at *5 (finding plaintiff "manifested his assent to be bound by the User Agreement—which provides for arbitration—when he clicked the 'NEXT' button after entering his phone number" on the app). Thus, the Court concluded that the parties had "entered into an arbitration agreement." 2020 WL 703268, at *3.

Likewise, in *Johnson v. Southwest Recovery Services, Inc.*, the Northern District of Texas adopted a report and recommendation to grant a motion to compel arbitration based on a similar webpage. *See* No. 3:22-CV-242-X-BH, 2023 WL 1944127 (N.D. Tex. Jan. 23, 2023), *report and recommendation adopted*, No. 3:22-CV-0242-X-BH, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023). There, the plaintiff enrolled in an online credit monitoring service and later upgraded her service by clicking a button labeled "Submit Secure Order." 2023 WL 1944127, at *1. Above the button was a disclosure that read, "By clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement." *Id.* The words "Terms of Use Agreement" hyperlinked to the then-current agreement and appeared in a distinct color from the remainder of the surrounding text. *Id.* The Terms of Use Agreement in effect when the plaintiff upgraded her service contained a broad arbitration provision. The court found that because she could not have enrolled in the defendant's

service without assenting to the Terms of Use by clicking the "Submit Secure Order" button, the defendant "met its initial burden to show that there is an arbitration agreement." *Id*. at *8.

So too here. By affirmatively signing up to use the CrowdStreet website and creating an Investing Account, Shah entered into an enforceable agreement pursuant to which he agreed to submit "any Dispute" with CrowdStreet "for resolution by final binding arbitration"—which agreement was reiterated in the 2021 Terms. (Howell Decl., Ex. 1 (2016 Terms) at 19; *id.*, Ex. 2 (2021 Terms) at 12.)[5]

In addition, by signing up for CrowdStreet, Shah agreed that his use of the CrowdStreet website or services after receiving notice of any update to the Terms would constitute an agreement to be bound by the updated Terms. (Howell Decl., Ex. 1 (2016 Terms) at 2.) As the Fifth Circuit has recognized, a party may assent to the terms of a contract through website use where the party had actual or constructive knowledge of the site's terms and conditions prior to such use. *See King v. Baylor Univ.*, 46 F.4th 344, 358–59 (5th Cir. 2022) ("[A] customer on notice of contract terms available on the internet website is bound by those terms." (internal quotation marks omitted)); *see also Sw. Airlines Co. v. BoardFirst, L.L.C.*, Civ. A. No. 3:06-CV-0891-B, 2007 WL 4823761, at *7 (N.D. Tex. Sept. 12, 2007) (citation omitted) (finding defendant's continued use of website with actual knowledge of terms "bound" defendant "to the contractual obligations imposed by the Terms").

Shah continued to use CrowdStreet's services after CrowdStreet nominally updated its Terms in 2021. (Howell Decl. ¶ 28.) Shah also continued to make investments through the CrowdStreet website after he received direct notice of the 2022 update to the Terms from

---

[5] "A party may prove the existence ... of the arbitration agreement by attaching to its motion to compel an affidavit proving up the agreement and stating that the nonmovant entered into the agreement." *Martin v. CB Restaurants, Inc.*, No. 5:20-CV-1334-DAE, 2021 WL 2701952, at *4 n.3 (W.D. Tex. Mar. 12, 2021) (citation omitted).

CrowdStreet on June 15, 2022. (*See* Howell Decl. ¶¶ 28, 29 & Ex. 5.)[6] On June 23, 2022, Shah used his CrowdStreet Investing Account to make investments in a real estate offering sponsored by Nightingale Properties LLC through the CrowdStreet website. (*See* Howell Decl. ¶ 29; *see also* Compl. ¶ 125 (identifying investment).)

        2.       Haege and Samemma entered into enforceable agreements
                       that require Arbitration of their claims.

By clicking a checkbox signifying their assent to the then-effective Terms when creating their CrowdStreet Investing Accounts, Haege and Wions (on behalf of Samemma) entered into valid agreements with CrowdStreet to arbitrate their claims against CrowdStreet. It "is well-established under Texas law that assent" to electronic contracts "through an affirmative 'click' is sufficient to bind the parties." *Yiru v. WorldVentures Holdings LLC*, No. 3:17-CV-02155-S, 2018 WL 4346158, at *3 (N.D. Tex. Sept. 11, 2018) (collecting cases). Indeed, "Texas state and federal courts have recognized the validity of clickwrap' agreements"—agreements that permit a consumer to assent to contractual terms by clicking a button on a website that is required to complete a transaction. *Bongalis-Royer v. RJ Worldwide, LLC*, No. 4:14-CV-330, 2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015); *see Goldsberry v. Barrington Bank & Tr. Co., NA*, No. 4:23-CV-00993-ALM-AGD, 2025 WL 699357, at *6 (E.D. Tex. Feb. 10, 2025), *report and recommendation adopted*, No. 4:23-CV-00993-ALM-AGD, 2025 WL 693252 (E.D. Tex. Mar. 4, 2025) ("Texas courts have repeatedly upheld the validity of 'clickwrap' agreements"); *Phillips*, 2019 WL 4861435, at *4 ("courts routinely enforce clickwrap agreements").

---

[6] Shah also had constructive notice of the Terms through hyperlinks in the website footers, as well as statements in website footers or disclosures that: "By accessing the CrowdStreet Marketplace, you agree to be bound by its Terms of Use, Privacy Policy, and any other policies posted on this website" or similar language. (Howell Decl. ¶ 14; *see id.* ¶¶ 16, 30, 31.)

For example, in *Klebba v. Netgear, Inc.*, this Court enforced the terms of an arbitration agreement contained in Terms of Service presented to the plaintiff in a clickwrap agreement. 2019 WL 453364, at *5. There, the plaintiff was required to create an account on the defendant's website to purchase a baby monitor. The account-creation process required the plaintiff to agree to the defendant's Terms of Service in one of two ways: either by manually checking a box on the sign-in page for the website next to the words "'I agree to the Terms of Service,'" or by clicking an "Agree" button at the bottom of the Terms of Service (which then auto-populated the required check mark on the sign-in page). *Id*. at *1. If the plaintiff did not click either the check box or the "Agree" button, he could not create an account. *Id.* The Court found that the plaintiff "formed an agreement to arbitrate" because, by creating the account, "he must have either checked the check box or clicked the 'Agree' button at the bottom of the Terms." *Id.* at *5.

Similarly, in *Yiru v. WorldVentures Holdings LLC*, the court held that a binding arbitration agreement existed based on a clickwrap agreement. 2018 WL 4346158, at *4. There, the plaintiff filed a lawsuit based on her status as a former representative of the defendant's company. *Id.* In applying to become a representative, the plaintiff "was required to click a box affirming: 'I/we have read the terms and conditions of'" several documents, including a representative agreement containing an arbitration provision. *Id.* The court found that "[b]y clicking her affirmation that she had received and reviewed the terms and conditions of the Representative Agreement," the "Plaintiff assented to being bound by the terms and conditions of the same." *Id.* Accordingly, the court held "that a contract, including an arbitration provision, exists between the parties" and granted the defendant's motion to compel arbitration. *Id.*; *see id.* at *7.

When he created his personal CrowdStreet Investing Account, Haege entered into an enforceable agreement by checking a box on CrowdStreet's account-creation webform next to the

words "I agree to the Terms of Service.  I have read this agreement and accept the terms and conditions" that hyperlinked to the 2016 Terms.  (Howell Decl. ¶ 34.)  By so doing, Haege entered into a binding agreement to submit "any Dispute" with CrowdStreet "for resolution by final binding arbitration"—which agreement was reiterated in the 2021 Terms.  (Howell Decl., Ex. 1 (2016 Terms) at 19; *id.*, Ex. 2 (2021 Terms) at 12.)

In addition, by affirmatively checking the box signifying that he agreed to the then-effective 2016 Terms, Haege agreed that his use of the CrowdStreet website or services after receiving notice of any update to the Terms would constitute an agreement to be bound by the updated Terms.  (Howell Decl., Ex. 1 (2016 Terms) at 2.)  *See Koontz v. Citibank (South Dakota), N.A.*, No. 01-08-00495-CV, 2010 WL 2545583, at *3 (Tex. Ct. App. June 24, 2010)  (continued use of credit card after receiving notice of change in terms and accompanying arbitration agreement "established ... assent to its terms"); *see also Sw. Airlines*, 2007 WL 4823761, at *4 (continued website use with knowledge of terms establishes assent).

Haege continued to use the CrowdStreet services after CrowdStreet nominally updated its Terms in 2021.  (Howell Decl. ¶ 36.)  Haege also continued to make investments through the CrowdStreet website after he received direct notice of the 2022 update to the Terms from CrowdStreet on June 15, 2022.  (*See* Howell Decl. ¶¶ 36, 37 & Ex. 6.)[7]  On June 28, 2022, and December 15, 2022, Haege used his CrowdStreet Investing Account to invest in real estate offerings sponsored by Nightingale Properties LLC through the CrowdStreet website.  (*See* Howell Decl. ¶ 37; *see also* Compl. ¶ 125 (identifying investments).)

In connection with his creation of Samemma's Investing Account, Wions entered into an enforceable agreement on Samemma's behalf by checking a box on CrowdStreet's account-

---

[7] At all relevant times, Haege also had constructive notice of the Terms through the CrowdStreet website. (*See* Howell Decl. ¶¶ 14, 16, 38, 39.)

creation webform next to the words "I have read and accept the terms and conditions" that included

a hyperlink to the 2022 Terms.  (Howell Decl. ¶ 42.)  By doing so, Wions entered into a binding

agreement to arbitrate "any claim, controversy or dispute ... arising out of or related to the Website,

Services, or [the] Terms of Use."  (Howell Decl., Ex. 3 (2022 Terms) § 5.)

> 3.    Plaintiffs' inclusion of Steen and Formigle in this lawsuit
>        does not bar arbitration.

Plaintiffs' decision to name Steen and Formigle as defendants has no effect on the

arbitrability issue.  As the Texas Supreme Court has recognized, "parties to an arbitration

agreement may not evade arbitration ... by naming individual agents of the party to the arbitration

clause and suing them in their individual capacity." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d

185 at 188 (Tex. 2007).  Where, as here, a party's claims against individuals "are in substance"

claims against the entity that employed those individuals, the parties "must abide by their

agreement to arbitrate those claims." *Id*. at 190; *see Hart of Tex. Cattle Feeders, LLC v. Bonsmara

Nat'l Beef Co.*, 583 S.W.3d 705, 709–10, 712 (Tex. App.—Amarillo 2019), *aff'd sub nom*, 603

S.W.3d 385 (Tex. 2020) (finding claims against company's individual "owners, officers and

directors [are] subject to arbitration" even when individuals not parties to arbitration agreement).

**B.    Claims arising out of investments made within the limitations period but
before June 15, 2022 fall within the arbitration clause in the 2021 Terms.**

In the words of the United States Supreme Court, the FAA "establishes that, as a matter of

federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration, whether the problem at hand is the construction of the contract language itself or an

allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v.

Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983).  Here, the arbitration provision in the 2021

Terms applies to "*any* Dispute" with CrowdStreet.  (Howell Decl., Ex. 2 (2021 Terms) at 12

(emphasis added).)  Accordingly, the arbitration clause in the 2021 Terms should be broadly construed.  *See, e.g., Glass Design, Inc. v. Owens-Brockway Glass Container, Inc.*, No. W-12-CV-132, 2013 WL 12091106, at \*3 (W.D. Tex. Jan. 7, 2013) ("Courts have held that when an arbitration clause includes broad language such as 'any dispute' the arbitration clause should be interpreted as broad.").  Indeed, federal courts often find that statutory claims under the Texas Securities Act and claims for unjust enrichment such as those alleged in the Complaint fall within the scope of similarly broad arbitration provisions.  *See, e.g.*, *Palumbo v. AT&T Servs., Inc.*, No. 3:21-CV-1818-N, 2023 WL 2531488, at \*3 (N.D. Tex. Mar. 14, 2023) (statutory and unjust enrichment claims within ambit of broad arbitration provision); *ADC Ltd. NM v. Zeppelinn Energy, LP*, No. SA-12-CA-1219, 2013 WL 12126246, at \*4 (W.D. Tex. May 28, 2013) (rejecting plaintiff's argument that claims under Texas Securities Act for sale of unregistered securities were outside scope of broad arbitration provision); *Ford v. Fisher Asset Mgmt., LLC*, No. CV H-09-1349, 2009 WL 10713209, at \*1 (S.D. Tex. Oct. 16, 2009) (granting motion to compel arbitration of claims for violations of federal and state securities laws, among others); *Olympus Cap. KEB Cards, Ltd. v. Lone Star Mgmt. Co. IV*, No. 3:06-CV-2020-B, 2007 WL 9712192, at \*4-5 (N.D. Tex. Sept. 24, 2007) (granting motion to compel arbitration of claim under Texas Securities Act, among others).

C.    **The arbitrability of claims arising from investments made on or after June 15, 2022 must be decided by an arbitrator appointed by the AAA.**

Simply stated, where, as here, "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract," and "possesses no power to decide the arbitrability issue."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019). The delegation provision contained in the 2022 Terms is clear and unequivocal: "The arbitrator will have (i) the *exclusive authority and jurisdiction to make* all procedural and substantive

decisions regarding a Dispute, including *the determination of whether a dispute is arbitrable ....*"
(Howell Decl., Ex. 3 (2022 Terms) § 5 (emphases added).)  Thus, the issue of whether Plaintiffs'
individual claims are subject to the arbitration provision in the 2022 Terms must be decided by the
AAA arbitrators appointed to adjudicate those claims, not this Court.  *See TotalEnergies E&P
USA, Inc. v. MP Gulf of Mex.*, 667 S.W.3d 694, 702 (Tex. 2023) ("If the parties have contractually
agreed to delegate arbitrability disputes to the arbitrator, courts must enforce that agreement just
as they must enforce an agreement to delegate resolution of the underlying merits to the
arbitrator."); *Alonzo v. Harden Home Health, LLC*, No. 1:18-CV-694-RP, 2018 WL 6262959, at
*3 (W.D. Tex. Nov. 13, 2018) ("Where the parties have agreed to delegate the power to rule on
the arbitrability of a specific claim, the court's role is thus to decide only whether the parties
entered into an agreement to arbitrate some set of claims.").

## II.    Plaintiffs' class claims and allegations should be stricken.

Because Plaintiffs have waived the right to pursue their class claims and allegations under
the Terms, those claims and allegations should be stricken.  "Courts must honor agreements to
arbitrate that include a waiver of the ability to participate in class or collective action proceedings
and must 'respect and enforce the parties' chosen arbitration procedures.'"  *Flores v. BJ's
Restaurants, Inc.*, No. 1:21-CV-1185-DII, 2024 WL 3455271, at *1 (W.D. Tex. Jan. 3, 2024)
(quotation omitted).  Where an arbitration agreement contains an express waiver of the parties'
right to pursue class or collective claims, it is appropriate for the court to enforce the waiver by
striking the allegations and claims that are subject to the waiver.  *See, e.g.*, *Bradford v. Brident
Dental Servs., LLC*, No. H-23-3460, 2024 WL 1839458, at *7 (S.D. Tex. Apr. 26, 2024)
(concluding "class allegations should be stricken and that any arbitration must be conducted on an
individual basis" because the arbitration agreement contained class-action waiver); *Martin v. CB
Restaurants, Inc.*, No. 5:20-CV-1334-DAE, 2021 WL 2701952, at *8 (W.D. Tex. Mar. 12, 2021)

(striking collective-action claims and class-action components of complaint where party waived right to proceed by collective action in arbitration agreement).

Here, Plaintiffs' waivers of their respective rights to proceed in a multi-party, collective, or class action are clear and unequivocal.  Under the 2016 and 2021 Terms, Plaintiffs Shah and Haege agreed that "all Disputes will be limited between you, individually, and CrowdStreet" and that to the fullest extent permitted by law, "no arbitration proceeding or other dispute resolution proceeding shall be joined with any other party or decided on a class action basis."  (Howell Decl., Ex. 2 (2021 Terms) at 11.)  Similarly, under the 2022 Terms, Plaintiffs Shah, Haege and Samemma (through Wions) agreed to "waive their respective rights to ... a class arbitration, class action, multi-party, or representative proceeding."  (Howell Decl., Ex. 3 (2022 Terms) § 5.)  These agreements should be honored. *See Flores*, 2024 WL 3455271, at \*1 ("Courts must honor" such agreements).

## <u>CONCLUSION</u>

For the foregoing reasons, CrowdStreet respectfully requests that the Court grant its motion in its entirety and issue an order (1) compelling Plaintiffs to submit their claims against CrowdStreet to individual arbitration, (2) staying this action pending resolution of the individual arbitrations it compels, and (3) striking the putative class claims and allegations in the Complaint.

Respectfully submitted,


By: */s/ Amy Pharr Hefley*
    Amy Pharr Hefley
    Baker Botts L.L.P.
    State Bar No. 24046046
    910 Louisiana St.
    Houston, TX 77002
    (713) 229-1234 (tel.)
    (713) 229-1522 (fax)
    amy.hefley@bakerbotts.com

    Daniel B. Rankin
    Baker Botts L.L.P.
    State Bar No. 24116940
    401 S. 1st St., Suite 1300
    Austin, TX 78704
    (512) 322-2500 (tel.)
    (512) 322-2501 (fax)
    daniel.rankin@bakerbotts.com

    -AND-

    Gabrielle L. Gould
    Elizabeth M. Zito
    Claire Daly
    Goodwin Procter LLP
    New York Times Bldg.
    620 8th Ave.
    New York, NY 10018
    (212) 813-8800 (tel.)
    (212) 355-3333 (fax)
    ggould@goodwinlaw.com
    ezito@goodwinlaw.com
    cdaly@goodwinlaw.com

    (*pro hac vice motions pending*)

    **Attorneys for CrowdStreet, Inc.,**
    **Tore Steen, and Ian Formigle**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of April 2024, I electronically filed the foregoing using

the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


*/s/ Amy Pharr Hefley*
Amy Pharr Hefley