# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| VIPUL SHAH, DOLPH HAEGE, SAMEMMA HOLDINGS, LLC, and STEVEN WIONS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CROWDSTREET, INC., TORE STEEN, and IAN FORMIGLE,<br><br>Defendants. | §<br>§<br>§ Civil Action No.: 1:25-cv-383-ADA-SH<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## **DECLARATION OF KRISTEN HOWELL**

I, KRISTEN HOWELL, declare as follows:

1. I am the General Counsel and Chief Compliance Officer of CrowdStreet, Inc. ("CrowdStreet"). I submit this Declaration in support of Defendants' Motion to Compel Individual Arbitration, Stay this Action, and Strike Class Claims and Allegations. Except as otherwise specifically stated, I make this Declaration based upon personal knowledge or information available to me in the regular course of my duties and responsibilities at CrowdStreet. If called as a witness, I would and could competently testify to the matters attested to herein.

2. I also make this Declaration based upon CrowdStreet's business records that were compiled in the ordinary course of business at or near the relevant times set forth herein.

**Background**

3. CrowdStreet operates a website that commercial real estate developers and investors use to exchange information related to private placement real estate offerings, complete subscription documents, and deliver reports and tax documents through the life of real estate projects. Users of the website can browse through the posted opportunities and, if they choose and

are qualified to do so, invest in those opportunities that they have determined meet their individual real estate investment goals.

4.  Before they can make investments through CrowdStreet's website, CrowdStreet requires all users to create a website login, complete a user profile, and establish a CrowdStreet investing account (an "Investing Account"). For all times material to the claims asserted in the Complaint, the creation of a CrowdStreet Investing Account required a user of CrowdStreet's website and services to agree to CrowdStreet's Terms of Use or Terms of Service (the "Terms").

**CrowdStreet Notified Users of the Terms and that the Terms Governed the Use of CrowdStreet's Website and Services**

5.  Every CrowdStreet user's use of CrowdStreet's website and services is governed by the then-current version of the Terms in effect on the date of such use.

6.  The Terms in effect when Plaintiffs Shah and Haege began using CrowdStreet's website and services to make investments were updated on July 25, 2016 (the "2016 Terms"). A true and accurate copy of the 2016 Terms is attached hereto as **Exhibit 1.**

7.  CrowdStreet nominally updated the 2016 Terms on June 30, 2021. The updated Terms CrowdStreet issued in 2021 (the "2021 Terms") did not materially differ from the 2016 Terms. In particular, the provisions in the 2021 Terms providing for the arbitration of disputes against CrowdStreet and waiving the right to bring any class or representative action against CrowdStreet discussed below were identical to provisions in the 2016 Terms. A true and accurate copy of the 2021 Terms is attached hereto as **Exhibit 2**.

8.  CrowdStreet updated the Terms again on June 15, 2022. The update to the Terms CrowdStreet issued in 2022 (the "2022 Terms") reflected the fact that CrowdStreet had moved its corporate headquarters from Portland, Oregon, to Austin, Texas, and were more substantive than the 2021 updates. A true and accurate copy of the 2022 Terms is attached hereto as **Exhibit 3**.

9. On June 15, 2022, CrowdStreet notified all CrowdStreet accountholders of the 2022 update via an e-mail containing a hyperlink to the 2022 Terms.

10. Each of the 2016, 2021, and 2022 Terms state that they govern a user's access to and use of CrowdStreet's website and services.

11. Both the 2016 Terms and the 2021 Terms provide:

> BY ACCESSING, BROWSING, AND/OR OTHERWISE USING THE WEBSITE OR THE SERVICES, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD, AND AGREE TO BE BOUND BY THE TERMS OF SERVICE AND ALL OTHER POLICIES AND PROCEDURES POSTED ON THE WEBSITE. IF YOU DO NOT AGREE TO BE BOUND BY SUCH AGREEMENTS, THEN YOU MUST IMMEDIATELY CEASE ACCESS, BROWSING OR OTHERWISE USE THE WEBSITE OR THE SERVICES.

Ex. 1 (2016 Terms) at 2; Ex. 2 (2021 Terms) at 1 (capitalization in original).

12. The 2022 Terms similarly provide:

> These Terms of Use govern your access to and use of the crowdstreet.com website and our related websites and applications (the "Website") and services (the "Services") provided by CrowdStreet. . . . By accessing the Website, establishing a login on our Website, completing a profile ("User Profile"), establishing an investing account ("Investing Account") . . . you agree that you have read, understand, and accept all of the terms and conditions contained in these Terms of Use. . . . Your compliance with these Terms of Use is a condition to your access to and use of the Website . . . .

Ex. 3 (2022 Terms) at 1.

13. At all times since Plaintiffs agreed to the Terms by creating their Investing Accounts, CrowdStreet's website footer has directed users to its Terms and included a hyperlink to the then-current Terms. This footer is displayed whenever a user accesses CrowdStreet's homepage and nearly all other pages, by personal computer or mobile device.

14. Attached as **Exhibit 4** is magnification of the homepage footer on the date CrowdStreet issued the 2022 update to the Terms. As set forth therein, the footer advises anyone accessing the homepage that "[b]y accessing the CrowdStreet Marketplace, you agree to be bound

by its Terms of Use, Privacy Policy, and any other policies posted on this website." Ex. 4. A hyperlink to the relevant Terms, along with other information, also appears in the footer. At all prior relevant times, a hyperlink to the Terms has appeared in the footer of CrowdStreet's homepage and other pages of the website directing investors to read the Terms.

15. In addition, CrowdStreet's homepage has included a hyperlink to "Disclosures and Disclaimers." From the time Plaintiffs began using the website through June 15, 2022, that hyperlink took users to a page containing the text quoted below with the words "Terms of Use" appearing in a different color and hyperlinking to the then-current version of the Terms:

> The Marketplace is an internet-based technology platform that facilitates administration for investments. Since inception it has operated, and continues to operate, on a strictly non-advisory basis. By accessing the Marketplace through this website and any web pages thereof, you agree to be bound by the Terms of Use, Privacy Policy and other policies and procedures posted on the website.

16. Beginning June 15, 2022, the Disclosures and Disclaimers hyperlink took users to a CrowdStreet Disclosure that instructed them to "consult our Terms of Use for important terms governing your access to and use of crowdstreet.com" and had the words "Terms of Use" hyperlinked to the 2022 terms in a different color. Below is a true and accurate screenshot of the CrowdStreet Disclosure page:

> **CrowdStreet Disclosure**
> IMPORTANT INFORMATION ABOUT WORKING WITH CROWDSTREET
> In compliance with applicable rules, regulations and requirements, CrowdStreet is providing you with the following information and disclosures.
> **1. Terms of Use**
> Please consult our Terms of Use for important terms governing your access to and use of crowdstreet.com (our "Website").

17. Beginning in June 2023, the Disclosures and Disclaimers hyperlink took users to a page containing "Site & Legal Documents" that invited users to view the 2022 Terms through a "View Document" hyperlink and provided, "[t]hese terms govern your use of the CrowdStreet

4

website and our services." Below is a true and accurate screenshot of the "Site & Legal Documents" page:



**Relevant Provisions of the Terms**

18. In a section titled, "Changes to the Terms," both the 2016 and 2021 Terms provide:

> Your use of the Website and the Services is governed by the then-current version of the Terms in effect on the date of such use. CrowdStreet may, at its sole discretion, modify the Terms and/or other policies and procedures governing the Service at any time without notice or liability by posting the modified Terms, policies or procedures to the Website and revising the "Updated" date. Your continued use of the Services after modified Terms have been posted or otherwise provided to you constitutes your agreement to be bound by the then-current Terms.

Ex. 1 (2016 Terms) at 2; Ex. 2 (2021 Terms) at 1.

5

19. The 2022 Terms likewise provide:

> We may amend or modify the Terms of Use at any time by posting the Terms of Use on the Website. We will notify Users of our updated Terms of Use by e-mail, notice on our Website, or similar means. The revised Terms of Use shall be effective on the date posted, but will not apply retroactively. Your continued access to or use of the Website or Services after posting of revised Terms of Use constitutes your acceptance of the revised Terms of Use. If you do not agree to the revisions, your sole and exclusive remedy is to terminate your use of the CrowdStreet Site and Services.

Ex. 3 (2022 Terms) at 1.

20. All three sets of Terms discussed herein contain a dispute resolution provision that requires arbitration of claims against CrowdStreet. Both the 2016 and 2021 Terms provide for arbitration before the Arbitration Service of Portland, Inc.:

> In the event of any claim, controversy or alleged dispute between you and CrowdStreet, its members or affiliates . . . [e]ach party agrees to submit any Dispute for resolution by final binding arbitration. . . . [U]nless the parties agree otherwise in writing, [the Arbitration] will be administered by and in accordance with the rules of the Arbitration Service of Portland, Inc.

Ex. 1 (2016 Terms) at 19; Ex. 2 (2021 Terms) at 12.

21. The 2022 Terms provide for arbitration before a single arbitrator employed by the American Arbitration Association in Austin, Texas:

> **Binding Arbitration. Except as set forth in Section 4.2 with respect to brokerage services, or as provided in an applicable Investment Advisory Agreement with respect to advisory services, any claim, controversy or dispute (each a "Dispute") arising out of or related to the Website, Services, or these Terms of Use shall be subject to binding individual arbitration administered by the American Arbitration Association before a single arbitrator in Austin, Texas.** \*\*\*
>
> Authority of Arbitrator. The terms of this arbitration agreement affect interstate commerce and the enforceability of this section will be both substantively and procedurally governed by and construed and enforced in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 et seq. to the maximum extent permitted by applicable law. Subject to those rules and the terms of this arbitration agreement, the arbitrator will have (i) the exclusive authority and jurisdiction to make all procedural and substantive decisions regarding a Dispute, including the determination of whether a dispute is arbitrable, and (ii) the authority to grant any

remedy that would otherwise be available in court; provided, however, that the arbitrator does not have the authority to conduct a class arbitration or a representative action, which is prohibited by the terms. The arbitrator may only conduct an individual arbitration and may not consolidate more than one individual's claims, preside over any type of class or representative proceeding or preside over any proceeding involving more than one individual.

Ex. 3 (2022 Terms) § 5.

22. All three sets of Terms also contain a class action waiver. The 2016 Terms and the 2021 Terms state:

> You agree that all Disputes will be limited between you, individually, and CrowdStreet. To the full extent allowable by law, you agree that no arbitration proceeding or other dispute resolution proceeding shall be joined with any other party or decided on a class-action basis.

Ex. 1 (2016 Terms) at 20; Ex. 2 (2021 Terms) at 12.

23. Similarly, the 2022 Terms state:

> You and CrowdStreet waive their respective rights to (i) have Disputes resolved in a court, (ii) a jury trial, (iii) a class arbitration, class action, multi-party, or representative proceeding.

Ex. 3 (2022 Terms) § 5.

**Vipul Shah**

24. CrowdStreet's business records show that Plaintiff Vipul Shah created an online Investing Account with CrowdStreet on March 15, 2019, when the 2016 Terms were in effect.

25. Mr. Shah agreed to the 2016 Terms when he created his Investing Account. Below is a true and accurate screenshot of the account-creation form that Mr. Shah was required to complete when he created his Investing Account:

7

[Screenshot of CrowdStreet "Create an Account" page showing registration options via LinkedIn, Google, or email with fields for Email, First Name, Last Name, and Password, followed by an orange "Sign up" button. Below the button reads: "By signing up for CrowdStreet, you confirm that you accept our terms of service and have read and understood our privacy policy." The footer shows Site Map, Policies (Terms of Use, Privacy Policy, Posting Policy), and Contact Us information for Crowdstreet, Inc., 610 SW Broadway, Suite 600, Portland, OR 97205.]

26. The creation of his Investing Account required Mr. Shah to affirmatively click the orange "Sign Up" button located immediately above the statement, "By signing up for CrowdStreet, you confirm that you accept our terms of service . . . ." The words "terms of service" appeared in blue, offsetting them from the surrounding black text, and hyperlinked to the 2016 Terms.

27. On June 15, 2022, CrowdStreet sent an e-mail to Mr. Shah's Gmail account notifying him of the 2022 update to the Terms. CrowdStreet's email included a hyperlink to the 2022 Terms. A true and accurate copy of CrowdStreet's June 15, 2022 e-mail to Mr. Shah is attached hereto as **Exhibit 5**.

28. Shah continued to use CrowdStreet's services after CrowdStreet nominally updated its Terms in 2021. Shah also continued to make investments through the CrowdStreet website after he received direct notice of the 2022 update to the Terms from CrowdStreet on June 15, 2022. According to CrowdStreet's business records, on June 15 and 16, 2022, Mr. Shah accessed and used CrowdStreet's website multiple times. Since then, Mr. Shah has continued to access and use the CrowdStreet website and has continued to make investments through CrowdStreet's website.

29. For example, on June 23, 2022, Mr. Shah completed an investment sponsored by Nightingale Properties LLC through CrowdStreet's website.

30. Each time Mr. Shah visited CrowdStreet's homepage before June 15, 2022, the homepage has displayed multiple links to the Terms.

31. Each time Mr. Shah visited CrowdStreet's homepage since June 15, 2022, the footer and disclaimer, depicted in paragraphs 14 and 16, above, have been displayed.

**Dolph Haege**

32. CrowdStreet's business records show that Plaintiff Dolph Haege created an online Investing Account with CrowdStreet on March 30, 2020, when the 2016 Terms were in effect.

33. Mr. Haege agreed to the 2016 Terms when he created his Investing Account. Below is a true and accurate screenshot of the account-creation form that Mr. Haege was required to complete when he created his Investing Account:



34.     The creation of Mr. Haege's Investing Account required Mr. Haege to affirmatively click the checkbox next to the statement "I agree to the Terms of Service.  I have read this agreement and accept the terms and conditions."  The words "Terms of Service" appeared in blue, offsetting them from the surrounding black text, and hyperlinked to the 2016 Terms.

35.     On June 15, 2022, CrowdStreet sent an e-mail to Mr. Haege's Gmail account notifying him of the 2022 update to the Terms.  CrowdStreet's email included a hyperlink to the 2022 Terms.  A true and accurate copy of CrowdStreet's June 15, 2022 e-mail to Mr. Haege is attached hereto as **Exhibit 6**.

10

36. Haege continued to use CrowdStreet's services after CrowdStreet nominally updated its Terms in 2021. Also, since June 15, 2022, Mr. Haege has continued to access and use the CrowdStreet website and has continued to make investments through CrowdStreet's website.

37. For example, Mr. Haege completed investments sponsored by Nightingale Properties LLC through CrowdStreet's website on June 28, 2022 and December 15, 2022.

38. Each time Mr. Haege has visited CrowdStreet's homepage before June 15, 2022, it has displayed multiple links to the Terms.

39. Each time Mr. Haege has visited CrowdStreet's homepage since June 15, 2022, the footer and disclaimer, depicted in paragraphs 14 and 16, above, have been displayed.

**Steven Wions and Samemma Holdings, LLC**

40. CrowdStreet's business records show that Plaintiff Steven Wions, on behalf of Plaintiff Samemma Holdings, LLC ("Samemma"), of which Mr. Wions is the sole member, created an online Investing Account with CrowdStreet for Samemma on November 2, 2022, when the 2022 Terms were in effect.

41. Mr. Wions agreed to the 2022 Terms on Samemma's behalf when he created Samemma's Investing Account. Below is a true and accurate screenshot of the account-creation form that Mr. Wions was required to complete when he created Samemma's Investing Account:

**Let's build your ideal portfolio.**

Create your free account and get full access to the largest online private real estate investing platform*.

[G] Sign up with Google >

| First Name | Last Name |
| Email | Phone Number |
| Password | Confirm Password |

Are you an accredited investor?  Yes  No

☐ I have read and accept the terms and conditions

Already have an account? Login >                    **Join CrowdStreet**

42.     The creation of Samemma's Investing Account required Mr. Wions to affirmatively click the checkbox next to the statement "I have read and accept the terms and conditions." The words "terms and conditions" appeared in teal and were underlined, offsetting them from the surrounding black text, and hyperlinked to the 2022 Terms.

43.     Since expressly agreeing to the 2022 Terms, Mr. Wions has accessed and used CrowdStreet's website to make investments on Samemma's behalf.

44.     For example, Mr. Wions, on behalf of Samemma, made an investment sponsored by Nightingale Properties LLC on December 6, 2022.

45.     Each time Mr. Wions visited CrowdStreet's homepage since he created Samemma's CrowdStreet Investing Account, the footer and disclaimer, depicted in paragraphs 14 and 16, above, have been displayed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of April, 2025.

*Kristen Howell*
Kristen Howell
General Counsel and Chief Compliance Officer, CrowdStreet, Inc.