**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| VIPUL SHAH, DOLPH HAEGE, SAMEMMA HOLDINGS, LLC, and STEVE WIONS, individually and on behalf of all others similarly situated, | § § § § § § | Civil Action No.: 1:25-cv-383-ADA-SH |
| Plaintiffs, | § § | |
| vs. | § § | |
| CROWDSTREET, INC., TORE STEEN, and IAN FORMIGLE, | § § § | |
| Defendants. | § § | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
INDIVIDUAL ARBITRATION, STAY THIS ACTION, AND STRIKE
<u>CLASS CLAIMS AND ALLEGATIONS</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 4

BACKGROUND ........................................................................................................... 5

    I.      EACH PLANTIFF OPENED INVESTMENT ACCOUNTS .............................. 5

    II.    PLAINTIFFS ALLEGE CLAIMS ARISING OUT OF OR RELATING TO
         BROKERAGE SERVICES OR INVESTMENT ACCOUNTS ........................... 6

    III.   THE TERMS OF SERVICE ............................................................................ 7

LEGAL STANDARDS ................................................................................................ 10

ARGUMENT .............................................................................................................. 11

    I.      The 2022 Terms of Service Apply to This Action – Not the 2016 or 2021 Terms
         of Service ........................................................................................... 11

    II.    This Court and Not the Arbitrator Must Determine Whether This Dispute is a
         "Brokerage Dispute" Subject to Arbitration ....................................... 13

    III.   This Case Involves Class Claims Related to Brokerage Services or Investing
         Accounts under Section 5.2, Which Must be Adjudicated in Court .................... 15

    IV.   Defendants' Motion to Strike Must Be Denied as Moot ..................................... 20

CONCLUSION ........................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Servs. Inc.*,
    2010 WL 11470723 (N.D. Tex. Oct. 18, 2010)..................................................... 11

*Alamo Fireworks, Inc. v. Landstar Ranger, Inc.*,
    2023 WL 4770122 (W.D. Tex. July 5, 2023) ......................................................... 18

*All. Health Grp., LLC v. Bridging Health Options, LLC*,
    553 F.3d 397 (5th Cir. 2008) ................................................................................. 19

*Allen v. Hays*,
    65 F.4th 736 (5th Cir. 2023) ................................................................................. 18

*Bexar Cnty. Hosp. Dist. v. Factory Mut. Ins. Co.*,
    475 F.3d 274 (5th Cir. 2007) ................................................................................. 19

*Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*,
    790 S.W.2d 738 (Tex. Ct. App. 1990) .................................................................... 11

*Butler v. TFS Oilfield Servs., LLC*,
    2017 WL 7052306 (W.D. Tex. Aug. 24, 2017) ....................................................... 10

*Carillo v. ROICOM USA, LLC*,
    486 F. Supp. 3d 1052 (W.D. Tex. 2020) ................................................................ 10

*Citation 2002 Investment LLC v. Occidental Permian, Ltd.*,
    662 S.W.3d 550 (Tex. Ct. App. 2022) .................................................................... 15

*CK DFW Partners Ltd. v. City Kitchen, Inc.*,
    2007 WL 2381259, (N.D. Tex. Aug. 17, 2007) ..................................................... 19

*Coinbase, Inc. v. Suski*,
    602 U.S. 143 (2024) ....................................................................................... 13, 14

*Heritage Res., Inc. v. NationsBank*,
    939 S.W.2d 118 (Tex. 1996) ................................................................................. 15

*Inwood Nat'l Bank v. Fagin*,
    706 S.W.3d 342 (Tex. 2025) ................................................................................. 15

*IQ Prods. Co. v. WD-40 Co.*,
    138 S. Ct. 2620 (2018) .......................................................................................... 10

*IQ Prods. Co. v. WD-40 Co.*,
    871 F.3d 344 (5th Cir. 2017) ................................................................................. 10

*J.M. Davidson, Inc. v. Webster*,
   128 S.W.3d 223 (Tex. Sup. Ct. 2003). ............................................................... 11

*Janvey v. Alguire*,
   847 F.3d 231 (5th Cir. 2017) ............................................................................. 10

*Keaty v. Freeport Indonesia, Inc.*,
   503 F.2d 955 (5th Cir. 1974) ............................................................................. 19

*Kroger Texas L.P. v. Gator Harwood Partners, LLLP*,
   4:22-cv-00980-BP, 2024 WL 191190 (N.D. Tex. Jan. 17, 2024) ....................... 19

*Kubala v. Supreme Prod. Servs., Inc.*,
   830 F.3d 199 (5th Cir. 2016) ............................................................................. 10

*Trudeau v. Google LLC*,
   349 F. Supp. 3d 869 (N.D. Cal. 2018) ............................................................... 13

*United States v. Chesser*,
   2023 WL 6260010 (N.D. Tex. Sept. 26, 2023) ................................................... 19

*Webb v. Investacorp, Inc.*,
   89 F.3d 258 (5th Cir. 1996) ............................................................................... 10

**Other Authorities**

26 CFR Sec 1.199A-5 ........................................................................................... 17

Black's Law Dictionary (12th ed. 2024) ................................................................... 17

Plaintiffs Vipul Shah, Dolph Haege, Samemma Holdings, LLC, and Steven Wions ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, hereby file their Opposition to the Motion to Compel Individual Arbitration, Stay this Action, and Strike Class Claims and Allegations filed by Defendants CrowdStreet, Inc., Tore Steen, and Ian Formigle ("CrowdStreet" or "Defendants"), as follows:

## <u>INTRODUCTION</u>

This case is about CrowdStreet acting as a broker-dealer to sell securities to Plaintiffs and the class. CrowdStreet's terms of service specifically state what to do when there is a class action dispute about brokerage disputes. They explicitly state that class actions are to be maintained in court. Based on Defendants' motion, this Court would never know that class actions involving so called "Brokerage Disputes" are expressly required to be maintained in court and not arbitration because Defendants never tell the Court -- or even reference that such a provision exists – in its motion.

But such a provision does exist. The 2022 Terms of Service, which are applicable to all the claims in this lawsuit, provide:

> Any controversy, claim or dispute arising out of or relating to brokerage services provided to you or an Investing Account (each a "Brokerage Dispute") shall be resolved by arbitration before FINRA Dispute Resolution, Inc. ("FINRA Arbitration") in accordance with FINRA's Code of Arbitration Procedure for Customer Disputes.

(Howell Decl., Ex. 3). While ostensibly requiring Brokerage Services to be subject to arbitration, the 2022 Terms of Service then provide an exception for class actions of Brokerage Disputes. It states:

> [N]o person shall bring a Brokerage Dispute asserted as a putative or certified class action to FINRA Arbitration, ***nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute***

4

*Id.* Thus, the only real question for this Court to answer is whether Defendants have proven that this putative class's claims are not a "Brokerage Dispute" subject to the express exclusion from individual arbitration, as pleaded in the Complaint. If Defendants fail in that proof – and they have – then their motion to compel arbitration must fail.

Defendants have failed to demonstrate that the instant lawsuit is not a "Brokerage Dispute" because:

- First, the 2022 Terms of Service supersede prior terms of service and govern all actions brought after their effective date, like the current action, regardless of when the underlying brokerage investments took place.

- Second, this Court and not an arbitrator must decide whether the lawsuit involves a "Brokerage Dispute" because the section of the Terms of Service governing arbitration of Brokerage Disputes does not have a clause delegating that determination to an arbitrator.

- Third, this action asserts claims and is a dispute about CrowdStreet's participation as a broker-dealer in the offer and sale of securities to plaintiffs through their "Investing Accounts" which is the exact type of Brokerage Dispute that is governed by Section 5.2 of the 2022 Terms of Service.

As a result, the Court must deny the Defendants' Motion and allow this action to proceed before this Court.

## **BACKGROUND**

## I.    **EACH PLANTIFF OPENED INVESTMENT ACCOUNTS**

To better understand the arbitration provision at issue, it is important to understand the mechanics of how transactions are processed through CrowdStreet. To invest in securities through CrowdStreet, investors must open an "Investing Account." (Compl. ¶ 56). At all relevant times, Plaintiffs maintained Investing Accounts with CrowdStreet and purchased securities offered and sold by CrowdStreet through their Investing Accounts. (Compl. ¶¶ 17-20). Defendants also concede and accept this fact. (Motion at 2.) Plaintiff Shah created his CrowdStreet Investing Account on March 15, 2019. (Motion at 2.) Plaintiff Haege created his Investing Account on March

30, 2020.  (Motion at 3.) Plaintiff Wions established an Investing Account on behalf of Samemma on November 2, 2022. (Motion at 3.) Upon information and belief, each of the Plaintiffs invested in Nightingale securities through their Investing Accounts with CrowdStreet after the June 2022 Terms were in effect. (Compl. ¶ 125). In connection with opening an Investing Account, CrowdStreet attempts to bind investors to its applicable terms and conditions (the "Terms")[1], which are governed by Texas law:[2]

## II.    PLAINTIFFS ALLEGE CLAIMS ARISING OUT OF OR RELATING TO BROKERAGE SERVICES OR INVESTMENT ACCOUNTS

Plaintiffs (individually and on behalf of the Class) filed the underlying Complaint against CrowdStreet for operating as a broker-dealer without a license and knowingly accepting the benefits of its unjust conduct in violation of the Texas Securities Act. (Compl. ¶¶ 147-168).

As alleged, at all relevant times between 2012 through 2024, CrowdStreet engaged in the business of effecting transactions in securities for compensation and acted as a broker-dealer without registering as such. (Compl. ¶ 98). During that period, issuers of securities paid CrowdStreet to (i) offer their securities for sale to CrowdStreet's clients; (ii) invite offers for the purchase of the securities offered; (iii) solicit subscriptions for securities offered; and (iv) provide material aid to the issuers in closing such investments. (Compl. ¶ 5). CrowdStreet's business model bears all the hallmarks of a broker-dealer. (Compl. ¶ 97). In fact, there is no functional difference

---

[1.] Unless specified otherwise herein, all mentions of "Terms of Service" or the "Terms" refers to the 2022 version of CrowdStreet's Terms of Service.

[2.] The 2016 Terms of Service were in effect when Plaintiffs Shah and Haege opened their Investing Accounts. The 2022 Terms of Service were in effect when Plaintiffs Wions and Samemma established their Investing Accounts.

between CrowdStreet and a registered broker-dealer that serves as a boutique investment bank, placement agent, or retail broker-dealer focused on private placement investments. (Compl. ¶ 97).

CrowdStreet offered and sold hundreds of millions of dollars of securities in violation of basic FINRA and Texas state registration requirements. (Compl. ¶ 113). Based on the marketing, solicitation, offer, and sale of the Nightingale securities via CrowdStreet, Plaintiffs and others effected purchase orders for Nightingale through their CrowdStreet Investing Accounts. (Compl. ¶ 122). Unfortunately for Plaintiffs, the Nightingale offerings turned out to be a fraud, causing the Plaintiffs to suffer damages to their Investing Accounts. (Compl. ¶ 126-127).

By acting as an unregistered broker-dealer, CrowdStreet took a "salesman's stake" in the securities it offered and sold to the Plaintiffs and the Class—and earned a broker's commission in the process. (Compl. ¶ 132). As a direct and proximate result of CrowdStreet's violations of the Texas Securities Act, the Plaintiffs and Class Members now seek to rescind the investments they purchased from CrowdStreet through their Investing Accounts and further seek to disgorge any ill-gotten gains CrowdStreet obtained through such offerings. (Compl. ¶ 11).

## III.    THE TERMS OF SERVICE

There were three main iterations of CrowdStreet's Terms during the relevant time period—the 2016 Terms, the 2021 Terms, and the 2022 Terms. The 2016 and 2021 Terms are identical in all relevant respects, as the 2021 update to the Terms was nominal and left most of the 2016 Terms unchanged. *Compare* 2016 Terms *with* 2021 Terms. The 2022 update to the Terms was more substantial. All three sets of Terms, however, contain an arbitration/dispute resolution provision. The 2016 and the 2021 Terms provided:

> In the event of any claim, controversy or alleged dispute between you and CrowdStreet, its members or affiliates . . . [e]ach party agrees to submit any Dispute for resolution by final binding arbitration. . . . [U]nless the parties agree otherwise in writing, [the arbitration] will be administered by and in accordance with the rules of the Arbitration Service of Portland, Inc. . . . You agree that all Disputes will be

limited between you, individually, and CrowdStreet. To the full extent allowable by law, you agree that no arbitration proceeding or other dispute resolution proceeding shall be joined with any other party or decided on a class-action basis.

*See* 2016 Terms; 2021 Terms (Howell Decl., Exhs. 1-2.) The dispute resolution provision of the 2022 Terms, however, separates disputes relating to/arising out of brokerage services and Investing Accounts (Section 5.2) from all other disputes (Section 5.1). Section 5.1 of the 2022 Terms provides, in relevant part:

Except as set forth in Section 4.2[3] with respect to brokerage services, or as provided in an applicable Investment Advisory Agreement with respect to advisory services, any claim, controversy or dispute (each a "Dispute") arising out of or related to the Website, Services, or these Terms of Use shall be subject to binding individual arbitration administered by the American Arbitration Association before a single arbitrator in Austin, Texas.

*See* 2022 Terms § 5.1 (Howell Decl., Ex. 3). The exception for brokerage disputes is found in Section 5.2 of the Terms, which provides, in relevant part:

Disputes Related to Brokerage Services. Any controversy, claim or dispute arising out of or relating to brokerage services provided to you or an Investing Account (each a "Brokerage Dispute") shall be resolved by arbitration before FINRA Dispute Resolution, Inc. ("FINRA Arbitration") in accordance with FINRA's Code of Arbitration Procedure for Customer Disputes. Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes.

2022 Terms § 5.2 (Howell Decl., Ex. 3). Thus, according to Section 5.2 of the Terms, any dispute "arising out of or relating to brokerage services provided to [an individual] or and Investing Account" is subject to FINRA arbitration. *Id.*

The 2022 Terms govern here because the 2022 Terms contain an integration clause that supersedes all previous iterations of the Terms to the extent that they are inconsistent:

---

[3.] Section 5.1's reference to "Section 4.2" appears to be incorrect. Section 4.2 concerns email communications—not brokerage disputes. *See* 2022 Terms § 4.2. Thus, while Section 5.1 ostensibly refers to Section 4.2, the drafters, in all likelihood, meant to reference Section 5.2, which concerns "Disputes Related to Brokerage Services." 2022 Terms § 5.2.

> These Terms of Use . . . supersede all prior or contemporaneous communications and proposals, whether electronic, oral, or written, between CrowdStreet and you with respect to the Website and the Services, provided, however, that any and all other agreements between CrowdStreet and you, not inconsistent with these Terms of Use, will remain in full force and effect.

2022 Terms § 20 ( Howell Decl., Ex. 3). Accordingly, to the extent the relevant provisions from the 2016 and 2021 terms are inconsistent with the 2022 Terms, the 2022 Terms are controlling.

Further, Section 5.1 of the 2022 Terms contains a delegation clause:

> [T]he arbitrator will have (i) the exclusive authority and jurisdiction to make all procedural and substantive decisions regarding a Dispute, including the determination of whether a dispute is arbitrable, and (ii) the authority to grant any remedy that would otherwise be available in court; provided, however, that the arbitrator does not have the authority to conduct a class arbitration or a representative action, which is prohibited by the terms.

2022 Terms § 5.1 (Howell Decl., Ex. 3). Because Section 5.2 explicitly states that "Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes," the delegation clause only applies to non-brokerage disputes under Section 5.1—it does not apply to brokerage disputes under Section 5.2. 2022 Terms § 5.2.[4] Moreover, Section 5.2 of the 2022 Terms precludes parties from bringing a putative class action in the FINRA arbitration forum, while contractually permitting a class action to proceed in Court:

> Pursuant to FINRA rules, no person shall bring a Brokerage Dispute asserted as a putative or certified class action to FINRA Arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute or who is a member of a putative class who has not opted out of the class with respect to any Brokerage Dispute claims encompassed by the putative class action until: (1) the class certification is denied; (2) the class is decertified; or (3) the person is excluded from the class by the court.

---

[4.] Section 5.1's class action waiver does not apply to brokerage disputes under Section 5.2 for the same reasons as the delegation clause.

2022 Terms § 5.2 Howell Decl., Ex. 3). Additionally, Section 20 of the 2022 Terms mandates that

cases be brought in the state or federal courts located in Travis County, Texas:

> Governing Law; Jurisdiction. These Terms are governed by the laws of the State of Texas without regard to conflict of law principles. You and CrowdStreet submit to the personal and exclusive jurisdiction of the state courts and federal courts located within Travis County, Texas for resolution of any lawsuit or court proceeding permitted under these Terms.

2022 Terms § 20 (Howell Decl., Ex. 3).

## <u>LEGAL STANDARDS</u>

The party seeking to enforce an arbitration agreement bears the burden to prove that a valid

agreement to arbitrate exists. *Butler v. TFS Oilfield Servs., LLC*, SA-16-CV-1150-FB, 2017 WL

7052306, at *2 (W.D. Tex. Aug. 24, 2017) ("A party moving to compel arbitration bears the initial

burden to present the court with the existence of a valid agreement to arbitrate and, where

applicable, a valid delegation clause."). *See also, Carillo v. ROICOM USA, LLC*, 486 F. Supp. 3d

1052, 1061 (W.D. Tex. 2020) ("Under Texas state law, the party seeking to compel arbitration

bears the burden of establishing the existence of an agreement to arbitrate.").

In assessing a motion to compel arbitration, a court must first determine "whether the

parties entered into any arbitration agreement at all." *Kubala v. Supreme Prod. Servs., Inc.*, 830

F.3d 199, 201 (5th Cir. 2016) (emphasis in original)." This first step is a question of [Texas]

contract formation [law] only—did the parties form a valid agreement to arbitrate some set of

claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), cert. denied, 138 S. Ct.

2620 (2018); *see also Webb v. Investacorp, Inc.*, 89 F.3d 258 (5th Cir. 1996).

"While there is a strong federal policy favoring arbitration, the policy does not apply to the

initial determination whether there is a valid agreement to arbitrate." *Janvey v. Alguire*, 847 F.3d

231, 240 (5th Cir. 2017) (internal quotation marks and citation omitted). In addition, Texas has no

presumption in favor of arbitration. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 at 227 (Tex. Sup. Ct. 2003).

## ARGUMENT

I.  **The 2022 Terms of Service Apply to This Action – Not the 2016 or 2021 Terms of Service**

The 2022 Terms of Service apply to the current action because they supersede the earlier terms. Defendants have shown – and Plaintiffs agree – that each Plaintiff continued to use Defendants' services at least through the time of the 2022 Terms and that Plaintiffs were notified of the implementation of the "updated" 2022 Terms of Service.[5] One provision in the 2022 Terms of Service is an integration clause. It provides that:

> Entirety of Agreement. **These Terms of Use**, and any attachments, disclosures, agreements and policies referred to in these Terms of Use **contain the entire agreement between Crowd Street and you and supersede all prior or contemporaneous communications and proposals**, whether electronic, oral, or written, between Crowd Street and you with respect to the Website and the Services, provided, however, that any and all other agreements between Crowd Street and you, **not inconsistent with these Terms of Use**, will remain in full force and effect. (Howell Decl., Ex. 3)

Integration clauses like the one above are read to give them their specific effect of superseding any prior agreements that are inconsistent with the current agreement on the same subject matter. *See, e.g.*, *Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Servs. Inc.*, No. 3:10-CV-01172-P, 2010 WL 11470723, at *3 (N.D. Tex. Oct. 18, 2010) ("Under Texas law, when parties have entered into two contracts with inconsistent terms that cannot subsist together, the rule of contracts conclusively presumes that the latter contract supersedes the earlier contract."); *Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 744 (Tex. Ct. App. 1990) ("[I]t

---

[5] The Terms of Service have not changed in pertinent part since the 2022 Terms of Service and no party is raising any issue as to subsequent terms.

is well settled that when contracting parties have concluded a valid integrated agreement dealing with the subject matter between them . . . [it] will prevent enforcement of prior or contemporaneous agreements which are inconsistent with the integrated agreement.").

Here, the 2016 and 2021 Terms of Service are inconsistent with the 2022 Terms of Service on the issue of arbitration.  Both the 2016 and 2021 Terms of Service provide for ***all claims*** of any type to be resolved through arbitration before the Arbitration Service of Portland, Inc. in Portland, Oregon. (Howell Decl., Ex. 1 at 19; Mot. Ex. 2 at 12).  Neither the 2016 nor the 2021 Terms of Service provide for Brokerage Dispute related claims to be arbitrated before FINRA – indeed neither mention brokerage services nor Brokerage Disputes at all. And neither the 2016 nor the 2021 Terms of Service provide for class action claims of Brokerage Disputes to stay in court.

In contrast, the 2022 Terms of Services provide for certain limited claims to be arbitrated before the AAA in Austin, Texas. And, as discussed above, the 2022 Terms of Service provide for disputes relating to brokerage services or investing accounts, so-called Brokerage Disputes, to be arbitrated before FINRA without any specified location and to preclude anyone from enforcing an arbitration of a class action related to Brokerage Disputes. Because the 2022 Terms of Service have an integration clause and because the prior Terms of Service are inconsistent with the 2022 Terms of Service concerning the arbitration of claims, the 2022 Terms of Service supersede the prior terms. Importantly, in accordance with the plain language of the 2022 Terms of Service, the provisions concerning arbitration apply to all claims ***asserted*** after the date of the Terns of Service even if such claims ***accrued*** prior to the date of the 2022 Terms of Service.

The 2022 Terms of Service state that they will be effective on the date that they are posted but that they will not apply "retroactively." However, retroactivity in that context does not mean that claims asserted in the future must resort to prior iterations of the Terms of Service. *See*

*Trudeau v. Google LLC*, 349 F. Supp. 3d 869 at 878 (N.D. Cal. 2018) ("[The new arbitration provision] applies prospectively from the time of enactment. That the *scope* . . . covers claims that accrued prior to enactment does not mean that the [arbitration provision] itself has retroactive application.").

## II.   This Court and Not the Arbitrator Must Determine Whether This Dispute is a "Brokerage Dispute" Subject to Arbitration

Another preliminary issue for this Court to decide is whether the Court or an arbitrator should determine whether this action relates to a Brokerage Dispute subject to arbitration. Some arbitration agreements contain a delegation clause which "delegates" to the arbitrator the authority to decide the gating issue of whether the agreement applies to a specific dispute. In those instances, the agreement shifts the decision-making power on the gateway issues from the court to the arbitrator. The 2022 Terms of Service contain such a delegation clause. But that delegation clause only applies to claims that are not related to Brokerage Disputes. The Terms of Service specifically provide that Brokerage Dispute-related claims are not subject to the delegation clause.

Thus, this Court must decide whether this action is subject to Section 5.1 or 5.2 because the delegation clause in Section 5.1 delegates the issue of arbitrability to the arbitrator whereas Section 5.2 does not, and thus presents this Court with the issue of arbitrability.   Courts repeatedly have held that courts are responsible for answering the issue of whether a delegation clause applies; not arbitrators. Indeed, "[a]rbitration is a matter of contract and consent, and [the Supreme Court] ha[s] long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). Moreover, while there is a presumption of arbitrability for *substantive* disputes, "courts should not assume that the parties agreed to arbitrate *arbitrability* unless there is clear and unmistakable evidence that they did so." *Id.* at 149 (emphasis added) (citations omitted). As such, if a party challenges the applicability of

13

a delegation clause itself, *i.e.*, whether the parties agreed to arbitrate arbitrability, as "per usual, *that* question must be answered by a court." *Id.* (emphasis original).

Here, as in *Coinbase*, there are two mutually exclusive arbitration provisions, and the Court is charged with deciding which one applies. Section 5.1 applies to "any claim, controversy or dispute (each a 'Dispute') arising out of or related to the Website, Services, or these Terms of Use….." "[e]xcept as set forth in Section [5].2 with respect to brokerage services…" June 2022 Terms of Use § 5.1 (Howell Decl., Exh. 3). If Section 5.1 applies, then the dispute is "subject to binding individual arbitration administered by the American Arbitration Association before a single arbitrator in Austin, Texas." *Id.* And Section 5.1 contains a delegation clause that grants to an arbitrator "the exclusive authority and jurisdiction to make… the determination of whether a dispute is arbitrable…" *Id.*

In contrast, Section 5.2 applies to "[a]ny controversy, claim or dispute arising out of or relating to brokerage services provided to you or an Investing Account (each a 'Brokerage Dispute')" which disputes "shall be resolved by arbitration before FINRA Dispute Resolution, Inc. in accordance with FINRA's Code of Arbitration Procedure for Customer Disputes." June 2022 Terms of Use § 5.2 (ECF No. 11-4). In addition, Section 5.2 omits a delegation clause and affirmatively *precludes* the parties from (i) bringing any action subject to Section 5.2 in an arbitration; or (ii) attempting to enforce an arbitration provision in connection with any such action. It states:

> Pursuant to FINRA rules, no person shall bring a Brokerage Dispute asserted as a putative or certified class action to FINRA Arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute…. until: (1) the class certification is denied; (2) the class is decertified; or (3) the person is excluded from the class by the court. *Id.*

And to eliminate all doubt that the implications of an action being subject to Section 5.2 are far different than Section 5.1, Section 5.2 states that "Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes."

This contract thus presents the Court with a critical threshold issue of whether this action is subject to Section 5.1 or 5.2 and thus whether the issue of arbitrability has been delegated. if this action is subject to Section 5.2, then the issue of arbitrability cannot be decided by an arbitrator. If this action is subject to Section 5.1, by contrast, then an arbitrator is charged with deciding the issue of arbitrability.

III.    **This Case Involves Class Claims Related to Brokerage Services or Investing Accounts under Section 5.2, Which Must be Adjudicated in Court**

A.  **This Case Involves Claims Related to Brokerage Services or Investing Accounts**

Defendants have failed to show that Section 5.1 and not 5.2 applies to this dispute. Under Texas law, when interpreting a contract, courts "look not for the parties' actual intent but for their intent as expressed in the written document." *Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342 (Tex. 2025). Courts "will enforce [an] unambiguous document as written." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Plain words should be given their plain meaning. Courts "see[k] to harmonize and give effect to each provision so that none are rendered meaningless" and will "resolve any conflicts by harmonizing the provisions, where possible…" *Citation 2002 Investment LLC v. Occidental Permian, Ltd.*, 662 S.W.3d 550, 555 (Tex. Ct. App. 2022).

Section 5.1 of the 2022 Terms of Service states that:

Except as set forth in Section [5].2[6] with respect to brokerage services, or as provided in an applicable Investment Advisory Agreement with respect to advisory services, any claim, controversy or dispute (each a "Dispute") arising out of or related to the Website, Services, or these Terms of Use shall be subject to binding individual arbitration administered by the American Arbitration Association before a single arbitrator in Austin, Texas.

2022 Terms § 5.1.

Section 5.1, thus carves claims subject to Section 5.2 out of Section 5.1's AAA arbitration clause, and instead requires those claims to be brought either through FINRA arbitration or, in the case of putative class actions (as here), in court. Section 5.2 provides:

**Disputes Related to Brokerage Services.** Any controversy, claim or dispute arising out of or relating to brokerage services provided to you or an Investing Account (each a "**Brokerage Dispute**") shall be resolved by arbitration before FINRA Dispute Resolution, Inc. ("**FINRA Arbitration**") in accordance with FINRA's Code of Arbitration Procedure for Customer Disputes. Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes.

Pursuant to FINRA rules, no person shall bring a Brokerage Dispute asserted as a putative or certified class action to FINRA Arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute or who is a member of a putative class who has not opted out of the class with respect to any Brokerage Dispute claims encompassed by the putative class action until: (1) the class certification is denied; (2) the class is decertified; or (3) the person is excluded from the class by the court.

2022 Terms § 5.2.

Under the Terms of Services' plain language the claims asserted in this action easily and comfortably fit withing the plain meaning of the terms "relating to brokerage services provided to you" or "Investing Account" in Section 5.2.

---

[6.] Section 5.1's reference to "Section 4.2" appears to be incorrect. Section 4.2 concerns email communications—not brokerage disputes. *See* 2022 Terms § 4.2. Thus, while Section 5.1 ostensibly refers to Section 4.2, the drafters, in all likelihood, meant to reference Section 5.2, which concerns "Disputes Related to Brokerage Services." 2022 Terms § 5.2.

Regarding "brokerage services", the Plaintiffs have alleged that CrowdStreet provided brokerage services – albeit unregistered – to the Plaintiffs and the Class. As applied to Section 5.2, the term "brokerage services" is undefined and therefore subject to a broad interpretation. According to the IRC, brokerage services are those "in which a person arranges transactions between a buyer and a seller with respect to securities for a commission or fee." 26 CFR Sec 1.199A-5; *accord* BROKER, Black's Law Dictionary (12th ed. 2024) ("A person engaged in the business of conducting securities transactions for the accounts of others."). Given the allegations in the Complaint, there is no question that this dispute arises out of "brokerage services" under that phrase's ordinary meaning. Plaintiffs allege that CrowdStreet acted as a broker-dealer, for example, by soliciting purchases of specific securities, counseling sponsors on securities offerings, purporting to conduct due diligence on sponsors and the securities they sought to offer through CrowdStreet, and facilitating securities transactions, all for transaction-based compensation. (Compl. ¶¶ 26–117). Plaintiffs' claims are therefore subject to Section 5.2 because they relate to either or both Plaintiffs' Investing Accounts or the brokerage services they received.

This claim also relates to Investing Accounts of the Plaintiffs and the class and is therefore subject to Section 5.2. To invest in CrowdStreet-sponsored securities offerings, Plaintiffs were **<u>required</u>** to create and invest through Investing Accounts maintained by CrowdStreet. (*See* Kons Decl. ¶¶ 17-18). ("You must have at least one investing account set up as a **requirement to submit an offer** to invest in a deal on our platform."). CrowdStreet concedes this and Plaintiffs allege that each of them established and purchased securities through their respective Investing Accounts. (Mot. at 6). Plaintiffs' claims relate to purchases of securities they made with their Investing Account. (Compl. ¶¶ 122–128, 134–37).

Notably, despite it being their burden to do so, Defendants do not offer any reason why the claims here are not related to brokerage services or Investing Accounts. In fact, they do not even reference the FINRA arbitration and corresponding class action provision, or brokerage services at all in their motion. They should not be heard to first raise their arguments regarding this portion of the contract on reply. *Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023) ("[A]n argument cannot be raised for the first time in a reply brief, so it is waived."); *see also, Alamo Fireworks, Inc. v. Landstar Ranger, Inc.*, SA-23-CV-116-FB (HJB), 2023 WL 4770122, at *3 (W.D. Tex. July 5, 2023) ("Defendant's reply brief additionally raises an argument under the economic loss rule. As this argument was raised for the first time in its reply brief, it is waived for purposes of the motion to dismiss."). That is particularly the case here where Defendants have known that Plaintiffs have always contended these claims raise "Brokerage Disputes" because the same lawyers have litigated these disputes against each other several times before FINRA.[7]  Waiting to address these issues until reply purposely hides the ball and fails to meet their burden.

Further, to the extent CrowdStreet argues that Section 5.2 relates only to disputes with its broker-dealer, CrowdStreet Capital, LLC, that is meritless.  CrowdStreet Capital, LLC was not in full operation or processing transactions until at least September 2023; meaning, that interpretation would require a provision to be meaningless for at least a year after it became effective in June 2022, which would be nonsensical.  (Kons Decl. ¶ 16).[8] *Kroger Texas L.P. v. Gator Harwood*

---

[7] Of the seven FINRA panels that have considered whether substantially similar claims are subject to Section 5.2 as opposed to 5.1, four found that they were subject to Section 5.2.

[8] For similar reasons, Section 1.2—which defines "Brokerage Services"—cannot reasonably be interpreted to encompass only the placement of securities by CrowdStreet Capital, a registered broker-dealer. The Terms of Service became effective in June 2022 and that entity did not place securities until September 2023, well past the accrual of almost all the claims in this case.  It would be nonsensical for Section 5.2 to apply to an entity that did not even provide such services until over a year after the terms became effective.

*Partners, LLLP*, 4:22-cv-00980-BP, 2024 WL 191190, at *3 (N.D. Tex. Jan. 17, 2024) ("Courts also should not interpret a contract in a way that leads to absurd results.").  It likewise would read an impossibility into the contract. There simply was no CrowdStreet Capital to broker securities transactions with, so it would be illusory to interpret the contract that way. *United States v. Chesser*, 4:21-cv-01257-O, 2023 WL 6260010, at *5 (N.D. Tex. Sept. 26, 2023) ("Because the Government's interpretation [of the contract] makes it essentially impossible for the Defendants to even bring non-permanent structures, such as cars, on the Easement, the Court rejects the Government's unreasonable interpretation to avoid construing the Easement in a manner that would lead to absurd results.").

Further, to the extent there is any ambiguity as to whether this action is subject to Section 5.2 (there is not), that ambiguity must be construed against Crowdstreet as the drafter of the contract.  *Bexar Cnty. Hosp. Dist. v. Factory Mut. Ins. Co.*, 475 F.3d 274 (5th Cir. 2007) "[A]n ambiguous or inconsistent provision of a contract should be construed strictly against the party that drafted it."); *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397 (5th Cir. 2008) ("[F]orum-selection clauses[, like other contract provisions,] are interpreted *contra proferentem:* when presented with two reasonable, but conflicting, interpretations of a contract provision, [courts] adopt the interpretation less favorable to the drafter.") (citing *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974)); *CK DFW Partners Ltd. v. City Kitchen, Inc.*, 6-cv-1598, 2007 WL 2381259, (N.D. Tex. Aug. 17, 2007) ("Ambiguity in a standard form contract is generally resolved against the party who drafted it.").[9]

---

[9] Crowdstreet incorrectly contends that Plaintiffs' claims against Steen and Formigle are subject to the arbitration clause where Steen and Formigle are non-signatories.

IV.    **Defendants' Motion to Strike Must Be Denied as Moot**

Given that Section 5.2 applies to this dispute – which requires putative class actions to be brough in this Court – Defendants' motion to strike Plaintiffs' class allegations is meritless, and must be denied as moot.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Plaintiffs request that the Court deny the Motion in its entirety.

Dated this May 9, 2025                                 **BOIES SCHILLER FLEXNER LLP**

By:    */s/ Adam Shaw*
      Adam R. Shaw
      30 South Pearl Street, 12th Floor
      Albany, NY 12207
      Tel.: (518) 434-0600
      Fax: (518) 434-0665

      Marc Ayala (pro hac vice pending)
      333 Main Street
      Armonk, NY 10504
      Tel.: (914) 749-8200
      Fax: (914) 749-8300
      mayala@bsfllp.com

      **LAW OFFICES OF JOSHUA B. KONS, LLC**

      Joshua Kons (pro hac vice pending)
      92 Hopmeadow Street, FL 2
      Weatogue, CT 06089
      Tel.: (860) 920-5181
      joshuakons@konslaw.com

      **STOLTMANN LAW OFFICES, P.C.**

      Joseph Wojciechowski (pro hac vice pending)
      Sara Hanley (pro hac vice pending)
      Stoltmann Law Offices, P.C.
      2000 Center Drive, Suite East C218

Hoffman Estates, IL 60192
Tel: (312) 332-4200
joe@stoltlaw.com
sara@stoltlaw.com

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically

(via CM/ECF) on May 9, 2025, and that all counsel of record were served by CM/ECF.

*/s/ Adam Shaw*
Adam R. Shaw