**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| VIPUL SHAH, DOLPH HAEGE, SAMEMMA HOLDINGS, LLC, and STEVE WIONS, individually and on behalf of all others similarly situated, | § | Civil Action No.: 1:25-cv-383-ADA-SH |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| CROWDSTREET, INC., TORE STEEN, and IAN FORMIGLE, | § | |
| Defendants. | § | |

**<u>PLAINTIFFS' OBJECTION TO REPORT AND RECOMMENDATION</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

PROCEDURAL HISTORY ........ 6

LEGAL STANDARD ........ 6

ARGUMENT ........ 7

I. Under the 2022 Terms, Brokerage Disputes under Section 5.2 Are Not Subject to the Delegation Clause in Section 5.1 ........ 7

II. Controlling Fifth Circuit Precedent Confirms that, in these Circumstances, Courts—Not Arbitrators—Must Determine Whether the Nature of the Dispute Subjects It to the Delegation Clause ........ 7

III. The Report and Recommendation Contradicts Fifth Circuit Precedent by Failing to Determine or Find That There Was Clear and Unmistakable Evidence that Arbitrability of Brokerage Disputes Was Delegated to An Arbitrator ........ 10

IV. Under the Controlling Precedent, and Properly Construed, the Delegation and Arbitration Provisions in Section 5.1 of the 2022 Terms Do Not Apply to Plaintiffs' Claims under Section 5.2 of the 2022 Terms ........ 11

CONCLUSION ........ 14

Plaintiffs Vipul Shah, Dolph Haege, Samemma Holdings, LLC, and Steven Wions ("Plaintiffs"), individually and on behalf of all other persons similarly situated, respectfully submit this objection pursuant to Fed. R. Civ. P. 72 to the Magistrate Judge's Order and Report and Recommendation of the United States Magistrate Judge (Dkt. 30.)

## PRELIMINARY STATEMENT

The Complaint in this case asserts that Defendants failed to register as a broker when selling securities. Specifically, the putative class action Plaintiffs allege that Defendants provided illegal brokerage services in connection with Plaintiffs' investing accounts. Under the parties' contract, general disputes are to be sent to arbitration before the American Arbitration Association ("AAA"); but brokerage disputes relating to brokerage services provided to investing accounts are not. Under the parties' contract, the determination of whether ***a general dispute*** is subject to arbitration before the AAA ***is delegated*** to the AAA arbitrator. The determination of whether ***a brokerage dispute*** relating to brokerage services provided to an investing account is subject to arbitration ***is not delegated*** to an arbitrator; it remains for the Court to determine. Respectfully, the Magistrate failed to observe this distinction and erroneously ruled that the arbitrability of ***all*** disputes must be sent to the AAA. (Dkt. 30 at 10.) Failing to recognize the carve-out of brokerage disputes from general disputes that are sent to AAA arbitration along with a delegation of arbitrability contradicts the Fifth Circuit's direction that district courts must distinguish between particular types of claims that are carved out of arbitration delegation clauses and those that are not, and erroneously fails to find that the parties agreed to delegate the question of arbitrability to the AAA with clear and unmistakable evidence that they did so. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate a particular

type of claim is to be decided by the Court, not the arbitrator. Further, the Magistrate failed to read the contract according to its plain language and against the drafter.

Under a proper analysis, there is not clear and unmistakable evidence that the delegation clause applies to Plaintiffs' claims which relate to brokerage services provided to Investing Accounts. The Court, and not an arbitrator, must determine whether the claims are Brokerage Disputes relating to brokerage services provided to Investing Accounts subject to Section 5.2 of the contract. Because the claims asserted here are class claims relating to brokerage services provided to Investing Accounts, under a plain reading of the contract, they must be asserted in Court and are not subject to arbitration.

## STATEMENT OF FACTS

This action seeks the rescission of investments made through CrowdStreet while it was operating as an unregistered broker-dealer offering securities to investors across the United States. (Dkt. 1 ¶ 1.) The Plaintiffs have alleged that between 2012 through 2022, CrowdStreet acted as a securities broker without registering as a broker dealer with the State of Texas or any other authority. (*Id.* ¶ 4.) Plaintiffs have also alleged that CrowdStreet's senior executives, Tore Steen and Ian Formigle, acted as "control persons" of CrowdStreet and are therefore jointly and severally liable to the Plaintiffs and the Class under the Texas Securities Act. (*Id.* ¶¶ 156-161.)

Plaintiffs allege that CrowdStreet engages in broker-dealer activity through its website by soliciting the sale of Regulation D exempt securities from investors like Plaintiffs and the Class. (*Id.* ¶¶ 43-55.) In order to invest through CrowdStreet, investors must open what is referred to as an "Investing Account" with CrowdStreet. (*Id.* ¶ 57.) After establishing an Investing Account with CrowdStreet, Plaintiffs allege that CrowdStreet acts in a broker capacity and offers brokerage services by requiring the investors to verify certain facts and certify that they are an accredited

investor, and in some instances to sign an Investing Account agreement, which creates a contractual relationship between the investor, CrowdStreet and CrowdStreet Capital. (*Id.* ¶ 58.)

Plaintiffs further allege that CrowdStreet engaged in broker-dealer activity and rendered brokerage services by distributing key documentation to the investors (such as offering documents), distributing and collecting subscription documents, and relaying purchase orders to the investment sponsor on the investor's behalf to effectuate the securities purchase transactions. (*Id.* ¶¶ 60-73.) In consideration for these brokerage services, Plaintiffs allege that CrowdStreet received transaction-based compensation, or a "salesman's stake" in the securities offered and sold, which is one of the hallmarks of broker-dealer activity. (*Id.* ¶¶ 74-85.)

Plaintiffs alleged that by acting by acting as an unregistered broker-dealer, CrowdStreet offered and sold to the Plaintiffs and the Class many investments in sponsors through their Investing Accounts that turned out to be a partial or complete loss. (*Id.* ¶ 137.)

Plaintiffs have alleged that they suffered injuries to the investments held in their CrowdStreet Investing Accounts. Thus, as a direct and proximate result of Defendants' violations of the Texas Securities Act, the Plaintiffs and Class now seek to rescind the investments they purchased from CrowdStreet, seek to disgorge any ill-gotten gains CrowdStreet obtained through such offerings, seek an award of punitive damages, attorneys' fees and costs, along with injunctive and declaratory relief. *Id.* ¶¶ 138, 170(a)-(j).

The parties agree that the 2022 Terms apply to this dispute. The 2022 Terms provide for certain types of claims to be treated differently: one type of claim (a "Dispute") calls for adjudication in an AAA arbitration with a delegation clause, and another type of claim (a

Brokerage Dispute") calls for adjudication without a delegation clause.[1] The bulleted subsections in the 2022 Terms are not numbered, despite the parties having intended for them to have subsection numbers as reflected in the text referring to such numbers (e.g., "Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes"). Accordingly, in quoting the relevant provisions of the 2022 Terms below, Plaintiffs have inserted bracketed subsection numbers for clarity:

> **5. Dispute Resolution.**
>
> - **[5.1] Binding Arbitration. Except as set forth in Section [5].2[2] with respect to brokerage services, or as provided in an applicable Investment Advisory Agreement with respect to advisory services, any claim, controversy or dispute (each a "Dispute") arising out of or related to the Website, Services, or these Terms of Use shall be subject to binding individual arbitration administered by the American Arbitration Association before a single arbitrator in Austin, Texas.** You and CrowdStreet waive their respective rights to (i) have Disputes resolved in a court, (ii) a jury trial, (iii) a class arbitration, class action, multi-party, or representative proceeding. Each party will notify the other party in writing of any dispute within thirty (30) days of the date it arises, so that the parties can attempt in good faith to resolve the dispute informally.
>   - **[5.1(a)] Notice.** Notice to CrowdStreet shall be sent by email to legal@CrowdStreet.com. Notice to the User shall be sent by email to the then-current email address associated with the User's account and/or Investing Account. Your notice must include (i) your name, postal address, email address, and telephone number, (ii) a description in reasonable detail of the nature or basis of the dispute, and (iii) the specific relief that you are seeking. If we cannot agree how to resolve the dispute within thirty (30) days after the date notice is received by the applicable party, then either party may commence an arbitration proceeding.
>   - **[5.1(b)] Costs; Discovery.** Each party shall bear its own costs, fees and expenses of arbitration. Each party will, upon written request of the other party, promptly provide the other with copies of all relevant documents.

[1] There is a third type of claim that also requires adjudication in court without a delegation clause, and that is injunctive relief claims brought by CrowdStreet as found in Section 5.1(d). That type of claim is not at issue in this case, but it illustrates that the parties carefully delineated which claims are subject to the delegation clause and which are not.

[2] The parties agree that this sentence erroneously refers to "Section 4.2" when it is meant to refer to "Section 5.2."

There shall be no other discovery allowed unless the amount in controversy exceeds $250,000 and such discovery is ordered by the arbitrator. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitration, and all aspects thereof (arguments, testimony, evidence, the decision, award, etc.), shall be confidential, except when used in the course of a judicial proceeding (e.g., to confirm, vacate or modify the award) or regulatory proceeding, as may be requested by a governmental entity or as otherwise may be required by law.

- **[5.1(c)] Authority of Arbitrator.** The terms of this arbitration agreement affect interstate commerce and the enforceability of this section will be both substantively and procedurally governed by and construed and enforced in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 et seq. to the maximum extent permitted by applicable law. Subject to those rules and the terms of this arbitration agreement, the arbitrator will have (i) the exclusive authority and jurisdiction to make all procedural and substantive decisions regarding a Dispute, including the determination of whether a dispute is arbitrable, and (ii) the authority to grant any remedy that would otherwise be available in court; provided, however, that the arbitrator does not have the authority to conduct a class arbitration or a representative action, which is prohibited by the terms. The arbitrator may only conduct an individual arbitration and may not consolidate more than one individual's claims, preside over any type of class or representative proceeding or preside over any proceeding involving more than one individual.

- **[5.1(d)] Intellectual Property Matters.** Notwithstanding the provisions of this section CrowdStreet may seek injunctive relief in any court having jurisdiction to protect its intellectual property rights.

- **[5.2] Disputes Related to Brokerage Services.** Any controversy, claim or dispute arising out of or relating to brokerage services provided to you or an Investing Account (each a "**Brokerage Dispute**") shall be resolved by arbitration before FINRA Dispute Resolution, Inc. ("**FINRA Arbitration**") in accordance with FINRA's Code of Arbitration Procedure for Customer Disputes. Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes.

  Pursuant to FINRA rules, no person shall bring a Brokerage Dispute asserted as a putative or certified class action to FINRA Arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute or who is a member of a putative class who has not opted out of the class with respect to any Brokerage Dispute claims encompassed by the putative class action until: (1) the class certification is denied; (2) the class is decertified; or (3) the person is excluded from the class by the court.

(Dkt. 11-4 at 6-7.)

## PROCEDURAL HISTORY

This action was filed on March 14, 2025. (Dkt. 1.) On April 11, 2025, Defendants filed their Motion to Compel Arbitration, Stay this Action, and Strike Class Claims and Allegations. (Dkt. 11.) On May 9, 2025, Plaintiffs filed their Response in Opposition to the Motion to Compel Arbitration. (Dkt. 17.) On May 23, 2025, Defendants filed their Response in Support of the Motion to Compel Arbitration. (Dkt. 23.) On July 11, 2025, the Magistrate Judge entered an Order and Report and Recommendation that the District Court grant in part and deny in part Defendant's Motion to Compel Arbitration, Stay this Action, and Strike Class Claims and Allegations. (Dkt. 30.) It recommended that the motion to compel arbitration be granted but the remaining requests denied. (Dkt. 30.)

This Objection is filed within fourteen days after Plaintiffs were served a copy of the Order and thus this Objection is timely.

## LEGAL STANDARD

Federal Rule 72 provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge related to a dispositive motion. Fed. R. Civ. P. 72(b)(2). An objection must be "sufficiently specific to put the district court on notice of the urged error." *Williams v. K & B Equipment Co., Inc.*, 724 F.2d 508, 511 (5th Cir. 1984). Courts must review *de novo* any of the Magistrate's conclusions to which a party specifically objected. *Whitinger v UTMB*, No. SA-25-CV-498-XR, 2025 WL 2060791, at * 3 (W.D. Tex. July 23, 2025); 28 U.S.C. § 636(b)(1).

The Report and Recommendation's reasoning and conclusions are contrary to the Fifth Circuit's rules for determining when an arbitration delegation clause applies to a distinct type of claim in a contract, where some claims may be subject to the delegation clause and some may not.

The Report and Recommendation failed to require clear and unmistakable evidence of delegation of arbitrability and failed to properly construe the terms of the contract.

## ARGUMENT

### I. Under the 2022 Terms, Brokerage Disputes under Section 5.2 Are Not Subject to the Delegation Clause in Section 5.1

As noted, the parties agree that the 2022 Terms apply to this dispute. Section 5 of the 2022 Terms, entitled "Dispute Resolution," distinguishes between different types of claims and provides for those claims to be resolved differently than each other. (Dkt. 11-4 at 6-7.)

*First*, Section 5.1 titled "Binding Arbitration" provides for general "Disputes" to be adjudicated in AAA arbitration and it delegates the issue of whether general "Disputes" are subject to AAA arbitration to the arbitrator.

*Second,* in contrast, Section 5.2 titled entitled "Disputes Related to Brokerage Services" provides for "Brokerage Disputes" to be adjudicated in court if they are class action Brokerage Disputes and does not contain any delegation clause. Section 5.2 has primacy over Section 5.1: Section 5.1 expressly states that it applies "[e]xcept as set forth in Section [5].2 with respect to brokerage services," and Section 5.2 expressly states that "Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes," which is what Section 5.2 applies to.

Thus, under the 2022 Terms' plain language, a Brokerage Dispute expressly is not subject to *either* (i) the delegation clause in Section 5.1 or (ii) the AAA arbitration provision in Section 5.1.

### II. Controlling Fifth Circuit Precedent Confirms that, in these Circumstances, Courts—Not Arbitrators—Must Determine Whether the Nature of the Dispute Subjects It to the Delegation Clause

Where, as here, a contract subjects one category of claims to a delegation clause and excludes another category of claims from the scope of the delegation clause, Fifth Circuit

precedent mandates that Courts—not arbitrators—determine the threshold question of whether the claim at issue fits within the category of claims excluded from the delegation clause.

*Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019) is instructive. There, Plaintiff-Appellee Archer and White Sales, Inc. ("Archer") brought an antitrust suit against Defendant-Appellants Henry Schein along with other defendants. Archer's complaint alleged violations of federal and Texas antitrust law and sought money damages and injunctive relief. The relevant contract between Plaintiff Archer and Defendant Henry Schein, Inc.'s predecessor (the "Dealer Agreement') contained an arbitration clause calling for AAA arbitration, *except for* claims seeking injunctive relief:

> Disputes. This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [Henry Schein, Inc.]), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association [(AAA)]. The place of arbitration shall be in Charlotte, North Carolina.

935 F.3d at 277.

In that case, the magistrate judge, the district court, and the Fifth Circuit—in sequential objections and appeals—issued varying rulings regarding whether Archer's claims were subject to the arbitration provision. *Id.* at 276-78. Ultimately, the dispute reached the Supreme Court, which remanded the case to the Fifth Circuit to reconsider the gating question of whether "the parties in this dispute delegated the threshold arbitrability determination to an arbitrator."

On remand, the Fifth Circuit held that the parties did not delegate that issue. It reasoned that motions to compel arbitration typically proceed in two steps: (1) the court determines whether the parties entered into any arbitration agreement at all; and (2) the court determines *whether the particular claim at issue is covered by the arbitration agreement*. 935 F.3d at 278. As to the second, step, the court explained that "[w]hile ordinarily both steps are questions for the court, the

parties can enter into an arbitration agreement that delegates to the arbitrator the power to decide whether a particular claim is arbitrable." *Id.* (citing *Kubala v. Supreme Prod Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

The Fifth Circuit explained further that, when considering whether there is a valid delegation, *the court*—not an arbitrator—must determine whether the delegation clause "evinces an intent to have the arbitrator decide whether ***a given claim*** must be arbitrated." *Id.* at 279 (emphasis added). Importantly, the Fifth Circuit ruled, "when determining that intent, '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so.'" *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) with internal citations omitted).

In view of that, the Fifth Circuit went on to consider whether *the particular claims* that Archer asserted were subject to the delegation clause in the Dealer Agreement. *Id.* at 279-80. On one hand, the defendant there (like Defendants here) argued that the presence of a valid arbitration agreement ended the inquiry and that ***all*** claims must be delegated to the arbitrator to decide if the claims are subject to arbitration. Archer, in contrast, argued (like Plaintiffs here) that the delegation clause did not apply to claims that were carved out or excepted from the delegation clause. In other words, that "if a case falls within the carve-out, the agreement does not incorporate the [delegation clause] and the gateway arbitrability question is not delegated to an arbitrator." *Id.* at 279.

The Fifth Circuit agreed with Archer and rejected the defendant's argument that an arbitrator—rather than the court—must decide whether the claims at issue fall within the scope of the delegation clause. *Id.* at 279-82. Indeed, the Fifth Circuit reiterated that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate

is to be decided by the court, not the arbitrator." *Id.* (quoting *AT&T Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986)). The Court held that there was no such clear and unmistakable intent. According to the Fifth Circuit, "the placement of the carve-out here is dispositive" as the court "cannot rewrite the contract." *Id.* at 281. It continued:

> The most natural reading of the arbitration clause at issue states that any dispute, except actions seeking injunctive relief, shall be resolved in arbitration in accordance with the AAA rules. The plain language incorporates the AA rules—and therefore delegates arbitrability—for all disputes ***except*** those under the carve-out. Given that carve-out, we cannot say that the Dealer Agreement evinces a 'clear and unmistakable intent to delegate arbitrability.

*Id.* at 281-82 (emphasis in original).

## III. The Report and Recommendation Contradicts Fifth Circuit Precedent by Failing to Determine or Find That There Was Clear and Unmistakable Evidence that Arbitrability of Brokerage Disputes Was Delegated to An Arbitrator

The Report and Recommendation contradicts and fails to follow controlling precedent. As discussed above, the 2022 Terms carefully delineate between Brokerage Disputes—which expressly are *not* subject to either the delegation clause or the AAA arbitration provision—and other, general Disputes. Under *Henry Schein*, the Magistrate was therefore required to decide the "threshold" question of whether there is "clear and unmistakable" evidence that the parties intended to delegate the issue of arbitrability *to the particular claims here*.

The Magistrate failed to do so. Instead, the Magistrate adopted Defendants' argument that the mere existence of a delegation provision *in Section 5.1* requires an arbitrator to determine arbitrability *regardless* of the nature of the claims at issue, even as to Brokerage Disputes under Section 5.2 which the parties expressly *excluded* from the scope of the delegation clause. (Dkt. 30 at 10.) The Report and Recommendation erroneously reasoned and concluded that the delegation clause gave the arbitrator exclusive authority to determine "a Dispute, including the determination

of whether *a dispute* is arbitrable." (*Id.*) The Report and Recommendation compounded that error by ruling that the delegation clause "contains no exception for brokerage claims." (*Id.*) These rulings fail to follow the commands of *Henry Schein*. It fails to analyze the various provisions of the contract and do not consider much less find "clear and unmistakable" evidence that the parties intended to delegate the issue of arbitrability of *the particular claims here*. Indeed, the Report and Recommendation fails to analyze Section 5.2 at all. It stops at the delegation provision contained in Section 5.1 and applies it to Section 5.2 as if the exception and Section 5.2 did not exist at all. (*Id.*)

The conclusion of the Report and Recommendation leads to an absurd result too. It requires Plaintiffs to file their actions individually in AAA, and to then ask the AAA arbitrator to decide whether they should be proceeding in FINRA individually or, if they are to go to FINRA, then can they proceed as a putative class and go to Court.

This is clear error to which the Plaintiffs object and which this Court should reverse.

## IV. Under the Controlling Precedent, and Properly Construed, the Delegation and Arbitration Provisions in Section 5.1 of the 2022 Terms Do Not Apply to Plaintiffs' Claims under Section 5.2 of the 2022 Terms

Under *Henry Schein* and the plain language of the 2022 Terms, Plaintiffs' claims here are not subject to the delegation or arbitration provisions in Section 5.1 of the 2022 Terms.

Just like in *Henry Schein* where actions seeking injunctive relief were treated different than actions not-seeking injunctive relief, the contract here is clear and plain on its face that Section 5.1 and Section 5.2 are distinct, each covering different types of claims.

Despite the wording of Sections 5.1 and 5.2, the Report and Recommendation did not follow *Henry Schein* and improperly concluded that the delegation clause contained in Section 5.1 applied to all claims, including the claims carved out and found in Section 5.2. (Dkt. 30 at 10-11.)

Not only does the explicit language of Section 5.1 and 5.2 evidence that the terms of Section 5.1 do not apply to the distinct claims found in Section 5.2, but a plain reading of the delegation clause itself indicates it is only to be applied to disputes under Section 5.1.

As noted above, Section 5.1 expressly states that it applies "[e]xcept as set forth in Section [5].2 with respect to brokerage services," and Section 5.2 expressly states that "Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes," which is what Section 5.2 applies to.

Further, the language of the delegation clause – which is contained in an isolated sub-bullet point of Section 5.1 – states in no uncertain terms that "[t]he terms of ***this*** arbitration agreement affect interstate commerce and the enforceability of ***this section*** will be both substantively and procedurally governed by and construed and enforced in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 et seq. to the maximum extent permitted by applicable law" and that the arbitrator has the authority "to make all procedural and substantive decisions regarding a Dispute . . ." If the delegation clause were meant to apply to both Sections 5.1 and 5.2, it would have read in the plural (e.g., agreements/these sections), and not the singular (i.e., this arbitration agreement/this section) and it would have referred to a Dispute and a Brokerage Dispute.

Given that there are two distinct arbitration provisions (Section 5.1 and Section 5.2), the plain reading of the delegation clause itself is that it is strictly limited to "a Dispute" in "this section" in the singular – meaning the delegation clause applied only to the agreement to arbitrate non-brokerage claims in AAA per the terms set forth in Section 5.1 – which is completely separate and distinct from the agreement to arbitrate brokerage and Investing Account disputes under Section 5.2.

There is simply no evidence – and far from clear unmistakable evidence – that the parties intended the delegation clause to apply to all disputes like the Report and recommendation

concludes. That is particularly true if the contract is properly construed against CrowdStreet as the drafter of the provisions at issue. *Bexar Cnty. Hosp. Dist. v. Factory Mut. Ins. Co.*, 475 F.3d 274 (5th Cir. 2007) "[A]n ambiguous or inconsistent provision of a contract should be construed strictly against the party that drafted it."); *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397 (5th Cir. 2008) ("[F]orum-selection clauses [like other contract provisions,] are interpreted *contra proferentem:* when presented with two reasonable, but conflicting, interpretations of a contract provision, [courts] adopt the interpretation less favorable to the drafter.") (citing *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974)); *CK DFW Partners Ltd. v. City Kitchen, Inc.*, 6-cv-1598, 2007 WL 2381259, (N.D. Tex. Aug. 17, 2007) ("Ambiguity in a standard form contract is generally resolved against the party who drafted it.").

Just like in *Henry Schein*, the language of the contract here shows that the parties intended the delegation clause to ***only apply to claims other than brokerage disputes***. The issue of whether the claims asserted here are arbitrable must be decided by the Court.

And, while the Report and Recommendation did not address it, the claims asserted in this action easily and comfortably fit withing the plain meaning of the terms "relating to brokerage services provided to you" or "Investing Account" in Section 5.2.

Regarding "brokerage services", the Plaintiffs have alleged that CrowdStreet provided brokerage services – albeit unregistered – to the Plaintiffs and the Class. As applied to Section 5.2, the term "brokerage services" is undefined and therefore subject to a broad interpretation. According to the IRC, brokerage services are those "in which a person arranges transactions between a buyer and a seller with respect to securities for a commission or fee." 26 CFR Sec 1.199A-5; *accord* BROKER, Black's Law Dictionary (12th ed. 2024) ("A person engaged in the business of conducting securities transactions for the accounts of others."). Given the allegations

in the Complaint, there is no question that this dispute arises out of "brokerage services" under that phrase's ordinary meaning. Plaintiffs allege that CrowdStreet acted as a broker-dealer, for example, by soliciting purchases of specific securities, counseling sponsors on securities offerings, purporting to conduct due diligence on sponsors and the securities they sought to offer through CrowdStreet, and facilitating securities transactions, all for transaction-based compensation. (Dkt. 1 ¶¶ 26–117.) Plaintiffs' claims are therefore subject to Section 5.2 because they relate to either or both Plaintiffs' Investing Accounts or the brokerage services they received.

This claim also relates to Investing Accounts of the Plaintiffs and the class and is therefore subject to Section 5.2. To invest in CrowdStreet-sponsored securities offerings, Plaintiffs were **required** to create and invest through Investing Accounts maintained by CrowdStreet. (Dkt. 17-1 ¶¶ 17-18.) ("You must have at least one investing account set up as a **requirement to submit an offer** to invest in a deal on our platform."). CrowdStreet concedes this and Plaintiffs allege that each of them established and purchased securities through their respective Investing Accounts. Plaintiffs' claims relate to purchases of securities they made with their Investing Account. (Dkt. 1 ¶¶ 122–128, 134–37.) CrowdStreet's General Counsel, Kristen Howell, even submitted an affidavit declaring "to invest through CrowdStreet, investor must open what is referred to as an 'Investing Account' with CrowdStreet. (Dkt. 11-1 ¶ 4.)

## CONCLUSION

For all the foregoing reasons, Plaintiffs object to the erroneous conclusions and factual findings set forth in the R&R, and request that the Court (i) reject the Order and Report and Recommendation of the United States Magistrate Judge at Dkt. 30; and (ii) deny the Motion to Compel Individual Arbitration before the AAA under Section 5.1 of the 2022 Terms and the Motion to Stay and Strike Class Allegations.

Dated: July 25, 2025

By: */s/ Adam Shaw*
**BOIES SCHILLER FLEXNER LLP**
Adam R. Shaw
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel.: (518) 434-0600
ashaw@bsfllp.com

Marc Ayala (pro hac vice pending)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
mayala@bsfllp.com

**LAW OFFICES OF JOSHUA B. KONS, LLC**
Joshua Kons (pro hac vice pending)
92 Hopmeadow Street, FL 2
Weatogue, CT 06089
Tel.: (860) 920-5181
joshuakons@konslaw.com

**STOLTMANN LAW OFFICES, P.C.**
Joseph Wojciechowski (pro hac vice pending)
Sara Hanley (pro hac vice pending)
Stoltmann Law Offices, P.C.
2000 Center Drive, Suite East C218
Hoffman Estates, IL 60192
Tel: (312) 332-4200
joe@stoltlaw.com
sara@stoltlaw.com