# EXHIBIT 1

**BEFORE THE**
**AMERICAN ARBITRATION ASSOCIATION**
**COMMERCIAL RULES**

| | |
|---|---|
| STEVEN P. WIONS,<br><br>Claimant<br><br>vs.<br>CROWDSTREET, INC., TORE STEEN, AND IAN FORMIGLE,<br><br>Respondents | CASE NUMBER: 01-25-0003-9929 |

## ORDER ON CLAIMANT'S REQUEST FOR DECLARATORY RELIEF

Claimant filed a Notice of Arbitration and a Motion for Declaratory Relief asking the Tribunal for a declaration that, pursuant to a controlling agreement with Respondents, his disputes against Respondents implicate brokerage services and investing accounts and, as such, should not be arbitrated in the American Association of Arbitrators ("AAA") forum.

### A. Introduction

In his Notice of Arbitration and Statement of Claim and his Motion for Declaratory Relief, Claimant asks for a declaration that the dispute he has against CrowdStreet, Inc., Tore Steen and Ian Formigle in Case No A-25-CV-00383-ADA-SH, styled *Vipul Shah, Samemma Holdings, LLC, Steve Wions and Dolph Haege v. CrowdStreet, Inc., Tore Steen and Ian Formigle*, pending in the Western District of Texas, is a brokerage dispute. Specifically, Claimant asks the Tribunal to declare that (a) the June 12, 2022 Terms agreement ("2022 Terms") applies to his dispute; (b) under the 2022 Terms, his claims are arbitrable in the FINRA[1] forum subject to the class action exclusion; and (c)

[1] FINRA, Financial Industry Regulatory Authority, is a private organization that regulates brokerage firms and registered brokers in the United States to Ensure fair and honest market practices.

he may proceed in the litigation in the Western District of Texas as a lead plaintiff until said class is not certified, decertified, or he is excluded or opts out.

B. Background

From 20212 to 2022, CrowdStreet, Inc. operated an online marketplace for private placement securities offerings, which Claimant used for personal investment purposes. Securities offered and sold through the CrowdStreet, Inc. marketplace were predominantly private placements. CrowdStreet Inc. was not registered as a broker-dealer.

The 2022 Terms sets forth the terms that govern the access to and use of the "crowdstreet.com" website and related websites and applications provided by the CrowdStreet companies. These companies include CrowdStreet, Inc., CrowdStreet Capital, LLC and CrowdStreet Advisors, LLC.

It is undisputed that Claimant was a customer of CrowdStreet, Inc.'s website services and invested in four private placement offerings through the website between December 2022 and July 2023, including an offering sponsored by Nightingale Properties, LLC. Claimant lost all or part of the investments he made through CrowdStreet, Inc.'s website services. It is likewise undisputed that CrowdStreet Capital, LLC—a member of FINRA and SIPC—did not begin offering brokerage services and certain securities placements until September 2022.

On March 14, 2025, Claimant and three other CrowdStreet, Inc. customers filed their class action complaint in federal court against CrowdStreet, Inc. and its officers. They alleged that CrowdStreet, Inc.'s website services constituted brokerage services requiring registration with the SEC and the State of Texas. Instead, CrowdStreet, Inc. failed to register as a broker-dealer as required to do so under federal and Texas law. They claimed that "CrowdStreet [Inc.]'s intentional evasion of the regulatory scheme set forth by Congress and the State of Texas is precisely what led to a $50 million investment fraud that impacted hundreds of CrowdStreet [Inc.] investors…"

Defendants moved to compel individual arbitration, stay the action, and strike the class allegations. On July 11, 2025, the Honorable Susan Hightower, United States Magistrate Judge, issued an Order and Recommendation concluding that, under the arbitration agreement contained in the 2022 Terms, "the arbitrator must determine whether Plaintiffs' claims fall under the Arbitration Provision." Based on that determination, Judge Hightower recommended that Defendants' motion to compel individual arbitration and stay be granted and the request to strike the class action be denied.

On August 11, 2025, the Honorable Alan Albright, United States District Judge, adopted the recommendation in full, ordered the parties "to arbitrate, on an individual basis, all claims and defenses asserted in this action," and stayed the federal proceedings.

On August 20, 2025, Claimant filed with the American Association of Arbitration ("AAA") a Notice of Arbitration and Statement of Claim seeking a declaratory ruling that his dispute against CrowdStreet, Inc., Tore Steen, and Ian Formigle relates to brokerage-services dispute and investment accounts and that, accordingly, the AAA Tribunal should declare they are arbitrable under FINRA and not AAA.

C. The Parties' Arguments

Claimant argues that because the dispute involves brokerage services or investment accounts, the arbitration clause in the 2022 Terms requires arbitration in the FINRA forum rather than the AAA forum. He further contends that, because he is a putative class representative, the matter should proceed in court as a class action until the class is not certified, is decertified, or Claimant opts out or otherwise is excluded from the class.

Respondents argue that because Claimant's claims arise only out of his use of CrowdStreet, Inc.'s website and other services provided by CrowdStreet, Inc. but not out of brokerage services,

his claims must be arbitrated in the AAA forum and not FINRA. Respondents further allege that this Tribunal does not have authority to compel FINRA to hear Claimant's claims.

D. The Law

Contracts are interpreted as a whole and in accordance with the plain meaning of their terms. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892–93 (Tex. 2017) (citing *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010); *see also Perthuis v. Baylor Miraca Genetics Lab'ys, LLC,* 645 S.W.3d 228, 236 (Tex. 2022). The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used. *Primo*, 512 S.W.3d at 893 (citing *Gilbert*, 327 S.W.3d at 126 (explaining that "we look at the language of the policy because we presume parties intend what the words of their contract say")).

Plain meaning is pivotal in contract interpretation because it evidences the parties' intent. *Id.* A contract's plain language controls, not "what one side or the other alleges they intended to say but did not." *Id.* (quoting *Gilbert*, 327 S.W.3d at 127). "If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law." *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). An ambiguity does not arise merely because a party offers an alternative conflicting interpretation, but only when the contract is actually "susceptible to two or more reasonable interpretations." *Id.* (quoting *Schaefer*, 124 S.W.3d at 157). An ambiguity is not created just because the parties do not agree on the meaning of the words. *Id.* (citing *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010)).

E. The Arbitration Clause.

The 2022 Terms contain the following Arbitration Clause

**5. Dispute Resolution.**

**Binding Arbitration. Except as set forth in Section 4.2[2] with respect to brokerage services, or as provided in an applicable Investment Advisory Agreement with respect to advisory services,** ***any claim, controversy or dispute (each a "Dispute") arising out of or related to the Website, Services, or these Terms of Use shall be subject to binding individual arbitration administered by the American Arbitration Association*** **before a single arbitrator in Austin, Texas.** You and CrowdStreet waive their respective rights to (i) have Disputes resolved in a court, (ii) a jury trial, (iii) a class arbitration, class action, multi-party, or representative proceeding. Each party will notify the other party in writing of any dispute within thirty (30) days of the date it arises, so that the parties can attempt in good faith to resolve the dispute informally.

* **

- **Authority of Arbitrator.** The terms of this arbitration agreement affect interstate commerce and the enforceability of this section will be both substantively and procedurally governed by and construed and enforced in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 et seq. to the maximum extent permitted by applicable law. Subject to those rules and the terms of this arbitration agreement, the arbitrator will have (i) the exclusive authority and jurisdiction to make all procedural and substantive decisions regarding a Dispute, including the determination of whether a dispute is arbitrable, and (ii) the authority to grant any remedy that would otherwise be available in court; provided, however, that the arbitrator does not have the authority to conduct a class arbitration or a representative action, which is prohibited by the terms. The arbitrator may only conduct an individual arbitration and may not consolidate more than one individual's claims, preside over any type of class or representative proceeding or preside over any proceeding involving more than one individual.

* * *

- **Disputes Related to Brokerage Services.**

  Any controversy, *claim or dispute arising out of or relating to brokerage services provided to you or an Investing Account* (each a "**Brokerage Dispute**") shall be resolved by arbitration before FINRA Dispute Resolution, Inc. ("**FINRA Arbitration**") in accordance with FINRA's Code of Arbitration Procedure for Customer Disputes. Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes.

  Pursuant to FINRA rules, no person shall bring a Brokerage Dispute asserted as a putative or certified class action to FINRA Arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class who has not opted out of the class with respect to any Brokerage Dispute claims encompassed by the putative class action until: (1) the class certification is denied; (2) the class is decertified; or (3) the person is excluded from the class by the court."

Except for disputes relating to brokerage or advisory services, the first part of the arbitration clause requires that all claims *arising from* the Website, Services, or these Terms must be resolved

[2] Section 4.2 does not exist. The parties appear to agree that the proper section is 5.2, or Disputes Related to Brokerage Services.

through binding individual arbitration before the AAA. The meaning of the word "arising" is to originate from a source. https://www.merriam-webster.com/dictionary/arise. So, the plain meaning of that paragraph is that any claim that originates from the Website, Services or the 2022 Terms is to be arbitrated before the AAA. The undisputed facts are that Claimant requested website services and CrowdStreet, Inc. provided him with those services. It is also undisputed that Claimant's claims originated from the website services.

Despite the plain language of the first part of the arbitration clause, Claimant claims that the website services were in reality brokerage services and that his claims fall withing the second paragraph titled "Disputes Relating to Brokerage Services" (the "FINRA arbitration clause"). This paragraph also contains the word "arising" but adds the words "relating to brokerage services provided to you or an Investment Account." "Relating to" means connecting with something, referring to, or understanding something. https://www.merriam-webster.com/dictionary/relating%20to. "Provide" means to supply, make available, or furnish something needed. https://www.merriam-webster.com/dictionary/provide. "Provided to you" therefore means something that was supplied to a person, in this instance Claimant.

The parties agree CrowdStreet Capital had not begun its brokerage services until September of 2022. Claimant, however, argues that because the website services were in nature brokerage services, his claims are brokerage disputes. Properly construed, the FINRA arbitration clause applies only to disputes tied to brokerage services that were in fact provided to Claimant. The provision does not apply to claims asserting that non-brokerage conduct should be recharacterized as brokerage activity.

Claimant also claims that the words "Investing Account" contained in the FINRA arbitration clause relate to his website investment account based on the fact that he is seeking rescission of

securities purchased through it. Construed according to its plain language and in harmony with the 2022 Terms as a whole, the FINRA arbitration clause applies only to controversies arising from brokerage services actually provided to the customer or an Investing Account related to the brokerage services. Because the Tribunal has determined that CrowdStreet, Inc. did not provide brokerage services, the present dispute does not fall within the definition of a "Brokerage Dispute." Claimant's reliance on the existence of an Investing Account, standing alone, cannot expand the contractual scope of the FINRA arbitration clause.

Based on the above analysis, the Tribunal concludes that Claimant's claims arise from website services governed by the AAA arbitration provision. Because CroswdStreet did not provide Claimant with brokerage services, the FINRA arbitration clause does not apply.

The Tribunal's inquiry does not end here. Claimant also contends that, when read as a whole, the 2022 Terms demonstrate that CrowdStreet provided an array of services, including securities brokerage services and, accordingly, the FINRA Arbitration clause applies.

F. The June 12, 2022 Terms Agreement

Paragraph 1 of the 2022 Terms of Service describes the services provided by CrowdStreet and its subsidiaries. They are:

**1. Services**

- **CrowdStreet Services.** Through the Website and its family of subsidiaries, CrowdStreet provides Users with an array of Services and content, including educational materials, financial tools, investment information, investment advice, investment opportunities, and *securities brokerage services and facilitates investment transaction*s, performance monitoring, and other functions and services. CrowdStreet does not provide any tax, legal, financial, or accounting advice.

- **Brokerage Services.** Brokerage services are provided in connection and with the placement of certain securities by CrowdStreet Capital, a registered broker/dealer and member of FINRA and SIPC. Users may receive brokerage services only after signing an Account Agreement. All Investing Accounts are self-directed, unless the User has entered into an Investment Advisory Agreement. Users are responsible for

all investment decisions. CrowdStreet, Inc. and CrowdStreet Capital do not provide individual investment advice or recommend any particular security or transaction.

- **Advisory Services.** Investment advisory services are provided by CrowdStreet Advisors, a registered investment adviser with the SEC. Users may receive advisory services only after signing an agreement with CrowdStreet Advisors (an "**Investment Advisory Agreement**"). The Investment Advisory Agreement shall govern with respect to all advisory services provided and investment decisions and transactions on your behalf by CrowdStreet Advisors pursuant to the Investment Advisory Agreement. These Terms of Use shall govern with respect to all other Services and your usage of the Website.

The language in the "CrowdStreet Services" section states that CrowdStreet provides securities brokerage services and does not provide tax, legal, financial, or accounting advice. The language in the "Brokerage Services" section further states that CrowdStreet, Inc. and CrowdStreet Capital do not provide individualized investment advice or recommend any particular security or transaction. Claimant contends that, when read together, these two provisions establish that brokerage services are provided by CrowdStreet, Inc. through Investing Accounts. The Tribunal disagrees.

Under Texas law, contracts must be interpreted as a unified whole, giving effect to the plain meaning of all provisions rather than isolated excerpts. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017). Claimant's construction relies on selective language and does not account for the 2022 Terms in its entirety.

The first paragraph of the 2022 Terms defines CrowdStreet as (a) CrowdStreet, Inc., (b) and its wholly owned subsidiaries, CrowdStreet Capital, LLC and CrowdStreet Advisors, LLC. Under "Services," the paragraph entitled "CrowdStreet Services"defines all the services provided by the CrowdStreet entities, which include educational materials, financial tools, investment information and advice, investment opportunities, and securities brokerage services. It states that CrowdStreet (the three entities named in the definition) do not provide tax, legal financial, or accounting advise.

The second paragraph under "Services" is entitle "Brokerage Services." Under that paragraph, brokerage services are offered only in connection with the placement of certain securities through CrowdStreet Capital, one of the companies defined under CrowdStreet. The third paragraph under "Services" is titled Advisory Services. Under this paragraph, investment advisory services are provided by CrowdStreet Advisors.

Clauses 7 and 15 are also particularly significant when interpreting the 2022 Terms as a whole.

> **7. Securities Products**. Investment opportunities offered and/or purchased on the Website generally are "**Securities**" under federal law. The Securities are offered and/or managed by the issuer of the Securities (the "**Issuer"**) or an affiliate or third party sponsor (the "**Sponsor**"). Unless otherwise provided in the governing documents of each Securities offering, the Securities have not been registered under the Securities Act, in reliance, among other exemptions, on the exemptive provisions of Regulation D under the Securities Act. No governmental agency has reviewed the Securities and no state or federal agency has passed upon either the adequacy of the disclosure contained herein or the fairness of the terms of any offering. The Securities are only suitable for investors who are familiar with and willing to accept the high risks associated with private investments, including the risk of complete loss of your investment. Securities sold through private placements are not publicly traded and, therefore, are illiquid unless registered with the SEC. Additionally, the Securities may be subject to restrictions on resale or transfer including holding period requirements. Investing in private placements requires high risk tolerance, low liquidity need, and long-term commitments. You must be able to afford to lose your entire investment. Investment products are not FDIC insured, may lose value, and there is no bank guarantee.
>
> Content provided on the Website has been prepared without reference to any particular investment requirements or the financial situation of any person or entity. YOU ALONE ARE RESPONSIBLE FOR SEEKING THE ADVICE OF A QUALIFIED THIRD-PARTY PROFESSIONAL BEFORE MAKING DECISIONS REGARDING YOUR BUSINESS AND/OR INVESTMENTS. Featuring or posting on the Website or via the Services of any opportunity or Security does not constitute a recommendation by CrowdStreet that you invest in that security of the quality of any potential investment. CrowdStreet does not recommend or endorse any particular issuer, sponsor of an investment, except as may occur under the terms of an Advisory Agreement you execute separately with CrowdStreet Advisors.
>
> In cases where a third party is the Sponsor and/or Issuer of an investment opportunity, the third party, and not CrowdStreet, is responsible for compliance with exemptions from registration under the Securities Act and under the Investment Company Act of 1940 ("**Investment Company Act**"), as well as any other applicable laws. These risks are non-exhaustive and are intended to highlight certain risks associated with investing in securities that are not registered with the SEC. In addition to reviewing Investment Risks Disclosure. We strongly advise you to consult a legal, tax and financial professional before investing, and carefully review all the specific risk disclosures provided as part of any offering materials and ask the issuer any questions you may have or request additional information.

Clause 7 above supports the conclusion that the CrowdStreet, Inc. website operates as an informational platform rather than as a securities broker. The provision states that the securities are offered and managed by third-party issuers or sponsors, allocates regulatory-compliance responsibilities to those third parties, and expressly disclaims individualized investment advice, recommendations, or endorsements by CrowdStreet, Inc. It further emphasizes that users must rely on their own professional advisers before investing. Although the clause references securities being offered or purchased through the website, those references, considered in context, do not transform CrowdStreet, Inc.'s role into that of a broker or otherwise overcome the provision's repeated disclaimers. Accordingly, Clause 7 weighs in favor of characterizing the Website as informational or facilitative in nature, rather than as a provider of brokerage services.

> **15. Fees and Charges.** CrowdStreet does not charge Users fees or commissions unless separately agreed in writing pursuant to an Advisory Agreement or other agreement. You acknowledge that CrowdStreet receives fees and/or commissions from Sponsors and/or Issuers in connection with User transactions, the Services, and other services provided to Sponsors, Issuers, and Users. Fees and/or commissions charged by CrowdStreet Capital for brokerage services are described in the offering material for a particular transaction, where applicable. Fees charged by CrowdStreet Advisors are set forth in the Investment Advisory Agreement.

Clause 15 distinguishes brokerage fees charged by CrowdStreet Capital—described in transaction-specific offering materials—and advisory fees charged by CrowdStreet Advisors under separate advisory agreements. This allocation of compensation among distinct affiliated entities, and the conditioning of brokerage or advisory fees on separate agreements or transaction-specific disclosures, is consistent with a structure in which brokerage or advisory services, if provided at all, are performed by legally distinct entities rather than by the Website itself. Accordingly, Clause 15 supports the characterization of the Website as a non-securities broker.

Taken together, the definition of CrowdStreet, Clause 7 and Clause 15 support a finding that under the 2022 Terms, CrowdStreet, Inc., the defendant in the federal court case and Respondent in this case, was not in the business of providing brokerage services.

The Tribunal's inquiry does not end here. The Tribunal must also consider Claimant's contention that the arbitration clause requires disputes relating to Claimant's investing account to be resolved through arbitration before FINRA Dispute Resolution.

G. Conclusion

The Tribunal recognizes that Claimant's lawsuit is based on his claim that CrowdStreet, Inc. functioned as a security broker and as such, should have first secured authority from SEC and the State of Texas. The issue before the Tribunal, however, is whether under the 2022 Terms, CrowdStreet, Inc. was providing brokerage or website services. Pursuant to the plain language of the 2022 Terms and considering the same as a unified contract, the Tribunal concludes that CrowdStreet, Inc. was providing website services. Therefore, the proper arbitration forum is the AAA and not the FINRA forum.[3] Claimant's request for declaratory relief is denied.[4]

IT IS SO ORDERED.

Dated: February 9, 2026

Justice Patricia O. Alvarez (Ret.)
Arbitrator

[3] The Tribunal does not reach the issue of whether the Tribunal has authority to transfer Claimants' claims to FINRA.
[4] The Tribunal does not reach the issue on whether Claimant is entitled to declaratory relief regarding his status as a lead plaintiff in the litigation pending in the Western District of Texas.