**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| VIPUL SHAH, SAMEMMA HOLDINGS, LLC, STEVE WIONS, and DOLPH HAEGE,<br><br>Plaintiffs,<br><br>v.<br><br>CROWDSTREET, INC., TORE STEEN, and IAN FORMIGLE,<br><br>Defendants. | No. 1:25-CV-00383-ADA-SH |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION TO LIFT THE STAY**

Plaintiff Shah ("Shah" or "Plaintiff") respectfully submits this memorandum of law in support of his application to lift the stay as directed by the Court in an Order dated September 23, 2026.

## INTRODUCTION

The Shah Arbitration Order and Section 5.2 of the governing 2022 Terms of Use call for the stay to be lifted and for this case to proceed in this Court as a putative class action.

This Court is generally familiar with the facts and the governing contracts. The Terms of Use provide for two different paths for the claims to proceed depending on the type of claim involved in the dispute. General Disputes proceed under Section 5.1 of the Terms of Use. Brokerage Disputes proceed under Section 5.2.[1]

[1] A true and correct copy of the 2022 Terms of Use is attached hereto as Exhibit 1.

Pursuant to this Court's direction, Plaintiff Shah brought his claims before an arbitrator to determine which kind of dispute is involved in this case. The Shah Arbitrator ruled that the dispute was a Brokerage Dispute.[2] Thus Section 5.2, not Section 5.1, is at issue in this proceeding.

Section 5.2 provides that Brokerage Disputes proceed in arbitration before FINRA, ***except if they are already pending as a putative class action.*** If the Brokerage Dispute is pending as a putative class action, then the parties are precluded from enforcing the arbitration provisions of the Terms of Use as to that dispute. Specifically, "***no person shall . . . seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute.***"

Here, the Terms of Use, including Sections 5.1 and 5.2, precede this dispute and contain arbitration provisions. Thus, the Terms of Use are a "pre-dispute arbitration agreement."

Shah's putative class action is pending in this Court. Thus, Shah is a person who has initiated a putative class action.

The Shah Arbitration Order determined that the dispute that is the subject of the putative class action is a Brokerage Dispute under the Terms of Use. Thus, this putative class action is a putative class action with respect to a Brokerage Dispute.

Because this is a pending putative class action concerning a Brokerage Dispute, CrowdStreet cannot enforce the arbitration provisions of the Terms of Use against Shah, and the case should proceed in this Court.

---

[2] A true and correct copy of the Shah Arbitration Order, dated May 6, 2026, is attached hereto as Exhibit 2.

**RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff Shah commenced this action on March 14, 2025, alleging that Defendants CrowdStreet, Inc. and its control persons Tore Steen and Ian Formigle illegally offered securities for sale in Texas without registering as a broker-dealer under the Texas Securities Act. Dkt. 1.[3]

Shah brought this action on behalf of himself and others similarly situated, and asserted class action allegations and claims.

CrowdStreet, Inc. is an online marketplace headquartered in Austin, Texas that operates a website through which investors buy security interests in real estate. According to CrowdStreet's website, thousands of investors have bought over $4 billion worth of securities through the CrowdStreet online platform.

Shah alleges that CrowdStreet's actions in connection with the sale of the real estate securities constituted broker activity that required CrowdStreet to be registered under the Texas Securities Act. Because CrowdStreet was not a registered broker-dealer, Shah alleges, its sales were illegal and are subject to rescission.

Shah, like the putative class, used CrowdStreet's platform to buy the securities at issue in this case. CrowdStreet's relationship with Shah was subject to the company's 2022 Terms of Use. Those Terms have a provision for dispute resolution that provides for arbitration under certain circumstances. *See* Ex. 1 at 5.

Section 5 of the Terms of Use provides for two distinct types of disputes and separate provisions governing the treatment of those two types of disputes. The first bulleted subsection under Section 5 (what we have been calling section 5.1 because it is not numbered), entitled

[3] Three other Plaintiffs who brought the action, Dolph Haege, Samemma Holdings, LLC and Steve Wions, have voluntarily dismissed their claims and are no longer part of this action. Dkts. 49 and 50.

"Binding Arbitration" provides the procedure and terms for adjudication of a general "Dispute." *See* Ex. 1 at 5.

The second bulleted subsection under Section 5 (what we have been calling Section 5.2), entitled "Disputes Related to Brokerage Uses" provides the procedure and terms for adjudication of a "Brokerage Dispute." *See* Ex. 1 at 6.

On April 11, 2025, CrowdStreet moved to compel arbitration of this case and to strike the class action allegations. Dkt. 11.

A critical issue on the motion was who decides whether the dispute is a general Dispute or a Brokerage Dispute.

This Court determined that an arbitrator must decide the threshold issue of arbitrability and whether the dispute is a Brokerage Dispute or not. Dkt. 30. The Court also denied CrowdStreet's motion to strike the class claims and allegations. *Id.* This Court's Report and Recommendation was adopted in its entirety. Dkt. 33.

The Court stayed this action pending a determination from the arbitrator.

Following this Court's order, Shah commenced an arbitration before the American Arbitration Association ("AAA") seeking a declaration of whether the dispute was a general Dispute or a Brokerage Dispute subject to Section 5.2 of the Terms of Use.

After briefing and argument, the Shah Arbitrator granted Shah's motion for declaratory relief, declaring that the June 15, 2022 Terms of Use govern the dispute and that Shah's dispute "constitutes a 'Brokerage Dispute' within the meaning of Section 5.2," and dismissing the arbitration. Ex. 2 at 11.

Because the Shah Arbitrator declared that the dispute related to a Brokerage Dispute, the provisions of Section 5.2 of the Terms of Use apply.

Section 5.2 provides that Brokerage Disputes proceed in arbitration before FINRA, ***except if they are already pending as a putative class action.*** If the Brokerage Dispute is pending as a putative class action, then the parties are precluded from enforcing the Terms' arbitration provisions. Specifically, "***no person shall . . . seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute.***" Ex. 1 at 6 (emphasis added).

Accordingly, the provisions of Section 5.2 preclude any person from seeking to enforce the arbitration agreement against any other person who has initiated in court a putative class action with respect to a Brokerage Dispute. Because Shah is just such a person, he has come back to Court to lift the stay and proceed in court with the putative class action he had initiated.

Notably, the Shah Arbitration Order has a section entitled "Matters the Arbitrator Does Not Decide" that is prefaced by the statement that the section contains purely *dicta*: "Several arguments raised by the parties go beyond what is necessary to resolve the Claimant's Motion." Ex. 2 at 10. Those arguments, which ***were not decided in the Order***, are discussed under subheadings entitled "Claimant's ultimate liability theory," "The class action question," and "FINRA jurisdiction." *Id.*

Also notably, Section 5.1 of the Terms of Use provides for a class action waiver. But, as the Shah Arbitrator found and as is plainly apparent from the Terms of Use, none of the provisions of Section 5.1 apply to a Brokerage Dispute.

On May 11, 2026, the parties provided a joint status report, in which CrowdStreet raised the issue of this case continuing as an individual arbitration before FINRA. Dkt. 42. Shah sought to lift the stay to continue the action in this Court. On September 23, 2026, the Court held a status conference, heard oral argument, and then ordered supplemental briefing on the issue of whether the stay should be lifted. Dkt. 48.

**ARGUMENT**

Basic contract principles and rules for interpreting court and arbitration orders govern this application and call for the lifting of the stay.

Interpretation of the arbitration agreement at issue here is a matter of state contract law. *Forte Hum. Cap., Inc. v. Shishido*, No. EP-24-CV-00365, 2026 WL 1793655, at *5 (W.D. Tex. June 5, 2026) ("[C]ourts apply state contract law principles" to determine whether a dispute falls within the scope of an arbitration agreement). Under Texas law, the Terms of Use must be read according to their plain language, and their words should be given their standard, everyday meaning. *Equinor Energy LP v. Lindale Pipeline, LLC*, 731 S.W.3d 324, 327 (Tex. 2026).

Here, the Terms of Use are clear. They prohibit CrowdStreet from enforcing the arbitration provisions against this pending class action.

Section 5.2 of the Terms of Use plainly provides:

> **Disputes Related to Brokerage Uses.** Any controversy, claim or dispute arising out of or relating to brokerage uses provided to you or an Investing Account (each a "**Brokerage Dispute**") shall be resolved by arbitration before FINRA Dispute Resolution, Inc. ("**FINRA Arbitration**") in accordance with FINRA's Code of Arbitration Procedure for Customer Disputes. Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes.
>
> Pursuant to FINRA rules, ***no person shall*** bring a Brokerage Dispute asserted as a putative or certified class action to FINRA Arbitration, nor ***seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute*** or who is a member of a putative class who has not opted out of the class with respect to any Brokerage Dispute claims encompassed by the putative class action until: (1) the class certification is denied; (2) the class is decertified; or (3) the person is excluded from the class by the court.

Ex. 1 at 6 (emphasis added).

There can be no disagreement that this action is a pending putative class action with respect to a Brokerage Dispute.

Indeed, Plaintiff Shah and others[4] brought this case as a class action alleging that CrowdStreet illegally sold securities as a broker without registering under the Texas Securities Act.

After CrowdStreet moved to compel arbitration, this Court determined that there was a threshold question of arbitrability, and delegated that question to an arbitrator pursuant to the Terms' delegation clause. Specifically, because Sections 5.1 and 5.2 of the Terms of Use provide for different procedural paths depending on the type of dispute at issue, this Court charged the arbitrator with deciding whether the dispute was a general Dispute or a Brokerage Dispute. As this Court characterized it in its Order, "Defendants argue that this delegation clause requires the arbitrator to decide whether Plaintiffs' claims fall under the brokerage uses exception in the Arbitration Agreement." Dkt. 30 at 10.

In accordance with that Order, Plaintiff Shah commenced an arbitration before the AAA seeking a declaration as to whether the dispute at issue was a Brokerage Dispute.

That is the exact declaration that the Shah Arbitrator made. The Shah Arbitration Order held:

> The Arbitrator hereby declares:
>
> 1. The June 15, 2022 Terms of Use apply to the dispute between Claimant Vipul Shah and Respondents CrowdStreet, Inc., Tore Steen, and Ian Formigle.
>
> 2. Under the Terms, Claimant's dispute constitutes a "Brokerage Dispute" within the meaning of Section 5.2.
>
> 3. This arbitration is dismissed. Respondents shall bear all costs associated with this proceeding as required by AAA rules.

Ex. 2 at 11.

---

[4] Samemma Holdings, LLC, Steve Wions, and Dolph Haege were also named plaintiffs. They have all since settled their actions and have filed stipulations of dismissal such that they are no longer relevant to or part of this action.

That arbitration decision has legal import. Arbitration awards are interpreted just like court orders. *See Milliken v. Grigson*, 986 F. Supp. 426, 431 (S.D. Tex. 1997), *aff'd*, 158 F.3d 583 (5th Cir. 1998) ("In Texas, an arbitration award has the same effect as the judgment of a court of last resort."); *In re O'Neill*, 260 B.R. 122, 126 (Bankr. E.D. Tex. 2001) (giving unconfirmed arbitration award preclusive effect where the award met the Texas elements for collateral estoppel). That is especially true as to arbitration orders concerning the arbitrability of the very case at issue. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A] court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration.").

Because the Shah Arbitration Order held that the dispute concerned a Brokerage Dispute, CrowdStreet is bound by that determination. *See Milliken*, 986 F. Supp. at 431 (binding parties to arbitrator's findings, "assum[ing] it to be a valid and binding decision").

As noted, that determination has legal significance under the Terms of Use. Quite simply, CrowdStreet is precluded from enforcing the arbitration agreement against a pending class action involving a Brokerage Dispute. *See* Ex. 1 at 6.

It is unclear how CrowdStreet contends it can enforce the Terms' arbitration provision against this pending class action Brokerage Dispute in direct defiance of the contract.

CrowdStreet may argue that the Terms of Use contain a class action waiver. However, the class action waiver provision of the Terms of Use is contained in Section 5.1 governing general Disputes. Because the Shah Arbitrator determined this dispute to be a Brokerage Dispute, Section 5.2—not Section 5.1—controls here. And Section 5.2 expressly provides that "Section 5.1 of these Terms of Use shall not apply to Brokerage Disputes." Plainly, the class action waiver of Section 5.1 cannot apply to this Brokerage Dispute.

CrowdStreet may also argue that Judge Albright ruled that this case must proceed as an individual arbitration and cannot proceed as a class. That is an incorrect interpretation of Judge Albright's Order. This Court granted CrowdStreet's motion to compel arbitration and denied CrowdStreet's motion to strike the class allegations and to compel individual arbitration. Dkt. 30 at 11–12. Judge Albright adopted this Court's Report and Recommendation "in its entirety." Dkt. 33 at 2. Judge Albright made no new findings, reasoning, or rulings. His Order that the parties arbitrate on an individual basis simply directed how the parties were first required to present the arbitrability issue to the arbitrator. It was not a ruling that the case could never proceed as a class action.

CrowdStreet may also argue that because the Shah Arbitrator did not decide whether this action can proceed as a class action, this action must proceed to arbitration before FINRA. But that does not follow. The Shah Arbitrator did not need to decide the class question, because the Terms of Use already answer it. As noted, the Shah Arbitration Order contains a specific holding declaring that Shah's dispute constitutes a Brokerage Dispute within the meaning of Section 5.2 of the Terms of Use. *See* Ex. 2 at 11. The Shah Arbitration Order specifically did not rule that the dispute must proceed in arbitration before FINRA. In fact, the Shah Arbitrator explicitly identified "FINRA jurisdiction" as one of the "Matters the Arbitrator Does Not Decide." Ex. 2 at 10–11. Nor does it make legal or practical sense for the matter to go to arbitration before FINRA, or for the Shah Arbitrator to have made such a determination.

First, the Terms of Use bar CrowdStreet from compelling a putative class action involving a Brokerage Dispute into FINRA arbitration. Ex. 1 at 6. *See also, e.g.*, *Alakozai v. Chase Inv. Servs. Corp.*, 557 F. App'x 658, 659 (9th Cir. 2014) (affirming denial of motion to compel putative class action to arbitration where "[t]he plain language of the arbitration agreement incorporates

[FINRA] rules and requires arbitration of individual claims, but excludes class claims from arbitration"); *Winter v. Edward D. Jones & Co., L.P.*, No. 4:25-CV-00299, 2025 WL 3682808, at *15 (E.D. Mo. Dec. 18, 2025) (declining to strike class allegations and, because the "suit proceeds as a putative class action," denying motion to compel FINRA arbitration); *Zeltser v. Merrill Lynch & Co.*, No. 13 CV 1531, 2013 WL 4857687, at *2–3 (S.D.N.Y. Sept. 11, 2013) (denying motion to compel arbitration because FINRA rules "explicitly prohibit the enforcement of arbitration agreements against a member of a putative class or collective action").

It makes no sense to send something to FINRA only to have a FINRA arbitrator say that the arbitration agreement cannot be enforced there. Not being able to compel a class action out of court and into FINRA arbitration is exactly what CrowdStreet bargained for and drafted into the Terms of Use. That is what the Shah Arbitrator alluded to when he said: "If the Terms provide a pathway from arbitration to a class action under specified conditions, then CrowdStreet agreed to that pathway when it drafted the Terms." Ex. 2 at 10. This case is exactly the pathway that CrowdStreet agreed to and bargained for: it said that no person can enforce an arbitration agreement to require a pending class action Brokerage Dispute to go to FINRA arbitration.

Second, the Shah Arbitrator could not have decided whether this action should proceed as a class action or in FINRA arbitration because those questions were not before him. The only matter before him was an individual AAA arbitration seeking a limited declaration as to the type of dispute at issue. As a AAA arbitrator, he had no authority to determine the scope of FINRA's jurisdiction. Nor could he look to the pleadings in this action to decide how it should proceed under federal procedural rules, or whether the class allegations pending here affect this Court's stay in favor of arbitration. Those questions are for this Court.

Third, CrowdStreet cannot now demand that this matter go before FINRA when it has already argued that it is not subject to FINRA's jurisdiction because it is not a FINRA member. *See* Ex. 2 at 11. What is CrowdStreet proposing: that Shah's Brokerage Dispute go before FINRA so CrowdStreet can say that it is not subject to FINRA's jurisdiction such that Shah has no claim at all? That is an absurd result and conflicts with the Terms of Use's preclusion of ***any person*** from enforcing an arbitration agreement against a pending class action Brokerage Dispute.

## CONCLUSION

For all the foregoing reasons, Plaintiff Shah respectfully requests that the Court lift the stay and allow this case to proceed as a putative class action.

Dated: October 15, 2026

By: */s/ Adam R. Shaw*

**BOIES SCHILLER FLEXNER LLP**
Adam R. Shaw, Bar No. 502142
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel.: (518) 434-0600
ashaw@bsfllp.com

Marc Ayala (pro hac vice)
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
mayala@bsfllp.com

**LAW OFFICES OF JOSHUA B. KONS, LLC**
Joshua Kons (pro hac vice)
92 Hopmeadow Street, FL 2
Weatogue, CT 06089
Tel.: (860) 920-5181
joshuakons@konslaw.com

**STOLTMANN LAW OFFICES, P.C.**
Joseph Wojciechowski (pro hac vice)
2000 Center Drive, Suite East C218
Hoffman Estates, IL 60192
Tel.: (312) 332-4200
joe@stoltlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on October 15, 2026, this Memorandum of Law in Support of Plaintiff's Application to Lift the Stay was served upon all counsel of record via the Court's CM/ECF system.

*/s/ Adam R. Shaw*
Adam R. Shaw