**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| VIPUL SHAH, DOLPH HAEGE, SAMEMMA HOLDINGS, LLC, and STEVEN WIONS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CROWDSTREET, INC., TORE STEEN, and IAN FORMIGLE,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.: 1:25-cv-383-SH |

**DEFENDANTS' BRIEF IN SUPPORT OF MAINTAINING THE STAY OF THIS CASE PENDING RESOLUTION OF PLAINTIFF'S CLAIMS IN ARBITRATION**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........ 1

**BACKGROUND** ........ 2

**ARGUMENT** ........ 5

I. The August 2025 Order requires the individual arbitration of Plaintiff's claims. ........ 5

II. The AAA Arbitrator ordered that Plaintiff's dispute "should be administered by FINRA" and that FINRA may resolve any open class action issues. ........ 6

III. This Court has already found that an arbitrator must decide whether Plaintiff's class claims may proceed. ........ 8

IV. Consistent with Judge Albright's Order, Plaintiff should not be permitted to proceed as a class representative. ........ 10

**CONCLUSION** ........ 14

**CERTIFICATE OF SERVICE** ........ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cole v. Gen. Motors Corp.*,
484 F.3d 717 (5th Cir. 2007) ....................14

*Cooper v. Brookshire*,
70 F.3d 377 (5th Cir. 1995) ....................6

*Elson v. Black*,
56 F.4th 1002 (5th Cir. 2023) ....................14

*First Allied Sec., Inc. v. Carrier*,
No. 4:20-CV-3456, 2020 WL 7658067 (S.D. Tex. Nov. 19, 2020) ....................12

*Gemini Ins. Co. v. S & J Diving, Inc.*,
464 F. Supp. 2d 641 (S.D. Tex. 2006) ....................11

*Indem. Ins. Co. of N. Am. v. W & T Offshore, Inc.*,
756 F.3d 347 (5th Cir. 2014) ....................12

*John v. Nat'l Sec. Fire and Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) ....................14

*Kubala v. Supreme Prod. Servs., Inc.*,
830 F.3d 199 (5th Cir. 2016) ....................10

*Maldonado v. Ochsner Clinic Found.*,
493 F.3d 521 (5th Cir. 2007) ....................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983), *superseded by statute on other grounds as stated in Finnie v. H & R Block Fin. Advisors, Inc.*, 307 F. App'x 19 (8th Cir. 2009) ....................11

*Ramos v. Taylor*,
811 F. Supp. 3d 826 (W.D. Tex. 2025)....................6

*Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*,
677 F.3d 720 (5th Cir. 2012) ....................5

*Trietsch v. Caliber Homes Loans Inc.*,
No. 3:16-CV-00483-N, 2017 WL 11905448 (N.D. Tex. Apr. 4, 2017) ....................9

*UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*,
660 F.3d 643 (2d Cir. 2011)....................13

*Zarnow v. City of Wichita Falls, Tex.*,
614 F.3d 161 (5th Cir. 2010) ....................................................................................5

Defendants respectfully submit this brief pursuant to the Court's September 23, 2026 Order (ECF No. 48) directing the parties to address whether the Court should lift the stay in this case and whether Plaintiff Vipul Shah should be directed to arbitrate his claims before FINRA Dispute Resolution Services ("FINRA").

## PRELIMINARY STATEMENT

The only way to respect the prior orders of this Court as well as the decision of the American Arbitration Association ("AAA") arbitrator who presided over Plaintiff's case in the AAA is to maintain the stay and require Plaintiff to file an individual arbitration in FINRA. In urging otherwise, Plaintiff seeks to circumvent the orders of this Court, the Arbitrator, and the dispute resolution process to which Plaintiff agreed in CrowdStreet's 2022 Terms of Use (the "2022 Terms") (Ex. A, ECF 11-4). But nothing in the relevant precedents, the 2022 Terms, or the Arbitrator's decision allows Plaintiff to substitute his judgment about the scope and applicability of various provisions of the 2022 Terms for that of a neutral arbitrator or warrants the unusual result of allowing Plaintiff to proceed as a class representative when each putative member must also arbitrate their claims.

Indeed, lifting the stay would conflict with Judge Albright's order granting Defendants' motion to compel arbitration in part (the "August 2025 Order") and directing the parties to "arbitrate, on an individual basis, all claims and defenses asserted in this action," including the ones Plaintiff continues to press on a class basis. (Ex. B, ECF No. 33 at 2.) Lifting the stay would also run afoul of the Court's July 11, 2025 Order and Report and Recommendation (the "July 2025 Order"), which determined that "whether class claims are precluded" by the parties' agreement "is an issue for the arbitrator, not the Court" to decide. (Ex. C, ECF No. 30 at 11.) Plaintiff cannot sidestep that ruling by returning to this Court to seek an answer to that very question. Finally, lifting the stay would also conflict with the Arbitrator's decision (the "AAA Order"), that

Plaintiff's claims "should be administered by FINRA." (Ex. D, ECF No. 45-3 at 11.) The AAA Order provides no support for lifting the stay, since the AAA Arbitrator expressly declined to decide whether Plaintiff could proceed on behalf of a class in Court.

Because the Court has already ruled that an arbitrator must determine whether class claims are permitted, and the AAA Arbitrator found that Plaintiff's claims "should be administered by FINRA," Plaintiff's ability to proceed as a class representative should be decided by FINRA. However, should the Court wish to take up the issue despite its prior ruling, Defendants respectfully submit that the Court should not greenlight the unwieldy and contractually impermissible class action that Plaintiff has proposed.

## **BACKGROUND**

After Plaintiff and two other individuals filed this putative class action, Defendants moved to compel arbitration, stay the action and strike the class claims and allegations in their complaint. (*See* ECF No. 11 (the "Motion").) Among other things, Defendants argued that

- Plaintiff entered into a valid arbitration agreement with CrowdStreet, Inc, and, by virtue of a broad delegation clause in that agreement, any arbitrability questions must be decided by a AAA arbitrator (*id.* at 8-16);

- Plaintiff agreed to be bound by the 2022 Terms, which apply to any investments he made from June 15, 2022 to the date of the Complaint, but have no retroactive effect (*id*. at 4 & n.2);

- Plaintiff's claims were not "Brokerage Disputes" under the 2022 Terms which require that "[a]ny controversy, claim or dispute arising out of or relating to brokerage services provided to you or an Investing Account (each a "**Brokerage Dispute**") shall be resolved by arbitration before FINRA Dispute Resolution, Inc. ("**FINRA Arbitration**") in accordance with FINRA's Code of Arbitration Procedure for Customer Disputes" (Ex. A at 7);

- CrowdStreet's 2021 Terms of Service (the "2021 Terms") apply to Plaintiff's investments before June 15, 2022, and require arbitration of claims related to those investments in Oregon (ECF No. 11 at 15-16); and

- Clear and unequivocal class action waivers in both the 2021 Terms and the 2022 Terms preclude Plaintiff from asserting class claims (*id*. at 17-18).

In response, Plaintiff alleged that CrowdStreet, Inc. provided unlicensed brokerage services to him, and therefore his claims should be a "Brokerage Dispute" within the meaning of the 2022 Terms, he was therefore not required to arbitrate before the AAA. Plaintiff contended that only the 2022 Terms applied, and the fact that the 2021 Terms did not refer to "Brokerage Disputes" or provide for any dispute-resolution mechanism other than arbitration in Oregon was of no moment. Using somewhat circular logic, Plaintiff further argued that, because the delegation clause in the 2022 Terms did not apply to Brokerage Disputes, the Court (not an arbitrator) should decide whether he had stated a Brokerage Dispute. (*Id*. at 13.)

After the Motion was fully briefed, the Court issued the July 2025 Order, granting the Motion in part. Among other things, the July 2025 Order provides:

- "Plaintiffs do not dispute that they entered into the arbitration agreements" set forth in the Terms (Ex. C at 8);
- "The Court agrees [with Defendants] that the delegation clause evinces an intent to have the arbitrator decide whether a given claim must be arbitrated" (*id.* at 10);
- "The delegation clause requires the arbitrator to have 'the exclusive authority and jurisdiction to make all procedural and substantive decisions regarding a Dispute, including the determination of whether *a dispute* is arbitrable.' The provision contains no exception for brokerage claims" (*id*. (original emphasis and quoting the 2022 Terms)); and
- "Because the delegation clause here requires the arbitrator to determine which claims fall under the Arbitration Provision, whether the class claims are precluded is an issue for the arbitrator, not the Court" (*id.* at 11).

Judge Albright adopted these rulings in his August 2025 Order, (*see* Ex. B), and made the following additional orders:

- Defendants' Motion to Compel Arbitration is **GRANTED**, and the parties are hereby **ORDERED** to arbitrate, on an individual basis, all claims and defenses asserted in this action (*id*. at 2 (original emphases)); and
- **IT IS FURTHER ORDERED** that proceedings in this case are **STAYED** pending resolution of arbitration (*id*. (original emphases).

Following the August 2025 Order, Plaintiff filed a Motion for Declaratory Relief before the AAA. As described by the Arbitrator:

> Claimant Vipul Shah moves for a declaration that his dispute against CrowdStreet, Inc., Tore Steen, and Ian Formigle constitutes a 'Brokerage Dispute" under Section 5.2 of the June 15, 2022 Terms of Use (the "Terms") and that the dispute must therefore be resolved by arbitration before FINRA Dispute Resolution, Inc. (FINRA) rather than the American Arbitration Association.

(Ex. D at 1.) Thus, as set forth by the Arbitrator, Plaintiff did not ask the Arbitrator to decide any question relating to Plaintiff's ability to pursue claims on behalf of a class. The Arbitrator granted the requested declaration and found that Plaintiff's claims "should be administered by FINRA." (*Id.* at 10.) To reach this conclusion, Arbitrator interpreted the dispute resolution provision in the 2022 Terms as follows: "there is a general arbitration provision for AAA-administered arbitrations under Section 5.1 and a carve-out for FINRA-administered arbitrations under Section 5.2 for a 'controversy, claim or dispute arising out of or relating to brokerage services . . . .'" (*Id.* at 3.) He then reasoned that, because Plaintiff's dispute was "fundamentally about whether CrowdStreet engaged in brokerage activity," it fit within the carve-out for FINRA-administered arbitrations. (*Id.* at 9.) He thus concluded that "Claimant may pursue resolution of his claims before FINRA as set forth in Section 5.2 of the Terms." (*Id.* at 2.)

In a Section of the AAA Order entitled "**Matters the Arbitrator Does Not Decide**," (*see id.* at 10 (original emphasis)), the Arbitrator identified certain "arguments raised by the parties [that] go beyond what is necessary to resolve the Claimant's Motion" and, for that reason, opted not to decide them. (*Id.* at 10.) Specifically, the Arbitrator did not decide what he referred to as the "class action question"—that is, Plaintiff's ability to assert his claims on behalf of a class. (*See id.*) Having acknowledged that "District Judge Albright ordered, that the parties arbitrate individually," (*id.* at 2) the Arbitrator found that "[w]hether Claimant ultimately may or may not pursue a class action, and how that question interacts with the District Court's order requiring

individual arbitration, are matters for a court and/or a FINRA arbitrator to address if and when they arise" (*id*. at 10). He further explained:

> The Arbitrator was asked to determine which dispute resolution provision applies. . . . The answer to that question does not depend on where it might lead. If the Terms provide a pathway from arbitration to a class action under specified conditions, then CrowdStreet agreed to that pathway when it drafted the Terms.

(*Id*. at 10)

The Arbitrator also stated that he expressed "no view" on whether FINRA would accept jurisdiction over the matter. He wrote:

> The Terms direct Brokerage Disputes to FINRA, and this arbitrator's role is to interpret the contact between the parties. Whether FINRA will accept the matter is a question for FINRA and, if necessary, the courts. If FINRA declines, the parties may seek appropriate relief at that time. The Arbitrator recognizes that if FINRA declines jurisdiction and the judicial system maintains that this matter belongs in arbitration . . . there is a possibility that future rulings in other proceedings may return this matter to the AAA.

(*Id.* at 11.)

## <u>ARGUMENT</u>

### I. The August 2025 Order requires the individual arbitration of Plaintiff's claims.

On its face, the August 2025 Order requires Plaintiff to arbitrate his dispute and precludes Plaintiff from pursuing class claims in court. The order unequivocally directs the parties "to arbitrate, on an individual basis, *all claims and defenses asserted in this action*. (Ex. B at 2 (emphasis added).) "All claims" include, of course, the claims Plaintiff now seeks to litigate on a class basis in this Court. Plaintiff never sought modification or reconsideration of the August 2025 Order, and the order is law of the case and must accordingly be followed. *See Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727 (5th Cir. 2012) (*citing Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010)) (under the law of the case doctrine, "courts show deference to decisions already made in the case they are presiding over"); *see also*

*Ramos v. Taylor*, 811 F. Supp. 3d 826, 829 (W.D. Tex. 2025) (denying a motion to dismiss under the law of the case doctrine).[1] Having successfully prevailed upon the Arbitrator that his claims qualified as a "Brokerage Dispute" under the 2022 Terms and therefore must be resolved by arbitration before FINRA rather than the AAA, Plaintiff must now arbitrate individually in FINRA.

**II. The AAA Arbitrator ordered that Plaintiff's dispute "should be administered by FINRA" and that FINRA may resolve any open class action issues.**

Any argument that the AAA Order supports lifting the stay is foreclosed by the text of the order itself, which authorizes only one course of action at this time: commencement of a FINRA arbitration.

As a threshold matter, the AAA Order describes the relief Plaintiff asked the Arbitrator to award: a "declaration that his dispute . . . constitutes a 'Brokerage Dispute'" that "must therefore be resolved by arbitration before FINRA Dispute Resolution Inc. (FINRA)"—not a ruling that he is entitled to pursue class claims in court. (Ex. D at 1.) Consistent with this request, the Arbitrator determined that Plaintiff's claims fell within "a carve-out for FINRA-administered arbitrations" in the 2022 Terms. (*Id.* at 3, 11.) And, as the Arbitrator stated, his conclusions were "limited to the threshold determination that the dispute, as alleged, relates to brokerage services within the meaning of Section 5.2 and *should be administered by FINRA* as set forth therein." (*Id*. at 10 (emphasis added).) Of course, had the Arbitrator intended to give Plaintiff a choice between proceeding in FINRA or this Court, he easily could have said so in his 11-page order. Instead, he found that the dispute "should be administered by FINRA." (*Id.*)

Further underscoring the Arbitrator's understanding that Plaintiff would file his claim in

---

[1] If Plaintiff urges this Court to ignore or set aside the August 2025 Order's directive, Defendants respectfully submit that the Court lacks the requisite authority to do so. *See Cooper v. Brookshire*, 70 F.3d 377, 378 n.6 (5th Cir. 1995) (requiring that "both parties consent to the jurisdiction of the magistrate judge" for the magistrate to "act in the capacity of a district court judge" and decline to follow earlier opinion (citation omitted)).

FINRA is the conditional phrasing in his Order. Such phrases include "*[i]f FINRA declines* [to accept the matter], the parties may seek appropriate relief at that time," and "*if FINRA declines jurisdiction*" the matter might return to the AAA. (*Id.* at 11.) These conditional phrases make sense only on the premise that Plaintiff would bring his claims to FINRA before doing anything else

The fact that the Arbitrator at one point used permissive language in his order and stated that Plaintiff "may pursue" arbitration in FINRA cannot be read as implicit authorization for Plaintiff to proceed as a class representative in court. To the contrary, the Arbitrator made it abundantly clear that he was *not* deciding the "class action question," and took care "to define the boundaries" of the his Order to exclude it. (*Id.* at 10.) Under the heading "Matters the Arbitrator Does Not Decide," the AAA Order expressly states that it does not purport to decide the class action issue:

> **The class action question.** Respondents argue that Claimant's real objective is to invoke the class action exclusion in Section 5.2 as a vehicle back to federal court. Whether Claimant ultimately may or may not pursue a class action, and how that question interacts with the District Court's order requiring individual arbitration, are matters for a court and/or a FINRA arbitrator to address if and when they arise. This Arbitrator was asked to determine which dispute resolution provision applies to Claimant's claims. The answer to that question does not depend on where it might lead. If the Terms provide a pathway from arbitration to a class action under specified conditions, then CrowdStreet agreed to that pathway when it drafted the Terms.

(*Id.* at 11.) There is simply no way to reconcile this language with any suggestion that the AAA Arbitrator authorized the immediate resumption of this putative class action suit.

The Arbitrator's use of permissive language is consistent with the circumstances of the case. Although the Arbitrator had the authority to determine whether Plaintiff's claims belonged before the AAA or could be pursued before FINRA, the Arbitrator could not force Plaintiff to continue pursuing the claims anywhere. Even now, it is for Plaintiff alone to decide whether to

continue to litigate this case before FINRA. Moreover, in addition to declining to decide the "class action question," the Arbitrator also declined to decide an issue relating to FINRA's jurisdiction to hear Plaintiff's claims. As stated in the AAA Order, in their briefing opposing Plaintiff's request for declaratory relief, Defendants noted that because CrowdStreet, Inc. was not a FINRA member, FINRA could decline jurisdiction over Plaintiff's claims. (*Id.*) In the Arbitrator's words:

> This Arbitrator expresses no view on that question. The Terms direct Brokerage Disputes to FINRA, and this Arbitrator's role is to interpret the contract between the parties. Whether FINRA will accept the matter is a question for FINRA and, if necessary, the courts. If FINRA declines, the parties may seeks appropriate relief at that time.

(*Id.*) Thus, in addition to not being able to require Plaintiff to continue pressing his claims, the AAA Arbitrator recognized that he could not compel FINRA to adjudicate those claims.[2] His use of a permissive phrase like "may pursue resolution of his claims before FINRA" instead of a mandatory phrase like "must obtain resolution of his claims in FINRA" makes sense in that context.

## III. This Court has already found that an arbitrator must decide whether Plaintiff's class claims may proceed.

As noted above, the Arbitrator stated that he was not deciding the "class action question." The Arbitrator's refusal to decide that question means, in effect, *no* arbitrator has yet decided that question. The absence of any arbitral decision on that score poses yet another obstacle to lifting

[2] As Defendants advised the Court during the recent status conference, CrowdStreet, Inc. is willing to submit to the exercise of limited jurisdiction by FINRA Dispute Resolution Services solely for the purposes of arbitrating Plaintiff's claims. And, in connection with Plaintiff's opposition to the Motion, Plaintiff's attorney expressed optimism that FINRA would accept and administer this case, declaring under penalty of perjury that: (1) based on his "experience and personal knowledge, FINRA will accept and administer arbitration proceedings for non-FINRA member firms," and (2) he had "previously represented investors in the FINRA arbitration forum in disputes against non-FINRA members, such as registered investment advisors." (ECF No. 17-1 ¶¶ 6, 8.)

the stay because this Court previously found that the question could only be decided by an arbitrator.

In evaluating the part of the Motion that sought to strike class claims and allegations, this Court found that the broad delegation clause contained in the 2022 Terms grants an arbitrator "the *exclusive* authority and jurisdiction to make all procedural and substantive decisions regarding a Dispute," and that "[b]ecause the delegation clause here requires the arbitrator to determine which claims fall under the Arbitration Provisions, whether the class claims are precluded is an issue for the arbitrator, not the Court." (Ex. C at 10-11 (emphasis added)); *see also Trietsch v. Caliber Homes Loans Inc.*, No. 3:16-CV-00483-N, 2017 WL 11905448, at *2 (N.D. Tex. Apr. 4, 2017) (enforcing "a clear, broad delegation clause submitting issues, like the availability of collective arbitration and the enforceability of any class action waiver, to the arbitrator").

In reaching this conclusion, this Court rejected Plaintiff's argument that the delegation clause (which is in the same part of the Terms as the court and class waiver) did not apply to disputes related to brokerage services by operation of the language in the dispute resolution clause that says that Section 5.1 shall not apply to Brokerage Disputes. (Ex. C at 10 (emphasis added).)[3]

Thus, the Court and the parties now find themselves in an unusual situation where, to date, the only arbitrator to consider whether Plaintiff can assert class claims has expressly declined to do so. (*See* Ex. D at 10.) Pursuant to this Court's order, an arbitrator—not the Court and not Plaintiff himself—must decide the issue before the stay can be lifted. (*See* Ex. C at 3 (noting delegation clauses "transfer the court's power to decide arbitrability questions to the arbitrator") (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)).)

---

[3] Plaintiff objected to this ruling and Judge Albright overruled the objection. (Ex. B at 2; *see generally* ECF No. 31.)

Given the Arbitrator's determination that Plaintiff's claims should be administered in FINRA, the broad language of the Terms' arbitration clauses and the well-settled case law mandating arbitration of threshold disputes like this one, Defendants respectfully submit that it would be appropriate for a FINRA arbitrator to consider the class action question. Among other things, the FINRA arbitrator will need to determine (i) whether the class action waivers set forth in the 2021 Terms and/or the 2022 Terms preclude Plaintiff from asserting some or all of his claims on behalf of a class; (ii) the applicability to non-FINRA members like CrowdStreet, Inc. of FINRA-mandated language in the 2022 Terms relating to the enforceability of arbitration agreements where class actions are pending; and (iii) the applicability of that language to investments made pursuant to the 2021 Terms which do not include the FINRA-mandated language or the concept of a "Brokerage Dispute."[4] The FINRA arbitrator will also need to determine whether Plaintiff can pursue any claims in court, given his waiver of the right to have Disputes—defined to include *any* claim, controversy or dispute—resolved in a court. (ECF No. 11-1 at 5.)

**IV. Consistent with Judge Albright's Order, Plaintiff should not be permitted to proceed as a class representative.**

Should the Court find that, because the Arbitrator expressly declined to rule on the class action issue, the Court is now able decide it, the result is the same: Plaintiff should be directed to pursue an individual arbitration in FINRA.

*First*, directing Plaintiff to FINRA would be consistent with the August 2025 Order. *See* § 1, *supra*.

---

[4] Because the Arbitrator expressly carved "the class action question" out from the scope of the AAA Order, the order does not analyze the FINRA-mandated language in the 2022 Terms that Plaintiff previously argued to this Court requires Brokerage Disputes "in the case of putative class actions" to be brought "in court." (*See* ECF No. 17 at 16.)

*Second*, the 2022 Terms contain an express waiver of Plaintiff's right to have "Disputes" resolved in a court. The 2022 Terms define "Disputes" to include "*any* claim, controversy or dispute," without any limitation. (ECF No. 11-1 at 5.) Accordingly, construing the waiver as limited solely to Disputes about website services would run afoul of well-established cannons of contract interpretation establishing that a "court may neither rewrite the parties' contract nor add to its language." *Gemini Ins. Co. v. S & J Diving, Inc.*, 464 F. Supp. 2d 641, 650 (S.D. Tex. 2006) (citation and internal quotations omitted). Plaintiff will undoubtedly argue that because the 2022 Terms state that "Section 5.1 of these Terms shall not apply to Brokerage Disputes," the court waiver language should apply only to website disputes. But, as the Court previously found when it rejected this argument in connection with the applicability of the delegation clause to Brokerage Disputes, "the provision contains no exception for brokerage claims." (Ex. C at 10.)

*Third,* even if Plaintiff argues that the waiver language conflicts with the language on which Plaintiff is expected to rely, at most that gives rise to an ambiguity that must be resolved in favor or arbitration. As the Court stated in the July 2025 Order: "Because of the 'liberal federal policy' favoring arbitration agreements, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver....'" (*Id.* at 4 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), *superseded by statute on other grounds as stated in Finnie v. H & R Block Fin. Advisors, Inc.*, 307 F. App'x 19 (8th Cir. 2009).)

*Fourth*, the 2022 Terms contain an express waiver of the right to a class action without regard to any specific types of disputes. The class action waiver is located in the same sentence as the waiver of court proceedings discussed above, and, for the reasons identified above, also applies to any Dispute between CrowdStreet, Inc. (a non-FINRA member firm) and Plaintiff,

including this one. *See Indem. Ins. Co. of N. Am. v. W & T Offshore, Inc*., 756 F.3d 347, 351 (5th Cir. 2014) ("A court construing a contract must read that contract in a manner that confers meaning to all of its terms, rendering the contract's terms consistent with one another.") (citation omitted).

*Fifth*, the 2022 Terms govern only those investments that Plaintiff made on or after June 15, 2022 (the effective date of the 2022 Terms). (Ex. A at 2.) They do not apply retroactively, and therefore cannot apply to any of Plaintiff's claims that are based on investments he made through CrowdStreet (or brokerage services he allegedly received from CrowdStreet) before June 15, 2022. Claims based on those investments (and alleged brokerage services) are governed by the 2021 Terms, which do not incorporate the concept of a Brokerage Dispute at all. And, importantly, the 2021 Terms contain a broad class-action waiver and require the arbitration of any disputes between Plaintiff and CrowdStreet in Oregon. Thus the claims governed by the 2021 Terms cannot be pursued in Texas, in court, or on a class basis.

*Sixth*, the language in the 2022 Terms that Plaintiff calls a "class action exclusion" appears in the 2022 Terms "[p]ursuant to FINRA rules." (Ex. A at 7.) FINRA Rule 2268 sets forth certain requirements for FINRA member firms that include arbitration agreements in their customer agreements. Subsection (f) of the Rule contains a statement that FINRA members are required to include in those agreements, and that statement is virtually identical to the language in the 2022 Terms on which Plaintiff relies. But FINRA Rule 2268 does not apply to CrowdStreet, Inc., because, as Plaintiff acknowledges, CrowdStreet, Inc. is not and has never been a FINRA member, and "FINRA is a self-regulatory organization [with] the authority to create and enforce rules *for its members*." *First Allied Sec., Inc. v. Carrier*, No. 4:20-CV-3456, 2020 WL 7658067, at *3 (S.D. Tex. Nov. 19, 2020) (emphasis added); *see UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) ("Upon joining FINRA, a member organization agrees to comply

with FINRA's rules."). The FINRA Rule applies to CrowdStreet, Inc.'s affiliate, CrowdStreet Capital—which is not a party before this Court—which became a FINRA member in May 2022, weeks before CrowdStreet published the 2022 Terms.

*Seventh*, Plaintiff attempts to make an end run around the AAA Arbitrator's determination that his claims "should be administered by FINRA," (Ex. D at 10), but his putative class action fails for a straightforward reason: his proposed class is not viable on its face. Plaintiff purports to represent a class of individuals "who purchased any securities offered, sold, or otherwise displayed on the CrowdStreet Platform within the applicable statute of limitations period," (Compl. ¶ 139). But like all the original plaintiffs, those putative class members by definition transacted on the CrowdStreet Platform and thus agreed to and are bound by Terms of Use containing arbitration agreements. And, just like the original plaintiffs, each putative class member could not proceed in court at the outset; instead, they must proceed to an AAA arbitration on the threshold arbitrability dispute. If the results of the AAA proceedings for the three original plaintiffs are any indication, these arbitrations each will take months to complete, and the AAA will be deemed the proper forum for most claimants.[5]

What that means, then, is that Plaintiff seeks to lift the stay on a putative class action that is fundamentally unsuitable for class treatment. That is readily apparent from the pleadings and this Court's prior orders on arbitration. It is a problem, moreover, that cannot be cured through discovery or amending the complaint and, for that reason, can be resolved now. As the Fifth Circuit has made clear, "[d]istrict courts are permitted to make such [class certification] determinations on the pleadings and before discovery is complete when it is apparent from the

[5] As the Court is aware, each of the AAA arbitrators overseeing the individual arbitrations brought by original plaintiffs Haege and Wions concluded the claims asserted in this case fall squarely within the provision of the 2022 Terms that requires AAA arbitration.

complaint that a class action cannot be maintained." *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023). That is the case here because it is "facially apparent from the pleadings that there is no ascertainable class" given that absent class members could be identified only after they each undergo individual AAA arbitrations. *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). In addition, the individual arbitration issues would predominate over any issues that could be common to Plaintiff's proposed class. Whether any class member could return to this Court would depend on the decisions of individual AAA arbitrators. These "individualized issues … overwhelm class cohesiveness," *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007), and would "swamp any common issues and defeat predominance," *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (citation omitted). Both reasons make this putative class unsuitable for certification as a matter of law—a conclusion that can be made on the pleadings alone. *Elson*, 56 F.4th at 1006–07.[6]

So whatever Plaintiff believes the Arbitrator's decision to mean, Plaintiff cannot treat his outlier individual arbitration decision as license to proceed as a putative class in this Court. If anything, just the opposite.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court maintain the existing stay in this case and direct Plaintiff to file an individual arbitration in FINRA.

Respectfully submitted,

By: /s/ Gabrielle L. Gould
Gabrielle L. Gould (*pro hac vice*)
Elizabeth M. Zito (*pro hac vice*)

[6] If the Court does not send the case to FINRA per the AAA Order and wishes to take up the issue of class certification separately, Defendants are, of course, willing to more fully brief that issue for the Court if helpful.

Claire Daly (*pro hac vice*)
Goodwin Procter LLP
New York Times Bldg,
620 8th Ave.
New York, NY 10018
(212) 813-8800 (tel.)
(212) 355-3333 (fax)
ggould@goodwinlaw.com
ezito@goodwinlaw.com
cdaly@goodwinlaw.com

-AND-

Amy Pharr Hefley
Baker Botts, L.L.P.
State Bar No.: 24046046
910 Louisiana St.
Houston, TX 77002
(713) 229-1234 (tel.)
(713) 229-1522 (fax)

Daniel B. Rankin
State Bar No.: 24116940
401 S. 1st St., Suite 1300
Austin, TX 78704
(512) 322-2500 (tel.)
(512) 322-2501 (fax)
amy.hefley@bakerbotts.com
daniel.rankin@bakerbotts.com

**Attorneys for CrowdStreet, Inc., Tore Steen, and Ian Formigle**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of October 2026, I electronically filed the foregoing using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Gabrielle L. Gould*
Gabrielle L. Gould