# EXHIBIT D

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Vipul Shah<br>Claimant<br>v.<br><br>CrowdStreet, Inc., Tore Stee and Ian Formigle<br>Respondents | Case No. 01-25-0003-9918 |

**ORDER 2 – ORDER ON MOTION FOR DECLARATORY RELIEF**

Pursuant to the Consumer Arbitration Rules of the American Arbitration Association, a Preliminary Hearing was conducted via teleconference on April 6, 2026, in the above-entitled arbitration proceeding ("Arbitration").

Claimant appeared through his attorney, Adam Shaw of Boies Schiller Flexner LLP. Respondents appeared through their attorney, Gabrielle L. Gould of Goodwin Procter LLP. The proceeding was also attended by Arbitrator, Michael Hawash, as well as the AAA Case Manager, Kiamesha Bright.

## I. Introduction

Claimant Vipul Shah moves for a declaration that his dispute against CrowdStreet, Inc., Tore Steen, and Ian Formigle constitutes a "Brokerage Dispute" under Section 5.2 of the June 15, 2022 Terms of Use (the "Terms"), and that the dispute must therefore be resolved by arbitration before FINRA Dispute Resolution, Inc. (FINRA) rather than the American Arbitration Association (AAA).

Respondents oppose the Motion and argue that Claimant's claims arise from

website services governed by the general arbitration provision in Section 5.1 of the Terms.

For the reasons set forth below, Claimant's Motion is granted. The Arbitrator concludes that Claimant's dispute is "arising out of or relating to brokerage services" within the meaning of Section 5.2 of the Terms. This arbitration is therefore dismissed, and Claimant may pursue resolution of his claims before FINRA as set forth in Section 5.2 of the Terms.

## II. Background

CrowdStreet, Inc. operated an online platform through which investors, including Claimant, could access and invest in private placement real estate securities. CrowdStreet, Inc.'s wholly-owned subsidiary, CrowdStreet Capital, LLC, is a registered broker-dealer and FINRA member.

Claimant and others initially filed a class action in the Western District of Texas. Respondents moved to compel individual arbitration. Magistrate Judge Hightower recommended, and District Judge Albright ordered, that the parties arbitrate individually and that the arbitrator determine which arbitration provision applies. Claimant then filed this proceeding seeking a declaratory ruling on that threshold question.

## III. The Contractual Framework

The Terms define "CrowdStreet" to include CrowdStreet, Inc. and its wholly-owned subsidiaries, including CrowdStreet Capital and CrowdStreet Advisors, LLC.

Section 1 describes the services offered by these entities. Under the heading "Services," it states that CrowdStreet (defined as all three entities collectively) provides users with an array of services "including . . . securities brokerage services." A separate bullet headed "Brokerage Services" states that brokerage services are provided in connection with the placement of certain securities by CrowdStreet Capital.

Section 5 sets out the dispute resolution framework. Section 5.1 provides that disputes "arising out of or related to the Website, Services, or these Terms of Use" shall be resolved by binding arbitration before the AAA, "[e]xcept as set forth in Section [5.2] with respect to brokerage services." Section 5.2, titled "Disputes Related to Brokerage Services," provides:

> *Any controversy, claim or dispute arising out of or relating to brokerage services provided to you or an Investing Account (each a "Brokerage Dispute") shall be resolved by arbitration before FINRA Dispute Resolution, Inc. ("FINRA Arbitration") in accordance with FINRA's Code of Arbitration Procedure for Customer Disputes.*

In other words, there is a general arbitration provision for AAA-administered arbitrations under Section 5.1 and a carve-out for FINRA-administered arbitrations under Section 5.2 for a "controversy, claim or dispute arising out of or relating to brokerage services . . . ."

## III. Governing Law

The Terms are governed by Texas law and by the Federal Arbitration Act. Under Texas law, the Arbitrator must "presume parties intend what the words of

their contract say and interpret contract language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018) (internal quotation marks and footnote reference omitted), giving effect to all provisions "so none of the terms of the agreement are rendered meaningless or superfluous," *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017); *see also Smart v. 3039 RNC Holdings, LLC*, No. 04-22-00426-CV, 2023 WL 3328168, at *3 (Tex. App.—San Antonio May 10, 2023, pet. denied) (mem. op.) (same). Where the parties have defined a term, that definition controls. *See*, *e.g.*, *Charter Communications, Inc. v. Prewitt Mgmt., Inc.*, No. 23-50419, 2025 WL 2659157, at *3 (5th Cir. Sept. 17, 2025); *Sloane v. Goldberg B'Nai B'Rith Towers*, 577 S.W.3d 608, 618 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Where a term is undefined, courts give it its "plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Skeels v. Suder*, 671 S.W.3d 664, 671 (Tex. 2023); *Charter*, 2025 WL 2659157, at *3.

Words used in one sense in one part of the contract should ordinarily be deemed to have been used in the same sense elsewhere in the contract "unless there is a clear indication otherwise." *Bexar Cnty. Hosp. Dist. v. Factory Mut. Ins. Co.*, 475 F.3d 274, 277 (5th Cir. 2007); *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990). No single provision taken alone is given controlling effect;

rather, each must be considered in the context of the instrument as a whole. *Charter*, 2025 WL 2659157, at *4.

Under well-settled Texas and federal law, where an arbitration clause uses the phrase "arising out of or relating to," the clause is considered " 'broad [and] capable of expansive reach.' " *Elkjer v. Scheef & Stone, L.L.P.*, 8 F. Supp. 3d 845, 855 (N.D. Tex. 2014) (quoting *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)). A claim falls within a broad arbitration clause if its factual allegations "touch" the subject matter of the clause or have a "significant relationship" to or are "factually intertwined" with the contract. *Pennzoil*, 139 F.3d at 1068; *Glassell Producing Co., Inc. v. Jared Res., Ltd.*, 422 S.W.3d 68, 78 (Tex. App.—Texarkana 2014, no pet.). In assessing scope, the Arbitrator looks to the factual allegations in the complaint, not the legal claims or artful pleading. *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013); *Glassell*, 422 S.W.3d at 84. Doubts about the scope are resolved in favor of arbitration. *Glassell*, 422 S.W.3d at 77; *Pennzoil*, 139 F.3d at 1067.

## V. Analysis

### *A. The contractual framework as a whole.*

The Terms have a broad arbitration provision at Section 5. Section 5.1 is the general clause, while Section 5.2 is a *carve-out* introduced by the words "[e]xcept as set forth in Section [5.2] with respect to brokerage services." The carve-out is mandatory: "Section 5.1 of these Terms of Use shall not apply to Brokerage

Disputes." The Arbitrator, therefore, must determine whether the dispute fits within Section 5.2. If it does, Section 5.1 by its own terms drops out. If it does not, Section 5.1's general arbitration provision applies. For the reasons set forth herein, the Arbitrator concludes that this dispute falls within Section 5.2.

***B. The meaning of "brokerage services" in Section 5.2.***

The central contract interpretation dispute is whether the phrase "brokerage services" as used in Section 5.2 is limited to services formally provided by CrowdStreet Capital in its capacity as a registered broker-dealer, or whether it carries its ordinary meaning and encompasses brokerage activity regardless of which entity performed (or allegedly performed) it.

Respondents argue that the "Brokerage Services" bullet in Section 1 supplies a controlling definition that limits Section 5.2 to services provided by CrowdStreet Capital. The Arbitrator is not persuaded. The Section 1 bullet does not read as a definition. It states that brokerage services "are provided in connection with the placement of certain securities by CrowdStreet Capital." This is a *descriptive* statement about who provides brokerage services, not a *definitional* statement about what the term means. It does not employ the language of definition (*e.g.*, "means," "shall mean," "is defined as"), nor does it place the term in quotation marks as the Terms do elsewhere when defining terms such as "Brokerage Dispute," "Website," "User," and "Services." The drafters of the Terms knew how to create a defined term. They did not create one for "brokerage services." When a contract includes

some defined terms and not others, courts presume the choice was deliberate, and the undefined term takes its "plain, ordinary, and generally accepted meaning." *Skeels*, 671 S.W.3d at 671; Charter, 2025 WL 2659157, at *3.

Respondents' reliance on the consistent-meaning canon, *Bexar*, 475 F.3d at 277, does not change the result. The canon presumes consistent usage only "unless there is a clear indication otherwise," *id.*, and the Terms here supply such an indication: "brokerage services" appears in Section 1 in a descriptive bullet alongside defined terms in quotation marks, indicating that the drafters made a conscious choice not to elevate the phrase to defined status. And even on Respondents' own reading, "brokerage services" must mean something in Section 5.2; the only fair reading consistent with the rest of the Terms is its ordinary industry meaning: activities such as sourcing investments, conducting due diligence, soliciting investors, relaying orders, coordinating transactions, and acting as an intermediary between buyers and sellers of securities.

Section 15 does not require a contrary result. Respondents emphasize that Section 15 refers to "[f]ees and/or commissions charged by CrowdStreet Capital for brokerage services." While that language describes CrowdStreet Capital's *fee* arrangements, it does not purport to limit the universe of activities that count as "brokerage services" for all purposes of the Terms. A fees provision that allocates one entity's fees does not, by negative implication, recharacterize the dispute-resolution carve-out, particularly where, as here, the dispute-resolution provision is

broadly worded ("arising out of or relating to") and the fees provision is not. Section 15 is fully intelligible without importing a hidden definition into Section 5.2.

More fundamentally, the phrase "brokerage services" has a well-understood meaning in the financial industry and in securities law. It refers to a *type of activity*, not a regulatory status. If an entity performs the functions of a securities broker, it is providing brokerage services, regardless of whether it holds the registration required by law. Indeed, Claimant's entire cause of action under the Texas Securities Act rests on the premise that CrowdStreet, Inc.'s activities constituted brokerage services performed without proper registration. It would be nonsensical to conclude that a dispute alleging unlicensed brokerage activity does not "relate to" brokerage services. To be clear, the Arbitrator is not deciding whether CrowdStreet, Inc. was in fact required to register; that is a merits question. But to characterize a dispute that is squarely *about* alleged brokerage activity as something other than a Brokerage Dispute would, in this Arbitrator's opinion, subvert the plain meaning of the Terms.

Respondents' proffered reading also produces a perverse result. If "brokerage services" were read to encompass only services performed through a registered broker-dealer, then any dispute alleging that CrowdStreet engaged in brokerage activity *without* proper licensing would be excluded from the brokerage carveout precisely because of the alleged regulatory failure.

### *C. The scope of "arising out of or relating to."*

Independent of the definitional question, the breadth of Section 5.2's operative language supports Claimant's position. Section 5.2 applies to any controversy or dispute "arising out of or relating to brokerage services." The Fifth Circuit and Texas courts treat that language as creating a *broad* arbitration clause. *Pennzoil*, 139 F.3d at 1067; *Elkjer*, 8 F. Supp. 3d at 854–55; *Glassell*, 422 S.W.3d at 78, 84. Under that standard, a claim falls within the clause if the factual allegations "touch" the subject matter of the clause or are factually intertwined with it. *Pennzoil*, 139 F.3d at 1068; *Glassell*, 422 S.W.3d at 78. In conducting that inquiry, the Arbitrator looks to the factual allegations of the complaint and statement of claim, not the legal labels or artful pleading. *Rachal*, 403 S.W.3d at 850; *Glassell*, 422 S.W.3d at 84.

Claimant's dispute does not merely touch upon brokerage services, it is fundamentally about whether CrowdStreet engaged in brokerage activity, whether that activity was lawful, and whether Claimant was harmed as a result. The dispute does not concern the performance of CrowdStreet's website, a data breach, or any non-brokerage functions the platform may also have provided. The material allegations in the Statement of Claim and the incorporated Complaint concern conduct that is, at a minimum, brokerage-related: due diligence on offerings, sponsorship, solicitation, transmission of offering documents, and coordinating securities transactions.

## VI. Matters the Arbitrator Does Not Decide

Several arguments raised by the parties go beyond what is necessary to resolve the Claimant's Motion. The Arbitrator addresses them briefly to define the boundaries of this Order.

**Claimant's ultimate liability theory.** Whether CrowdStreet, Inc. was in fact required to register as a broker-dealer, and whether any failure to do so gives rise to liability under the Texas Securities Act, are merits questions that this Arbitrator does not reach. The Arbitrator's conclusion is limited to the threshold determination that the dispute, as alleged, relates to brokerage services within the meaning of Section 5.2 and should be administered by FINRA as set forth therein.

**The class action question.** Respondents argue that Claimant's real objective is to invoke the class action exclusion in Section 5.2 as a vehicle back to federal court. Whether Claimant ultimately may or may not pursue a class action, and how that question interacts with the District Court's order requiring individual arbitration, are matters for a court and/or a FINRA arbitrator to address if and when they arise. This Arbitrator was asked to determine which dispute resolution provision applies to Claimant's claims. The answer to that question does not depend on where it might lead. If the Terms provide a pathway from arbitration to a class action under specified conditions, then CrowdStreet agreed to that pathway when it drafted the Terms.

**FINRA jurisdiction.** Respondents contend that CrowdStreet, Inc. is not a

FINRA member and that FINRA may decline jurisdiction. This Arbitrator expresses no view on that question. The Terms direct Brokerage Disputes to FINRA, and this Arbitrator's role is to interpret the contract between the parties. Whether FINRA will accept the matter is a question for FINRA and, if necessary, the courts. If FINRA declines, the parties may seek appropriate relief at that time. The Arbitrator recognizes that if FINRA declines jurisdiction and the judicial system maintains that this matter belongs in arbitration under Section 5, there is a possibility that future rulings in other proceedings may return this matter to the AAA.

## VII. Conclusion and Order

For the foregoing reasons, the Claimant's Motion for Declaratory Relief is GRANTED. The Arbitrator hereby declares:

1. The June 15, 2022 Terms of Use apply to the dispute between Claimant Vipul Shah and Respondents CrowdStreet, Inc., Tore Steen, and Ian Formigle.

2. Under the Terms, Claimant's dispute constitutes a "Brokerage Dispute" within the meaning of Section 5.2.

3. This arbitration is dismissed. Respondents shall bear all costs associated with this proceeding as required by AAA rules.

Entered May 6, 2026, on behalf of the Arbitrator:

Michael Hawash
Arbitrator