**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

VIPUL SHAH, SAMEMMA HOLDINGS, LLC, STEVE WIONS, and DOLPH HAEGE,

Plaintiffs,

v.

CROWDSTREET, INC., TORE STEEN, and IAN FORMIGLE,

Defendants.

No. 1:25-CV-00383-ADA-SH

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION TO MAINTAIN THE STAY**

# TABLE OF CONTENTS

INTRODUCTION .......................................................... **Error! Bookmark not defined.**

ARGUMENT .......................................................... 2

I. Section 5.2 Bars Defendants From Enforcing the Arbitration Agreement Against This Pending Putative Class Action. .......................................................... 2

A. The text is unambiguous and binds CrowdStreet. .......................................................... 2

B. Section 5.1's court and class waivers do not reach Brokerage Disputes. .................. 3

C. The presumption of arbitrability does not rescue Defendants. .................................. 4

II. The Arbitrator's Award Is Final, Binding, Resolves the Threshold Questions, and Leaves No Arbitral Forum Available for the Class Question. .......................................................... 5

III. The August 2025 Order Does Not Require Individual Arbitration of the Class Claims, and the Stay Has Served Its Purpose. .......................................................... 8

IV. Defendants' Rule 23 Arguments Are Premature and, in Any Event, Wrong. ....................... 9

CONCLUSION .......................................................... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alakozai v. Chase Inv. Servs. Corp.*,
557 F. App'x 658 (9th Cir. 2014) ........ 6

*CIGNA Ins. Co. v. Huddleston*,
No. 92-1252, 1993 WL 58742 (5th Cir. Feb. 16, 1993) ........ 5

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 5

*Forbau v. Aetna Life Ins. Co.*,
876 S.W.2d 132 (Tex. 1994) ........ 2

*Gomez v. Brill Sec., Inc.*,
943 N.Y.S.2d 400 (1st Dep't 2012) ........ 7

*Gonzalez v. Mission Am. Ins. Co.*,
795 S.W.2d 734 (Tex. 1990) ........ 5

*Goodman v. Schlesinger*,
584 F.2d 1325 (4th Cir. 1978) ........ 9

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) ........ 4

*Montes v. Benelux Corp.*,
No. 1:24-CV-276, 2026 WL 764324 (W.D. Tex. Mar. 18, 2026) ........ 10

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ........ 5

*Oliver v. Navy Fed. Credit Union*,
167 F.4th 106 (4th Cir. 2026) ........ 9

*Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*,
677 F.3d 720 (5th Cir. 2012) ........ 8

*Winter v. Edward D. Jones & Co., L.P.*,
No. 4:25-CV-00299, 2025 WL 3682808 (E.D. Mo. Dec. 18, 2025) ........ 7

*Zeltser v. Merrill Lynch & Co.*,
No. 13 CV 1531, 2013 WL 4857687 (S.D.N.Y. Sept. 11, 2013) ........ 7

**Statutes**

9 U.S.C. § 12 ........ 5

**Rules**

FINRA Rule 2268 ........ 2

FINRA Rule 12204 ........ 6
FINRA Rule 12204(d) ........ 3, 9
FINRA Rule 13204(d) ........ 7

Plaintiff Vipul Shah respectfully submits this response to Defendants' Brief in Support of Maintaining the Stay (Dkt. 52), filed pursuant to the Court's September 23, 2026 Order (Dkt. 48).

## INTRODUCTION

Defendants' brief never engages the one sentence of their own contract that decides this application. Section 5.2 of the Terms of Use that CrowdStreet drafted provides that "no person shall . . . seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute . . . until: (1) the class certification is denied; (2) the class is decertified; or (3) the person is excluded from the class by the court." Dkt. 51-1 at 6. Plaintiff Shah initiated a putative class action in this Court. The arbitrator to whom this Court delegated the gateway question declared, in a final award, that Shah's dispute "constitutes a 'Brokerage Dispute' within the meaning of Section 5.2." Dkt. 51-2 at 11. Every condition of that clause is satisfied, and none of its three terminating events has occurred. CrowdStreet is therefore contractually barred from doing precisely what its application asks this Court to do.

Defendants' proposal is for the Court to send Shah to a forum where, by the very terms of Section 5.2 and the rules it incorporates, his claim is ineligible to be heard, so that a FINRA arbitrator who is forbidden from adjudicating class claims can decide whether a class action may proceed. That is not a viable dispute-resolution path; it is a dead end. Defendants are improperly trying to force this case into an individual action. Defendants' fallback—asking this Court to compel FINRA to retread the ground already covered by the arbitrator—is equally absurd. The stay should be lifted.

## ARGUMENT

### I. Section 5.2 Bars Defendants from Enforcing the Arbitration Agreement Against This Pending Putative Class Action.

Now that the AAA arbitrator has interpreted the Terms of Use, determined that this dispute is a Brokerage Dispute under Section 5.2 of the 2022 Terms, and dismissed the AAA arbitration, this Court—and this Court alone—must determine whether CrowdStreet can compel the claims before this Court to FINRA arbitration. The arbitrator conclusively determined that Section 5.2—not Section 5.1—governs Shah's claims. Section 5.2 is clear: it contains no delegation clause, no class action waiver, and prohibits arbitration of pending putative class actions before FINRA. Shah's putative class action must remain in this Court.

#### A. The text is unambiguous and binds CrowdStreet.

Texas law requires the Court to enforce the Terms as written, giving effect to every provision so that none is rendered meaningless. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994). Section 5.2 has two absolutes for Brokerage Disputes: (1) Brokerage Disputes are subject to "FINRA's Code of Arbitration Procedure for Customer Disputes," and (2) no "person" can enforce the arbitration agreement against a person who has initiated a putative class action in court. Dkt. 51-1 at 6. Because this action is a pending putative class action, CrowdStreet cannot enforce the arbitration agreement against Shah.

Defendants' principal textual answer is that because Section 5.2 says "[p]ursuant to FINRA rules," then FINRA Rule 2268 must apply. According to CrowdStreet, FINRA Rule 2268 governs only FINRA members, and because CrowdStreet, Inc. is not a member, it is not subject to those rules so Shah's claims must be compelled to FINRA arbitration. Dkt. 52 at 12–13. That argument is not only misplaced, it is facially contradictory. Section 5.2's prohibition is not limited to FINRA members: it says "no person." Whether Rule 2268 *independently* applies to CrowdStreet, Inc. is

beside the point: CrowdStreet's Terms[1] explicitly say that "no ***person*** shall . . . seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute . . . ." Dkt. 51-1 at 6. That is an independent contractual covenant, not a waivable cross-reference to a FINRA rule or definition. CrowdStreet, Inc. is a person, so it cannot seek to enforce the arbitration provision against Shah's pending putative class action.

The inconsistencies of CrowdStreet's positions are apparent and make no sense. On the one hand, CrowdStreet disclaims FINRA's rules because it is not a member; on the other hand, and in the same brief, it insists that this dispute belongs before FINRA and volunteers to "submit to the exercise of limited jurisdiction by FINRA." Dkt. 52 at 8 n.2 & 12–13. But a party that invokes FINRA's forum takes that forum on FINRA's terms—including the rules barring arbitration of putative class actions. Indeed, CrowdStreet's own Terms require that Brokerage Disputes be arbitrated "in accordance with FINRA's Code of Arbitration Procedure for Customer Disputes," Dkt. 51-1 at 6, which forbids enforcing an arbitration agreement against a putative class member until certification is denied, the class is decertified, or the member is excluded or opts out, FINRA Rule 12204(d); *see* Section II, *infra*. CrowdStreet cannot selectively submit to FINRA's jurisdiction while exempting itself from FINRA's rules, and this Court should not accept such blatant gamesmanship.

**B. Section 5.1's court and class waivers do not reach Brokerage Disputes.**

Defendants also argue Section 5.1's class action waiver and waiver of the right to "have Disputes resolved in a court" applies to "any claim, controversy or dispute," including this one, so

---

[1] The Terms incidentally define "CrowdStreet" to include a FINRA member, CrowdStreet Capital. Dkt. 51-1 at 1.

Shah's claim cannot proceed as a class action and must go to FINRA. Dkt. 52 at 11–12. That argument fails three times over. First, Section 5.2 states explicitly that "Section 5.1 . . . shall not apply to Brokerage Disputes." Dkt. 51-1 at 6. Defendants' reading deletes that sentence from the contract. Second, the definition of "Dispute" on which Defendants rely is itself introduced by the words "*Except as set forth in Section [5.2] with respect to brokerage services*." Dkt. 51-1 at 5. Third, and most important, the arbitrator—exercising the authority this Court delegated to him—construed exactly this interplay and held that Section 5.2 governs this dispute, and ***once a dispute "fits within Section 5.2 . . . Section 5.1 by its own terms drops out."*** Dkt. 51-2 at 5–6 (emphasis added). Defendants lean on this Court's prior statement that the delegation clause "contains no exception for brokerage claims," Dkt. 52 at 11 (quoting Dkt. 30 at 10), but the Court made that observation about the *delegation* of arbitrability—holding that an arbitrator, not the Court, would decide whether Section 5.2 applies in the first instance. The Court did not hold that the provisions in Section 5.1, in particular the substantive class action waiver, override Section 5.2; it held that an arbitrator would decide the question of whether Section 5.1 or 5.2 applies, and the arbitrator did.

**C. The presumption of arbitrability does not rescue Defendants.**

Defendants argue that any conflict between Sections 5.1 and 5.2 is an "ambiguity that must be resolved in favor o[f] arbitration." Dkt. 52 at 11. But the presumption applies only where "a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010). There is no ambiguity here: the parties agreed in writing that a pending putative class action concerning a Brokerage Dispute cannot be forced into arbitration. The FAA's policy "is about treating arbitration contracts like all others, not about fostering arbitration," and "a court may not devise

novel rules to favor arbitration over litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Enforcing CrowdStreet's prohibition on arbitrating class action Brokerage Disputes as written is simply enforcing the contract.

To the extent there is ambiguity in the interplay between Sections 5.1 and 5.2, this Court should reject CrowdStreet's attempt to profit from its own sloppy drafting. CrowdStreet's Terms of Use have bred confusion at every stage of this case. That confusion is of CrowdStreet's own making, and Texas law requires that any ambiguity be construed against CrowdStreet, not in its favor. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990). In any event, whatever else may be ambiguous about the Terms, one thing is unquestionably not: Section 5.2 forbids sending a pending putative class action to FINRA arbitration. And the arbitrator, having held that Section 5.2 governs, identified "a court" as the body to decide whether this case may proceed as a class action. Dkt. 51-2 at 10. Accordingly, that question is now properly back before this Court.

## II. The Arbitrator's Award Is Final, Binding, Resolves the Threshold Questions, and Leaves No Arbitral Forum Available for the Class Question.

Because the parties agreed to have an arbitrator decide whether the instant dispute is a Brokerage Dispute, the Court "must defer to [the] arbitrator's arbitrability decision." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Having opted not to file a motion to vacate the May 6, 2026 AAA Order[2] within the three months allotted by the FAA, *see* 9 U.S.C. § 12, Defendants may not now challenge that award. *CIGNA Ins. Co. v. Huddleston*, No. 92-1252, 1993 WL 58742, at *11 (5th Cir. Feb. 16, 1993) (per curiam) (unpublished) (failure to move to vacate within three months "bars him from raising the alleged invalidity of the award as a defense" citation omitted)).

[2] The AAA order dismissed the arbitration in its entirety, so is therefore the final award in that proceeding. *See* Dkt. 51-2 at 11.

The AAA Order therefore conclusively establishes that "Claimant's dispute constitutes a 'Brokerage Dispute' within the meaning of Section 5.2" of the 2022 Terms. Dkt. 51-2 at 11. With that declaration, the arbitrator necessarily declared that Section 5.2's prohibition on arbitrating class action Brokerage Disputes applies by its terms.

Incredibly, Defendants take the position that, under the text of that award, this Court should send this dispute to FINRA to decide *the exact same questions.* Dkt. 52 at 10, 11–12. Their theory is that the AAA arbitrator left open "the class action issue," and so because this Court's July 2025 ruling said an arbitrator must decide "whether the class claims are precluded," a FINRA arbitrator must now decide it. *Id.* at 8–10. Both the premise and the conclusion are wrong. The Court's reference to "whether the class claims are precluded" in the July 2025 ruling addressed only whether Section 5.1's class action waiver barred Shah's class claims, which depended on whether Section 5.1 applied at all. Dkt. 30 at 11. The arbitrator answered that question: Section 5.1 does not apply, so its waiver does not apply. Dkt. 51-2 at 6. Thus, the question this Court sent to arbitration has been answered; all that remains is Section 5.2's promise between the parties not to enforce arbitration against a pending putative class action Brokerage Dispute, and only the Court can hold CrowdStreet to that promise. *See id.*

Indeed, no FINRA arbitrator can decide the question Defendants want decided. Under both Section 5.2 and FINRA rules, class action claims cannot be arbitrated while the putative class action is pending. Dkt. 52-1 at 6; FINRA Rule 12204. A FINRA panel would thus have no claim before it and no authority to rule on class treatment. The "FINRA arbitrator" of Defendants' proposal is a tribunal that cannot be convened. The only way to convene one at this stage is for this Court to deny class certification. *See* Dkt. 51-1 at 6. *See also Alakozai v. Chase Inv. Servs. Corp.*, 557 F. App'x 658, 659 (9th Cir. 2014) (agreement that "incorporates [FINRA] Rules . . .

excludes class claims from arbitration"); *Gomez v. Brill Sec., Inc.*, 943 N.Y.S.2d 400, 404 (1st Dep't 2012) ("[B]ased on the parties' own agreement, which incorporates by reference FINRA Rule 13204(d), arbitration of this class action suit is barred"); *Winter v. Edward D. Jones & Co., L.P.*, No. 4:25-CV-00299, 2025 WL 3682808, at *15 (E.D. Mo. Dec. 18, 2025) ("[This] suit proceeds as a putative class action, for which FINRA's rules do not allow arbitration"); *Zeltser v. Merrill Lynch & Co.*, No. 13 CV 1531, 2013 WL 4857687, at *2–3 (S.D.N.Y. Sept. 11, 2013) (denying motion to compel putative class action to FINRA arbitration). Defendants cite no contrary authority.

Nor can Defendants' reading of the AAA Order as "authoriz[ing] only . . . commencement of a FINRA arbitration" be squared with the Order's actual text. Dkt. 52 at 6–8. The arbitrator said the dispute "should be administered by FINRA *as set forth therein*"—that is, as set forth in Section 5.2, which includes the prohibition on arbitrating class action Brokerage Disputes. Dkt. 51-2 at 10 (emphasis added). Defendants insist that "had the Arbitrator intended to give Plaintiff a choice between proceeding in FINRA or this Court, he easily could have said so." Dkt. 52 at 6. But he did say so. He expressly stated that whether Shah may pursue a class action is a matter "***for a court*** and/***or*** a FINRA arbitrator to address if and when [it] arise[s]," and that "[i]f the Terms provide a pathway from arbitration to a class action under specified conditions, then CrowdStreet agreed to that pathway when it drafted the Terms." *Id.* (emphasis added). Defendants quote that very language in their brief. *Id.* at 5 & 7. Having held that Section 5.2 governs and dismissed the AAA proceeding, the arbitrator returned the interpretation of Section 5.2 to the Court—the only body that can hear class claims. The AAA Order's "conditional phrasing" about FINRA declining jurisdiction, *id.* at 7, shows only that the arbitrator anticipated several possible sequels; it does not compel this matter to FINRA arbitration.

## III. The August 2025 Order Does Not Require Individual Arbitration of the Class Claims, and the Stay Has Served Its Purpose.

Defendants contend the August 2025 Order is "law of the case" requiring Shah to arbitrate "on an individual basis." Dkt. 52 at 5–6. That Order must be read as a whole. Judge Albright adopted the Report and Recommendation "in its entirety," Dkt. 33 at 2, and that Report recommended that the Court "DENY" Defendants' motion to strike the class claims and their "request for individual arbitration," because "whether the class claims are precluded is an issue for the arbitrator, not the Court." Dkt. 30 at 11–12. The Order then stated that "[a]ll other requests for relief are DENIED." Dkt. 33 at 2. The phrase Defendants latch onto—"on an individual basis"—described the form of the AAA proceeding being compelled for arbitrability determination, not a ruling that this case may never proceed as a class. That reading is obvious: the delegation clause on which this Court premised its Report permits the arbitrator to "only conduct an individual arbitration." Dkt. 51-1 at 5. Defendants would stretch that phrase into a mandate that Shah proceed individually everywhere—in AAA, in FINRA, and in this Court. Defendants would stretch that phrase into a mandate converting this action into an individual action forever. Nothing in the Report or the Order supports that reading. *See* Dkts. 30 & 33. An order that denies a motion to strike class allegations cannot be read as granting it.

Law of the case does not change that result. The doctrine counsels deference only to "decisions already made." Dkt. 52 at 5 (quoting *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727 (5th Cir. 2012)). In fact, the only "decision[] already made" in this case is the ***denial*** of Defendants' motion to strike Shah's class allegations. That is the law of the case, and it left this action as a pending class action. CrowdStreet should not be heard to reargue that decision here. As discussed, the arbitrator has now resolved what this Court reserved to him—"whether the class claims are precluded"—by holding that Section 5.2 governs and Section 5.1,

with its class waiver, "drops out." Dkt. 51-2 at 5–6. Lifting the stay, thus, does not disturb the August 2025 Order.

Because Section 5.2 bars compelling this putative class action to FINRA arbitration, the arbitration this Court compelled is the only one there will be, and it is over. The stay, entered "pending resolution of arbitration," has served its purpose. Dkt. 33 at 2.

## IV. Defendants' Rule 23 Arguments Are Premature and, in Any Event, Wrong.

The Court ordered briefing on whether to lift the stay, not on class certification. Dkt. 48. Defendants concede as much by offering to "more fully brief" certification later. Dkt. 52 at 14 n.6. In any event, now is not the time to decide class certification. A court may not deny class certification at the pleadings stage unless "the complaint's class action allegations show 'non-compliance with Rule 23 as a matter of law.'" *Oliver v. Navy Fed. Credit Union*, 167 F.4th 106, 114 (4th Cir. 2026) (quoting *Goodman v. Schlesinger*, 584 F.2d 1325, 1332 (4th Cir. 1978) (internal alterations omitted)).

That condition is not met here. Defendants' theory is that absent class members are unascertainable and individual issues predominate because each member "must proceed to an AAA arbitration on the threshold arbitrability dispute" before their claim can be heard. Dkt. 52 at 13–14. That premise is contradicted by the Terms' plain language. Section 5.2 forbids enforcement of the arbitration agreement not only against the named plaintiff but against any person "who is a member of a putative class who has not opted out of the class . . . until" certification is denied, the class is decertified, or the member is excluded. Dkt. 51-1 at 6; *accord* FINRA Rule 12204(d). Thus, absent class members need not arbitrate anything while Shah's putative class action is pending.

Nor is ascertainability a problem. The class—purchasers of securities on the CrowdStreet platform within the limitations period—is defined by objective criteria recorded in CrowdStreet's own transaction records, which is all ascertainability requires. *See Montes v. Benelux Corp.*, No. 1:24-CV-276, 2026 WL 764324, at *17 (W.D. Tex. Mar. 18, 2026) ("An identifiable class exists if its members can be ascertained by reference to objective criteria." (citation omitted)). And whether CrowdStreet's uniform platform conduct constituted unregistered brokerage activity under the Texas Securities Act is a common question that is the same for every purchaser. Nothing in Rule 23 justifies keeping this case in suspended animation.[3]

## CONCLUSION

CrowdStreet wrote the Terms that govern this motion. It agreed that no person would enforce any arbitration agreement against a pending putative class action concerning a Brokerage Dispute until class certification is denied. The arbitrator declared this a Brokerage Dispute. No FINRA arbitration remains to be had. The Court should lift the stay and permit this action to proceed as a putative class action before this Court.

Dated: October 29, 2026

By: */s/ Adam R. Shaw*

**BOIES SCHILLER FLEXNER LLP**
Adam R. Shaw, Bar No. 502142
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel.: (518) 434-0600
ashaw@bsfllp.com

Marc Ayala (pro hac vice)
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
mayala@bsfllp.com

[3] Defendants' reference to the individual AAA proceedings of former plaintiffs Haege and Wions adds nothing. Dkt. 52 at 13 n.5. Those claimants dismissed their claims. Dkts. 49–50. Thus, the orders in their proceedings are not in the record and bind neither Shah nor any absent class member.

**LAW OFFICES OF JOSHUA B. KONS, LLC**
Joshua Kons (pro hac vice)
92 Hopmeadow Street, FL 2
Weatogue, CT 06089
Tel.: (860) 920-5181
joshuakons@konslaw.com

**STOLTMANN LAW OFFICES, P.C.**
Joseph Wojciechowski (pro hac vice)
2000 Center Drive, Suite East C218
Hoffman Estates, IL 60192
Tel.: (312) 332-4200
joe@stoltlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on October 29, 2026, the foregoing Plaintiff's Response to Defendants' Brief in Support of Maintaining the Stay was served upon all counsel of record via the Court's CM/ECF system.

*/s/ Adam R. Shaw*
Adam R. Shaw