**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| VIPUL SHAH, DOLPH HAEGE, SAMEMMA HOLDINGS, LLC, and STEVEN WIONS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CROWDSTREET, INC., TORE STEEN, and IAN FORMIGLE,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.: 1:25-cv-383-SH |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MAINTAINING THE STAY OF THIS CASE PENDING RESOLUTION OF PLAINTIFF'S CLAIMS IN FINRA ARBITRATION**

# TABLE OF CONTENTS

**INTRODUCTION** .......... 1
**ARGUMENT** .......... 3
I. Plaintiff's arguments cannot be reconciled with Court and arbitral orders. .......... 3
II. The "class action exclusion" does not apply to CrowdStreet. .......... 4
III. The Asserted Class Is Not Viable. .......... 8
**CONCLUSION** .......... 9

# TABLE OF AUTHORITIES

## Cases

*A. A. ex rel. P.A. v. Phillips*, No. 21-30580, 2023 WL 334010 (5th Cir. Jan. 20, 2023)................ 8

*Alakozai v. Chase Inv. Servs. Corp.*, 557 F. App'x 658 (9th Cir. 2014) ....................................... 7

*Edwards v. Doordash, Inc.*, 888 F.3d 738 (5th Cir. 2018) .......................................................... 5

*Elson v. Black*, 56 F.4th 1002 (5th Cir. 2023) ........................................................................... 8

*In re D. Wilson Constr. Co.*, 196 S.W.3d 774 (Tex. 2006) .......................................................... 5

*In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2008 WL 4681368 (E.D. La. Oct. 21, 2008) ..... 9

*Jefferies LLC v. WTW Inv. Co. LTD*, No. 3:17-CV-0332-D, 2017 WL 8677355 (N.D. Tex. July 31, 2017) ........................................................................................................................... 6

*McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052 (8th Cir. 2012)............................................... 8

*Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025 (S.D. Tex. 2016) ...................................... 9

*Transitional Learning Cmty. at Galveston, Inc. v. U.S. Off. of Pers. Mgmt.*, 220 F.3d 427 (5th Cir. 2000) ........................................................................................................................... 4

*Winter v. Edward D. Jones & Co., L.P.*, No. 4:25-cv-00299-SRC, 2025 WL 3682808 (E.D. Mo. Dec. 18, 2025)............................................................................................................................. 7

*Work v. Intertek Res. Sols., Inc.*, 102 F.4th 769, 771-72 (5th Cir. 2024)....................................... 5

*Zeltser v. Merrill Lynch & Co.*, 13 CV 1531, 2013 WL 4857687 (S.D.N.Y. Sept. 11, 2013)…....7

## Other Authorities

74 Fed. Reg. 56679 (Nov. 2, 2009)............................................................................................ 6

Black's Law Dictionary (12th ed. 2024)……………………………………………………..5

FINRA Bylaws Art. I(ee)............................................................................................................. 6

FINRA Rule 0140a ........................................................................................................................ 6

FINRA Rule 2268(f) ...................................................................................................................... 6

FINRA-DR Customer Code Rule 12100(w)................................................................................ 6

Merriam Webster online……………………………………………………………………..5

For the reasons set forth in Defendants' previous submission (ECF No. 52), the stay should be maintained and Plaintiff should file his claims in FINRA. However, to the extent that the Court deems it appropriate to consider or decide any of the arguments raised in Plaintiff's brief, CrowdStreet respectfully submits the following reply.

## INTRODUCTION

This case persists because Plaintiff refuses to accept what has already been determined by this Court and the Arbitrator: that Plaintiff has been ordered to arbitrate his claims on an individual basis, that any determination as to whether this case can proceed as a class action must be made by an arbitrator, and that Plaintiff's claims "should be administered by FINRA." After nearly two years of costly litigation stemming from a putative class action lawsuit that never should have been filed, Plaintiff should not be permitted to proceed further on the fiction that this case is authorized under the 2022 Terms, consistent with the FAA, or based on a clearly ascertainable class.[1]

To place this briefing in context, by the time Plaintiff filed the Complaint, he had agreed to be bound by no fewer than three sets of CrowdStreet terms and conditions, all of which precluded him from bringing a class action lawsuit against CrowdStreet. (*See* ECF No. 11-1 ¶¶ 20, 22, 23.) Yet Plaintiff did so anyway. After the Court ordered Plaintiff "to arbitrate, on an individual basis, all claims and defenses asserted in this action," Plaintiff did not seek reconsideration or clarification of that August 2025 Order. (ECF No. 33 at 2.) In the AAA, Plaintiff did not seek a ruling that he could proceed in this Court as a lead plaintiff in this class action.[2] (*See* ECF No. 45-3 at 1.) Instead, Plaintiff sought a declaration that the claims in this

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Defendants' initial brief (ECF No. 52).

[2] Prior to submitting this brief, Defendants asked Plaintiff for his consent to annex his initial AAA pleading as an exhibit, but Plaintiff refused, claiming that he considered the statement of arbitration claim to be confidential.

action constitute a "Brokerage Dispute" under the 2022 Terms and a dismissal of his arbitration—relief the Arbitrator granted.

While Plaintiff acknowledges the existence of the August 2025 Order, he tries to explain away the Court's directive to arbitrate his claims and defenses individually as "simply direct[ing] how the parties were first required to present the arbitrability issue to the arbitrator." (ECF No. 51 at 9.) Despite the clear language of the July 2025 Order that "whether the class claims are precluded is an issue for the arbitrator" (ECF No. 30 at 11), Plaintiff now claims that the Arbitrator "did not need to decide the class question, because the Terms of Use already answer it" (ECF No. 51 at 9). Plaintiff further contends that he is entitled to an immediate lifting of the stay, ignoring the clear admonition in the AAA Order that his claims "should be administered by FINRA." (ECF No. 45-3 at 10.)[3]

Plaintiff spends the bulk of his brief arguing that the language of the so-called "class action exclusion" in the 2022 Terms permits him to proceed with this class action in this Court. But Plaintiff ignores both this Court's prior orders and the contractual language that makes clear that the class action exclusion does not apply to CrowdStreet, but rather to its affiliate CrowdStreet Capital, a newly registered FINRA member. Critically, given all the time and resources already dedicated to this case, Plaintiff fails to address the insurmountable ascertainability and predominance problems that are virtually certain to result in early dismissal of the class claims if the stay were lifted and he were permitted to proceed.

[3] As set forth in the 2022 Terms, arbitration before "FINRA" refers to FINRA Dispute Resolution Inc., now known as FINRA Dispute Resolution Services, hereinafter referred to as "FINRA-DR" when referencing the forum for resolving securities disputes. (ECF No. 52-1.)

## ARGUMENT

### I. Plaintiff's arguments cannot be reconciled with Court and arbitral orders.

Plaintiff's recitation of the "relevant procedural and factual background" of this case fails to mention the language of the August 2025 Order that makes his position untenable. (ECF No. 51 at 3-5.) When he finally does address the fact that the order directs the parties "to arbitrate, on an individual basis, all claims and defenses asserted in this action" (ECF No. 33 at 2), the best Plaintiff can do is characterize the order as "simply direct[ing] how the parties were first required to present the arbitrability issue to the arbitrator" (ECF No. 51 at 9). But that is not what the order says, and Plaintiff's interpretation cannot be squared with any reasonable understanding of the phrase "all claims and defenses asserted in this action." As set forth in Defendants' moving brief, the August 2025 Order is clear and should be enforced as written. (*See* ECF No. 52 at 5-6.)

Plaintiff further suggests that the July 2025 Order imposed a narrow directive to have the Arbitrator decide whether this action constituted a Brokerage Dispute, but not make any procedural decisions regarding this action, such as whether the action may proceed as a class. (*See* ECF No. 51 at 2.) That is not what the order says. Rather, it says: "whether the class claims are precluded is an issue for the arbitrator, not the Court." (ECF No. 30 at 11.) That the arbitrator made no such determination does not mean that Plaintiff may return to this Court and seek resolution of an issue that the Court expressly disclaimed.

Plaintiff similarly pretends that the language in the AAA Order providing that his claims "should be administered by FINRA" (ECF 52-4 at 11) does not exist, arguing instead that the Arbitrator "could not have decided whether this action should proceed as a class action or in FINRA arbitration because those questions were not before him" (ECF No. 51 at 10). But this too is misleading. As the AAA Order confirms, Plaintiff did not request a ruling on the class issue.

(ECF No. 45-3 at 1.) In the end, the Arbitrator gave Plaintiff exactly what he asked for. Plaintiff should not be permitted to benefit from the absence of a decision that he chose not to seek.

Plaintiff also insists that "CrowdStreet cannot now demand that this matter go before FINRA" because CrowdStreet has "already argued that it is not subject to FINRA's jurisdiction because it is not a FINRA member." (ECF No. 51 at 11.) But as Defendants stated at the September 23 status conference, reiterated in their opening submission, and now repeat here again, given the AAA Order that Plaintiff's claims should be heard by a FINRA panel, Defendants are willing to submit to the jurisdiction of FINRA-DR for the limited purpose of adjudicating Plaintiff's claims, and jurisdiction is not an issue. (ECF No. 52 at 8 n.2.)

## II. The "class action exclusion" does not apply to CrowdStreet.

From the beginning, Plaintiff has relied on the following language in the 2022 Terms to assert that he is entitled to pursue class claims against Defendants:

> Pursuant to FINRA rules, no person shall bring a Brokerage Dispute asserted as a putative or certified class action to FINRA Arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action with respect to a Brokerage Dispute or who is a member of a putative class who has not opted out of the class with respect to any Brokerage Dispute claims encompassed by the putative class action until: (1) the class certification is denied; (2) the class is decertified; or (3) the person is excluded from the class by the court.

(ECF No. 52-1 at 7.) But Plaintiff's characterization of this language as something that CrowdStreet "agreed to and bargained for" (ECF No. 51 at 10) cannot be reconciled with the prefatory phrase "[p]ursuant to FINRA rules," which, when given the required meaning, confirms the inapplicability of the so-called class action exclusion to CrowdStreet. *See Transitional Learning Cmty. at Galveston, Inc. v. U.S. Off. of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000) ("a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous").

When the phrase "[p]ursuant to FINRA rules" is given the required meaning, the context and applicability of this paragraph are clear.

The phrase "Pursuant to" means "[i]n compliance with; in accordance with; under." Black's Law Dictionary (12th ed. 2024); *see also* Merriam Webster online (defining "pursuant to" to mean "in carrying out," "in conformity with," and "according to").[4] In the arbitration context, courts interpret agreements providing for arbitration pursuant to a specific set of rules as incorporating the substance of those rules. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (observing that "[i]nnumerable contracts are consummated every day in Texas that incorporate other documents by reference," and "arbitration-related language is no exception to th[e] [incorporation-by-reference] rule"). This is why agreements requiring arbitration pursuant to or under AAA or JAMS rules that do not contain express delegation clauses are widely understood to delegate arbitrability questions to an arbitrator—because the content of the underlying AAA or JAMS rules is incorporated into the meaning of the agreement, and because AAA and JAMS rules permit arbitrators to decide their own jurisdiction. *See Work v. Intertek Res. Sols., Inc.*, 102 F.4th 769, 771-72 (5th Cir. 2024) (finding agreement that provided for arbitration administered by JAMS "pursuant to its Employment Arbitration Rules & Procedures . . . unequivocally incorporates the JAMS Rules" and evidenced an agreement to delegate arbitrability); *Edwards v. Doordash, Inc.*, 888 F.3d 738, 741, 746 (5th Cir. 2018) (finding arbitration agreement that provided for disputes to be resolved "pursuant to . . . the commercial rules of the American Arbitration Association" delegated arbitrability questions to an arbitrator).

The same principle applies straightforwardly here. The second paragraph of what Plaintiff calls Section 5.2 of the 2022 Terms does not apply to disputes brought against CrowdStreet

[4] *Available at* https://www.merriam-webster.com/dictionary/pursuant%20to.

because the rules of FINRA—the Financial Industry Regulatory Authority, a self-regulatory organization for member broker-dealers—apply only to members of FINRA (*i.e.*, those who have registered with FINRA to provide brokerage services to customers) and their associated persons. *See* FINRA Rule 0140 (FINRA rules "shall apply to all members and persons associated with a member"). CrowdStreet is neither. Plaintiff admits that "CrowdStreet has never registered as a broker-dealer with FINRA" and therefore is not, and has never been, a FINRA member. (Compl. ¶ 152; *see also id.* ¶¶ 21, 142(b).) Nor can CrowdStreet be an associated person of a FINRA member because under FINRA's Bylaws as well as FINRA-DR's Code of Arbitration Procedure for Customer Disputes ("Customer Code"), a "person associated with a member" must be a natural person. FINRA Bylaws Art. I(ee); FINRA-DR Customer Code Rule 12100(w); *see Jefferies LLC v. WTW Inv. Co. LTD*, No. 3:17-CV-0332-D, 2017 WL 8677355, at *1 (N.D. Tex. July 31, 2017) (under FINRA-DR Customer Code, "associated persons" are natural persons); 74 Fed. Reg. 56679, 56680 (Nov. 2, 2009) (noting amendment to "associated person" definition in Customer Code was "to clearly exclude corporate entities from the definition of associated person").

As neither a FINRA member nor an associated person of a member, CrowdStreet is not bound by FINRA rules. The invocation of FINRA rules in the 2022 Terms is, however, easily explained by facts that Plaintiff acknowledges in the Complaint: (i) CrowdStreet Capital became a FINRA member in May 2022, and (ii) upon becoming a FINRA member, CrowdStreet Capital was immediately bound by FINRA rules. (*See* Compl. ¶¶ 24, 28.) Thus, when the 2022 Terms went into effect in June 2022, FINRA rules applied to CrowdStreet Capital. Among other things, those rules required CrowdStreet Capital to include specific language in any of its customer agreements containing a pre-dispute arbitration clause. Pursuant to FINRA Rule 2268(f):

> All agreements shall include a statement that "No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration

> agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court."

A comparison of this language and the so-called class action exclusion reveals that they are virtually identical.[5]

Plaintiff makes no attempt to reconcile the "[p]ursuant to FINRA rules" language with his proffered interpretation of the 2022 Terms. Instead, he advances the misguided argument that the FINRA-mandated language prevents Defendant CrowdStreet Inc. "from compelling a putative class action involving a Brokerage Dispute into FINRA arbitration." (ECF No. 51 at 9.) In fact, by the plain terms of the incorporated FINRA rules, all the language does is prevent a FINRA member or associated person—*i.e.,* CrowdStreet Capital, not CrowdStreet—from enforcing Plaintiff's arbitration agreement where a valid class action involving Plaintiff's claims is pending.[6]

To be clear, there is no barrier to Plaintiff bringing his claims to FINRA-DR. FINRA-DR is perfectly capable of hearing the merits of the claims on an individual basis as would be consistent with the August 2025 Order. FINRA-DR also is well-suited to decide whether the class action exclusion (included in the 2022 Terms "[p]ursuant to FINRA rules") is applicable to non-FINRA

---

[5] The fact that this language and the FINRA rules apply only to FINRA members and associated persons is further supported by the three cases upon which Plaintiff relies (ECF No. 51 at 9-10) to argue that the FINRA-mandated language "bar[s] CrowdStreet from compelling a putative class action involving a Brokerage Dispute into FINRA arbitration." *See Alakozai v. Chase Inv. Servs. Corp.*, 557 F. App'x 658, 659 (9th Cir. 2014) (dispute involving former FINRA member); *Winter v. Edward D. Jones & Co., L.P.*, No. 4:25-cv-00299-SRC, 2025 WL 3682808, at *1 (E.D. Mo. Dec. 18, 2025) (dispute involving FINRA member); *Zeltser v. Merrill Lynch & Co.*, 13 CV 1531, 2013 WL 4857687 (S.D.N.Y. Sept. 11, 2013) (dispute involving FINRA member).

[6] In the past, Plaintiff has contended that it would be "nonsensical" for this language to apply only to claims brought against CrowdStreet Capital because "CrowdStreet Capital, LLC was not in full operation or processing transactions until at least September 2023." (ECF No. 17 at 18.) But this argument also fails given his concession that "once registered, broker-dealers must adhere to rules promulgated by FINRA." (Compl. ¶ 28.)

member CrowdStreet. Although Plaintiff did not raise the class action question with the Arbitrator, as set forth in the AAA Order, *Defendants* argued to the Arbitrator that Plaintiff's "real objective" in seeking a declaration that Plaintiff's claim is a "Brokerage Dispute" was not to pursue his claims in FINRA, but instead "to invoke the class action exclusion in Section 5.2 as a vehicle back to federal court." (ECF No. 52-4 at 11.) It would make no sense for the Arbitrator to order that Plaintiff may "pursue resolution of his claims before FINRA as set forth in Section 5.2 of the Terms" (*id.* at 3) in connection with granting Plaintiff's motion if Plaintiff had taken the position that FINRA did not have the authority to decide his claims.

**III. The Asserted Class Is Not Viable.**

As shown above, the 2022 Terms do not provide any "pathway" for Plaintiff to bring class claims against non-FINRA member CrowdStreet. But even assuming they did, lifting the stay and allowing Plaintiff to proceed would be futile because the class that Plaintiff seeks to represent is not ascertainable. The "touchstone of ascertainability is whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *A. A. ex rel. P.A. v. Phillips*, No. 21-30580, 2023 WL 334010, at *2 (5th Cir. Jan. 20, 2023) (citation omitted). Here, the members of the proposed class cannot be identified by reference to the mere fact that they "purchased any securities offered, sold, or otherwise displayed on the CrowdStreet Platform within the applicable statute of limitations period" as Plaintiff contends. (Compl. ¶ 139.) Rather, whether a particular individual can join the putative class must be determined by a AAA arbitrator. This individualized determination makes administration of the putative class action infeasible. *See Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) (acknowledging pre-certification dismissals are appropriate where plaintiffs fail to identify a coherent class); *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012) (affirming dismissal because the "individualized nature of the churning, unauthorized trading, and

misrepresentation claims rendered Plaintiffs' class claims insufficient under Rule 23(b)(3)"); *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1050 (S.D. Tex. 2016) (dismissing class allegations at the pleading stage); *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2008 WL 4681368, at *10 (E.D. La. Oct. 21, 2008) (granting Defendant's motion to strike class allegations because "proposed class cannot be determined without first inquiring into the substantive merits of each individual claim"). Thus, in light of the ascertainability and predominance issues, lifting the stay for Plaintiff to proceed with his putative class claims would be futile.

## CONCLUSION

For the foregoing reasons and those set forth in its prior submission on these issues (ECF No. 52), Defendants respectfully request that the Court maintain the existing stay in this case and direct Plaintiff to file an individual arbitration in FINRA-DR.

Respectfully submitted,

By: /s/ Gabrielle L. Gould
Gabrielle L. Gould (*pro hac vice*)
Elizabeth M. Zito (*pro hac vice*)
Claire Daly (*pro hac vice*)
Goodwin Procter LLP
New York Times Bldg,
620 8th Ave.
New York, NY 10018
(212) 813-8800 (tel.)
(212) 355-3333 (fax)
ggould@goodwinlaw.com
ezito@goodwinlaw.com
cdaly@goodwinlaw.com

-AND-

Amy Pharr Hefley
Baker Botts, L.L.P.
State Bar No.: 24046046
910 Louisiana St.
Houston, TX 77002
(713) 229-1234 (tel.)

(713) 229-1522 (fax)

Daniel B. Rankin (*pro hac vice*)
State Bar No.: 24116940
401 S. 1st St., Suite 1300
Austin, TX 78704
(512) 322-2500 (tel.)
(512) 322-2501 (fax)
amy.hefley@bakerbotts.com
daniel.rankin@bakerbotts.com

**Attorneys for CrowdStreet, Inc., Tore Steen, and Ian Formigle**

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October 2026, I electronically filed the foregoing using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Gabrielle L. Gould*
Gabrielle L. Gould